**E-FILING**

ADR

Filed

MAY 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  KAREN JOHNSON-MCKEWAN (STATE BAR NO. 121570)
   NANCY E. HARRIS (STATE BAR NO. 197042)
2  NIKKA N. RAPKIN (STATE BAR NO. 244207)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  The Orrick Building
   405 Howard Street
4  San Francisco, CA 94105-2669
   Telephone:   (415) 773-5700
5  Facsimile:   (415) 773-5759
   kjohnson-mckewan@orrick.com
6
   Attorneys for Defendant
7  GOOGLE INC.

8

9

                   UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13                                          C08   02738   PVT
   JENNA GODDARD, on her own behalf and       CASE NO.
14 on behalf of all others similarly situated,
                                            **DEFENDANT GOOGLE INC.'S**
15                Plaintiff,                 **NOTICE OF REMOVAL OF**
                                            **ACTION; DEMAND FOR JURY**
16        v.                                **TRIAL**

17 GOOGLE INC., a Delaware corporation,

18                Defendant.

19

20

21 **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

22 **NORTHERN DISTRICT OF CALIFORNIA:**

23

24       **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453,

25 Defendant Google Inc. ("Defendant" or "Google") hereby removes to this Honorable Court the

26 action entitled *Jenna Goddard v. Google Inc.*, Santa Clara Superior Court Case No. 1-08-CV-

27 111658, and in support thereof states the following grounds for removal:

28

1  **I.    INTRODUCTION**

2       1.    On April 30, 2008, an action was commenced in the Superior Court of the State of

3  California, County of Santa Clara, entitled *Jenna Goddard v. Google Inc.*, Santa Clara Superior

4  Court Case No. 1-08-CV-111658. Attached hereto as Exhibit 1 is a true and correct copy of

5  Plaintiffs' Summons and Complaint in this action. True and correct copies of all other process,

6  pleadings, and orders filed and served in this action are attached hereto as Exhibit 2.

7       2.    Plaintiff claims she was injured when she provided her cell phone number to an

8  allegedly fraudulent mobile subscription services website and was charged "for unwanted mobile

9  content services in the form of 'premium text messages.'" Compl. ¶ 37. Plaintiff alleges the

10  fraudulent subscription services website she used was a Google AdWords advertiser and "absent

11  Google's provision of AdWords services to the Fraudulent Mobile Subscription Services,

12  [plaintiff] would never have been damaged." Compl. ¶ 58. Based on these allegations, plaintiff

13  asserts claims of violation of California Business and Professions Code section 17200, breach of

14  contract, negligence, and aiding and abetting the alleged misconduct of mobile subscription

15  service advertisers against Google. Compl. ¶¶ 57, 65, 71, 80.

16       3.    Plaintiff purports to represent a nationwide class of similarly situated plaintiffs

17  who "suffered damages as a result of clicking on a Google AdWords advertisement for mobile

18  subscription services which linked to a Fraudulent Mobile Subscription Services website."

19  Compl. ¶ 40.

20       4.    Google was served with the Summons and Complaint on May 2, 2008, and this

21  Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

22       5.    Copies of this Notice of Removal are being duly served upon Plaintiff's counsel

23  and filed with the Clerk of the Superior Court of California, County of Santa Clara, pursuant to

24  28 U.S.C. § 1446(d).

25  **II.   JURISDICTION**

26       6.    This Court has original jurisdiction over this civil action pursuant to the provisions

27  set forth in the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 and 1453 ("CAFA").

28       7.    As set forth more fully below, this case is appropriately removed pursuant to 28

- 2 -

1   U.S.C. §§ 1441 and 1332 because (1) this is a "civil action filed under . . . [a] State statute or rule

2   of judicial procedure authorizing an action to be brought by one or more representative persons as

3   a class action;" (2) the number of members of the proposed plaintiff class is not less than 100; (3)

4   the matter in controversy as alleged exceeds the sum or value of $5,000,000, exclusive of

5   interests and costs; (4) at least one member of the class of plaintiffs is a citizen of a State different

6   from Defendant, and (5) the Notice of Removal is timely filed.

7        8.      The United States District Court for the Northern District of California embraces

8   the County of Santa Clara and this case is therefore appropriately removed to this Court pursuant

9   to 28 U.S.C. § 1441(e) and Local Civil Rule 3-2(e).

10   **III.**    **GROUNDS FOR REMOVAL**

11        **A.**    **The Putative Class Consists of Over 100 Members.**

12        9.      In her Complaint, Plaintiff purports to bring this action on behalf of herself and

13   "[a]ll persons or entities who suffered damages as a result of clicking on a Google AdWords

14   advertisement for mobile subscription services which linked to a Fraudulent Mobile Subscription

15   Services website." Compl. ¶ 40.

16        10.     Although Google denies that any class so described could be properly certified

17   under Federal Rule of Civil Procedure 23, Plaintiff alleges that the "Class consists of at least one

18   thousand individuals and other entities." Compl. ¶ 41.

19        11.     Accordingly, the number of members of the proposed plaintiff class exceeds 100

20   members as required under 28 U.S.C. § 1332(d)(5)(B).

21        **B.**    **Diversity Jurisdiction Exists.**

22        12.     Google is incorporated in Delaware with its principal place of business in

23   Mountain View, California, and is therefore a citizen of Delaware and California.

24        13.     Plaintiff is a citizen of the state of New Jersey.

25        14.     The purported plaintiff class is a nationwide class "of at least one thousand

26   individuals and other entities," (Compl. ¶ 39), including "[a]ll persons or entities who suffered

27   damages as a result of clicking on a Google AdWords advertisement for mobile subscription

28   services which linked to a Fraudulent Mobile Subscription Services website." Compl. ¶ 40.

1    Plaintiff further alleges that the Google search engine is "the most widely-used Internet search

2    engine in the world" and "is a top Internet destination" (Compl. ¶ 2), indicating that the putative

3    class is geographically diverse, hailing from throughout the United States. Accordingly, the

4    putative class includes other members, in addition to Plaintiff, who are also citizens of neither

5    Delaware nor California.

6         15.    Because at least one member of the putative class of plaintiffs is a citizen of a

7    State different from Defendant, this action meets the diversity requirement of 28 U.S.C. §

8    1332(d)(2).

9         **C.    Amount in Controversy Exceeds $5,000,000.**

10        16.    To remove an action to federal court under CAFA, the claims of the proposed class

11   must exceed the sum or value of $5,000,000, in the aggregate. 28 U.S.C. § 1332(d).

12        17.    The Complaint does not allege an exact amount in controversy. Rather, in addition

13   to other damages, the Complaint seeks to restore to the general public all property gained by the

14   alleged wrongful conduct, including "substantially all funds" from the allegedly fraudulent

15   mobile subscription services. Compl. ¶¶ 55, 59.

16        18.    Plaintiff asserts multiple theories of liability, including claims under California

17   Business and Professions Code section 17200, breach of contract, negligence, and aiding and

18   abetting alleged trespass to chattels, violation of the Computer Fraud and Abuse Act (CFAA) and

19   violation of California Business and Professions Code section 17200. Plaintiff seeks damages,

20   restitution and disgorgement, attorney fees, and injunctive relief.

21        19.    According to Plaintiff's Complaint, the Google search engine is "the most widely-

22   used Internet search engine in the world" and "a top Internet destination." Compl. ¶ 2. Plaintiff

23   claims Google "derives significant sums of money from mobile subscription services which

24   advertise through Google" (Compl. ¶ 28), and further alleges that Google's conduct has "led

25   directly to damages of an untold magnitude" (Compl. ¶ 24). Plaintiff also claims that "[a]bsent

26   advertising through Google, the fraudulent mobile subscription services' . . . illegal revenues

27   would drop dramatically." Compl. ¶ 13. Plaintiff alleges that she and the putative class

28   members were each damaged by the Fraudulent Mobile Subscription Services in the form of fees

- 4 -

1 | and other charges and that Google should be liable for such damages. Compl. ¶¶ 64, 65 and 71.

2 | 20. Plaintiff alleges that some "portion of Google's top 250 AdWords customers who

3 | are mobile content purveyors" are "Fraudulent Mobile Subscription Services" (Compl. ¶ 29), and

4 | further alleges that "many if not all of the Fraudulent Mobile Subscription Services' monthly or

5 | periodic payments to Google for the AdWords services exceed $10,000." Compl. ¶ 54.

6 | 21. Although Google denies that it has any liability to Plaintiff or the putative class,

7 | the amount in controversy as alleged in the Complaint satisfies the jurisdictional minimum under

8 | CAFA. The nature and extent of plaintiff's claims, along with the magnitude of plaintiff's

9 | alleged per-class-member damages and other forms of monetary relief, combined with the

10 | potential size of the putative nationwide class, constitute an alleged amount in controversy in

11 | excess of $5,000,000, exclusive of interest and costs.

12 | **D. Removal Is Timely.**

13 | 22. Google was served with the Summons and Complaint on May 2, 2008 and did not

14 | previously receive a copy thereof. This suit is therefore timely removed within thirty days after

15 | receipt by defendant "of a copy of the initial pleading setting for the claim for relief upon which

16 | such action or proceeding is based." 28 U.S.C. § 1446(b).

17 | **E. CAFA Exceptions Do Not Apply.**

18 | 23. The purported plaintiff class is a nationwide class, including "[a]ll persons or

19 | entities who suffered damages as a result of clicking on a Google AdWords advertisement for

20 | mobile subscription services which linked to a Fraudulent Mobile Subscription Services website."

21 | Compl. ¶ 40. Plaintiff further alleges that the Google search engine is "the most widely-used

22 | Internet search engine in the world" and "is a top Internet destination" (Compl. ¶ 2), indicating

23 | that the putative class is geographically diverse.

24 | 24. Accordingly, there is no indication that greater than one-third of the putative class

25 | members are citizens of California, and the exceptions of 28 U.S.C. § 1332(d)(3) and 1332(d)(4)

26 | do not apply.

27 | 25. This action does not involve or solely involve "a claim concerning a covered

28 | security as (1) a claim concerning a covered security as defined under section 16(f)(3) of the

1   Securities Act of 1933 (15 U.S.C. 78p (f)(3)) and section 28(f)(5)(E) of the Securities Exchange

2   Act of 1934 (15 U.S.C. 78bb (f)(5)(E)); (2) a claim that relates to the internal affairs or

3   governance of a corporation or other form of business enterprise and arises under or by virtue of

4   the laws of the State in which such corporation or business enterprise is incorporated or

5   organized; or (3) a claim that relates to the rights, duties (including fiduciary duties), and

6   obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1)

7   of the Securities Act of 1933 (15 U.S.C. 77b (a)(1)) and the regulations issued thereunder). 28

8   U.S.C. §§ 1332(d)(9), 1453(d).

9       26.    Accordingly, this action does not involve or solely involve a claim falling within

10  one or more of the removal exceptions articulated in 28 U.S.C. §§ 1332(d)(9) and 1453(d).

11  **V.    CONCLUSION**

12      27.    Because this litigation involves a putative class action of over 100 class members

13  in which the matter in controversy as alleged in the Complaint exceeds the sum or value of

14  $5,000,000 and at least one member of the class of plaintiffs is a citizen of a state different from

15  Defendant, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

16      28.    This Notice of Removal is properly filed in this District pursuant to 28 U.S.C. §

17  1446(a) because the Superior Court of the State of California, County of Santa Clara, is located

18  within this District. This action, which arose in the county of Santa Clara, is properly assigned to

19  the San Jose Division, pursuant to Local Civil Rule 3-2(e).

20      29.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed

21  with the Clerk of the Superior Court of the State of California, County of Santa Clara.

22      30.    Pursuant to 28 U.S.C. § 1446(d), Google is providing written notice of this Notice

23  of Removal to all adverse parties.

24      31.    By filing this Notice of Removal, Google does not waive any defenses that may be

25  available to it in this action.

26  ////

27  ////

28  ////

- 6 -

1 | V.  **DEMAND FOR JURY TRIAL**

2 |     Google hereby demands trial by jury in this action on all issues so triable.

3

4 | Dated: May 30, 2008                     KAREN JOHNSON-MCKEWAN

5 |                                      NANCY E. HARRIS

6 |                                      NIKKA N. RAPKIN

7 |                                      ORRICK, HERRINGTON & SUTCLIFFE LLP

8 |                                        Karen Johnson-McKewan

9 |                                      Attorneys for Defendant
                                     GOOGLE INC.

- 7 -

# EXHIBIT 1

1  Alan Himmelfarb  SBN# 90480 (ss)
   KAMBEREDELSON LLC
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com

**UCS**

4
5  COUNSEL FOR PLAINTIFFS

J. Cao-Nguyen

6            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**, Santa Clara Co

7                **FOR THE COUNTY OF SANTA CLARA**

Kiri Torre
Chief Executive Offic

8  | JENNA GODDARD, on her own behalf and on behalf of all others similarly situated, | Case No. **1 08 CV 111658** |
9

10 |                | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
   | Plaintiff, | **[BREACH OF CONTRACT AS** |
11 | v. | **INTENDED THIRD PARTY BENEFICIARY; NEGLIGENCE;** |
12 | GOOGLE, INC., a Delaware corporation, | **AIDING AND ABETTING UNLAWFUL, UNFAIR AND** |
13 | Defendant. | **DECEPTIVE BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §17200, et** |
14 |                | **seq.)]** |
15 |                | **DEMAND FOR JURY TRIAL** |
16 |                | **CLASS ACTION** |

**BY FAX**

17            **CLASS ACTION COMPLAINT**

18       Plaintiff Jenna Goddard ("Plaintiff") brings this class action complaint against

19  Defendant Google, Inc. ("Google"). Plaintiff alleges as follows upon personal knowledge as

20  to herself and her own acts and experiences, and, as to all other matters, upon information

21  and belief, including investigation conducted by her attorneys.

22                           **PARTIES**

23  1.   Plaintiff Jenna Goddard is a resident of New Jersey.

24  2.   Defendant Google, Inc. operates the most widely-used Internet search engine in the

25       world. Google's search engine is a top Internet destination, and Google claims

26       publicly that it maintains the largest, most comprehensive index of websites and other

27       online content. Google generates revenue primarily by online advertising. Consumers

28       purchase targeted advertising from Google's AdWords program to promote their

1

products and services.

## JURISDICTION

3. This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

4. This Court has jurisdiction over Defendant pursuant to Code of Civil Procedure § 410.10 because Defendant resides in and conducts business in the State of California and many of Defendant's wrongful acts arose or emanated from California.

## VENUE

5. Venue is proper in this Court pursuant to Code of Civil Procedure § 395 because Defendant resides in this County.

## CONDUCT COMPLAINED OF

6. This case arises from the ever-increasing computerization of cellular telephones. The cell phones used and owned by Plaintiff and the other class members are sophisticated electronics equipment and contain many (if not most) of the same capabilities and equipment as traditional desktop computers, as well as cellular radio signal processing technology.

7. This computerization means that most modern cellular telephones are capable of transacting commerce through a variety of functionalities, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile subscription services" and "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

8. As the mobile subscription industry has grown in recent years from a small community of hobbyists and pioneers to a multi-billion dollar marketplace, it has

become a haven for unscrupulous and deceptive operators who seek to profit unlawfully by taking advantage of unwitting consumers through their cellular telephones.

9.  Given the manner in which mobile content is billed to customers, this is unfortunately an easy goal to achieve. Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile subscription service needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile subscription service has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them and, in the process, cause text messages containing "premium" content to be sent to the "subscriber's" cell phone, draining that cell phone of computing resources such as data processing and storage capacity.

10. Armed with only a cell phone number, the mobile subscription service can simply provide that number, along with an amount to be charged, to a billing aggregator (e.g., m-Qube, Inc. ("m-Qube"). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

11. Because the anti-fraud protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously. And, because a substantial part of mobile subscription "sales" are effected through websites employing fraudulent methods, such as misleading, oblique, or inadequately explained pricing and consent procedures, that likelihood increases by another order of magnitude. ·

12. Mobile subscription services have powerful financial incentives to collect as many cell phone numbers as possible, but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services. Indeed, mobile

3

subscription services go to great lengths to make their marketing material as uninformative as possible about the price of services, subscription periods and cancellation procedures, all in an effort to keep consumers in the dark about their services' true cost.

### Google's Role in the Scheme to Defraud

13. Google's advertising services are an essential step in this process. Without the ability to drive users to their websites, mobile subscription services would be unable to earn virtually any revenue, no matter how misleading or fraudulent their subscription services. Absent advertising through Google, the fraudulent mobile subscription services would have significantly fewer visitors to their websites and their illegal revenues would drop dramatically.

14. Google's search engine is possibly the most-visited website on Earth. Google's massive base of daily users provides an enormously powerful platform for Internet advertising. Google capitalizes on this enormous advertising potential through its AdWords program.

15. Both Google and its customers actively participate in the AdWords program. Google's advertiser customers draft short advertisements, or "AdWords." Advertisers then select keywords that correspond to their advertisements. Google assists its customers in drafting AdWords and selecting keywords through both live support from its AdWords Specialists and its advertising campaign optimization services.

16. When a user's search on Google's search engine matches the advertiser's selected keywords, Google displays the customer's AdWords as part of the result of the search. Each AdWord then, when clicked on, takes the user to the advertiser's website.

17. Because certain products and services are illegal or deemed by Google to be commercially unacceptable, Google has voluntarily compiled a list of products and services (ranging from anabolic steroids to weapons) it does not allow to be advertised on the Google website under virtually any circumstances.

18. Of the approximately 30 categories of banned products and services on this list, called

4

a "Content Policy," Google created an exception for mobile subscription services. This extraordinary exception allows mobile subscription services to continue to advertise on Google if they comply with one condition: conform the content of their website (i.e., the landing page linked to such services' advertisements on Google) so as to clearly and accurately disclose a host of highly relevant information to consumers about purchasing mobile content, such as the service's price, subscription period and cancellation procedures.

19. Google knows mobile subscription services are loathe to provide this information for fear of scaring off potential customers, so Google set up a procedure, memorialized in contract and made known to the public on its website, to enforce this policy by disallowing advertisements for mobile subscription services that link to non-compliant websites. ⊕ Fortunately for deceptive mobile subscription services, Google has systematically declined to live up to its contractual obligations, irrespective of its public pronouncements to do so, opting instead to line its own pockets through an "anything goes" approach to the advertising and sale of mobile content.

20. Indeed, Google is well aware of the magnitude of problems regarding informed authorization from cellular phone subscribers that plague the mobile content industry. Google is keenly aware that mobile subscription services frequently do not disclose their billing terms and conditions clearly to cellular telephone users and even fail to obtain any authorization from cellular phone users whatsoever. Moreover, one of Google's largest mobile content advertiser customers, Azoogleads US, Inc. d/b/a Azoogle ("Azoogle"), recently settled claims brought against it by the Office of the Attorney General of the State of Florida for deceptively marketing mobile subscription services on Google and other search engines.

21. Google's awareness of these industry-wide problems is reflected specifically in its contract with its advertiser customers (called the "Advertising Program Terms," attached hereto as Exhibit A), including purveyors of mobile content. Google's Editorial Guidelines are incorporated by reference into its Advertising Program

5

Terms:

> Google and Customer hereby agree and acknowledge:
> 1. Policies. Program use is subject to all applicable Google
> and Partner policies, including without limitation the Editorial
> Guidelines (adwords.google.com/select/guidelines.html).

*Google, Inc. Advertising Program Terms* (Aug. 22, 2006).

22.    In turn, the Editorial Guidelines include Google's Content Policy, which contains language specifically relating to "Mobile Subscription Services":

> We allow the advertisement of mobile subscription services only when the site clearly and accurately displays price, subscription, and cancellation information. This includes, but is not limited to, sites that promote downloading ringtones, wallpaper, or text messages for predictions, love life advice, news, personality quizzes, and/or other entertainment services.

> If your site promotes mobile subscription services and requires users to enter personal information such as names or phone numbers, your site must meet the following criteria:

> 1.    Prominently display these details on the page where users first enter personal information (such as a name or phone number):
> * The identification of your service as a subscription
> * The price of the service
> * The billing interval (such as per week or once per month)

> 2.    On the first page where users enter personal data, provide a prominent opt-in checkbox or other clear mechanism indicating that the user knowingly accepts the price and subscription service. The user should not be able to proceed without opting in.

> 3.    Clearly display cancellation information (or a clearly marked link to cancellation instructions) on your ad's landing page, the first page of your site users see after clicking on your ad.

> All of the items above should be located in a prominent place on your webpage and should be easy to find, read, and understand.

*Google, Inc. Content Policy* (2008).

23.    Beyond the legal enforceability conferred on these words by contract, these statements in its Content Policy amount to public representations by Google of the accuracy and clarity of pricing, subscription, and cancellation information that Google users can expect to find on third-party websites linked to AdWords advertisements for mobile subscription services.

24.    Google's failure to independently enforce its Content Policy, despite public

6

pronouncements to do so, goes beyond a mere lapse in ministerial or editorial function. Rather, it amounts to a material breach of an express contract to monitor content appearing on a specific group of websites owned and operated by third-parties that has led directly to damages of an untold magnitude.

25.   Moreover, prior to displaying those AdWords, Google routinely scans or downloads the landing pages of the websites that link to advertisements on the Google website. Consequently, Google knows (or consciously avoids knowing) whether a particular landing page complies with its Content Policy.

26.   Driven by financial motivations, Google intentionally refuses to enforce its policies with respect to mobile subscription services. Google intentionally misleads its users by, on the one hand, making public representations that it will not allow advertising for mobile subscription services which do not "clearly and accurately" disclose relevant pricing and related information, while at the same time allowing such advertising to regularly appear on its website.

27.   This is in stark contrast to other advertising restrictions in Google's Content Policy – such as the prohibition on advertising for gambling – which Google does enforce (though apparently only because it felt pressure to do so after a separate lawsuit was filed against it).

28.   Google derives significant sums of money from mobile subscription services which advertise through Google.

29.   On information and belief, a portion of Google's top 250 AdWords customers who are mobile content purveyors utilize landing pages that are not in compliance with Google's Advertising Program Terms ("Fraudulent Mobile Subscription Services," discussed below). Google continues to provide the Fraudulent Mobile Subscription Services advertising under the AdWords program and continues to receive and retain fees from them, despite knowing (or consciously avoiding knowledge) that 1) their websites do not comply with its Content Policy and 2) they earn all or virtually all of their revenue through unauthorized mobile content charges to cellular telephone

7

accounts.

### Google's Motivations for Prohibiting Mobile Subscription Fraud

30. Google's advertising expressly guarantees that its mobile subscription advertisements will be non-deceptive for two relevant reasons.

31. First, Google attempts to create the appearance that its search engine is protecting users' interests.

32. Second, Google hopes to lull governmental agencies into falsely believing that Google is acting responsibly to prevent rampant fraud and abuse, which Google is in the unique position of either allowing to continue (and reaping vast ill-gotten financial gain for doing so) or ending almost completely.

### The Facts Relating To The Named Plaintiff

33. In or about 2000, Plaintiff purchased new cell phone service for her personal use.

34. Upon renewing her cell phone service in or about 2007, Plaintiff agreed to pay her wireless carrier a set monthly fee for a period of about 24 months.

35. In or about December 2007, Plaintiff visited the Google website to find a ringtone provider. Plaintiff entered the keyword "ringtone" and similar variants on the Google website and clicked on one or more of the AdWords advertisements appearing along the search results.

36. After clicking on the AdWords, Plaintiff was taken to Fraudulent Mobile Subscription Services websites, such as those attached as Exhibit B, which failed to display the required information pursuant to Google's Advertising Program Terms.

37. Plaintiff entered her cell phone number on one or more of such websites, which represented the terms of such mobile content as free, complimentary or otherwise deceptively unclear. Shortly thereafter, Plaintiff's cell phone account was charged by one or more of such purveyors of mobile subscription services and their agents, including m-Qube, for unwanted mobile content services in the form of "premium" text messages.

38. At no time did Plaintiff authorize the purchase of these products and services, and at

8

no time did Plaintiff consent to such purveyors or their agents sending text messages to her cellular telephone.

39. During the relevant time period, m-Qube and other billing agents of mobile content purveyors caused Plaintiff to be charged service fees, which Plaintiff paid, in amounts not less than $9.99 for such mobile content subscription services.

### Class Certification Allegations

40. Plaintiff brings this action on behalf of herself and all other similarly situated people as members of a Class, as defined as follows: All persons or entities who suffered damages as a result of clicking on a Google AdWords advertisement for mobile subscription services which linked to a Fraudulent Mobile Subscription Services website.

41. **Class Numerosity:** The Class consists of at least one thousand individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

42. **Class Commonality:** Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include:

    (a)    Whether Class members are third party beneficiaries of the Content Policy incorporated into Google's Advertising Terms;

    (b)    Whether Google breached its own Advertising Terms by allowing the Fraudulent Mobile Subscription Services to continue to use the AdWords program;

    (c)    Whether Google undertook a duty to protect Class members from misleading landing pages used by the Fraudulent Mobile Subscription Services;

    (d)    Whether Google breached its duty to protect Class members from misleading landing pages used by the Fraudulent Mobile Subscription Services;

    (e)    Whether these practices violate the Computer Fraud and Abuse Act (18 U.S.C. § 1030);

    (f)    Whether Google aided and abetted the commission of fraud and trespass to chattels by the Fraudulent Mobile Subscription Services;

    (g)    Whether Google knew about the practices and income of the

9

Fraudulent Mobile Subscription Services;

(h)      Whether Google consciously avoided knowing about the practices and income of the Fraudulent Mobile Subscription Services; and

(i)      Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

43.    **Class Typicality:** Plaintiff's claims are typical of the claims of other Class members. The wrongful conduct of Defendant threatens the Plaintiff and other Class members with the same injury and/or damages arising out of and based upon the same transactions, made uniformly to the Plaintiff and the public.

44.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other Class members, and has retained counsel competent and experienced in complex class actions generally and class actions specifically involving the instant subject matter. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

45.    **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the Class members to individually obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

10

46. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendant's policies challenged herein apply and affect the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

### Count I: Violation of the California Unfair Competition Law

47. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

48. The cellular phones used and owned by Plaintiff and the other Class members are sophisticated electronics equipment and contain many (if not most) of the same capabilities and equipment as traditional desktop computers, as well as cellular radio signal processing technology. These cellular phones are computers under the definition of 18 U.S.C. § 1030(e)(1). Further, these cellular phones are used in interstate or foreign commerce and communication, and are protected computers under the definition of 18 U.S.C. § 1030(e)(1).

49. The delivery of SMS (or "Short Message Service") messages to cellular telephones is performed according to industry standards The technical protocols of these standards require that transmission of mobile subscription to a cellular phone (and the subsequent billing of that account) is not complete until the cellular phone transmits a confirmation signal. Thus, the unauthorized charges to phone numbers attributable to mobile subscription services require interactivity and access to the cellular phones of Plaintiff and the other Class members.

50. The Fraudulent Mobile Subscription Services so accessed the cellular phones of Plaintiff and the other Class members with the intent to defraud them out of the services' unauthorized charges, the access furthered that fraud, and the mobile subscription services obtained payment of the charges through this fraud.

11

51. In addition and/or in the alternative, the Fraudulent Mobile Subscription Services' unauthorized charges damaged the cellular phones and cellular services of Plaintiff and the other Class members. If the Fraudulent Mobile Subscription Services' unauthorized charges are not paid eventually, the cellular carriers will discontinue all services (including cellular service) to the affected cellular accounts. Because Class members must pay additional fees to maintain their cellular service, these charges impair the availability of Class members' access to and communication with their cellular service. Consequently, the Fraudulent Mobile Subscription Services' charges constitute "damage" under the definition of 18 U.S.C. § 1030(e)(8) and payment of these charges constitutes "loss" under the definition of 18 U.S.C. § 1030(e)(11).

52. The unauthorized charges alleged in this complaint have caused Class members, collectively over the last year, to pay more than $5,000 in additional fees to their cellular carriers to maintain their cellular service.

53. Thus, the Fraudulent Mobile Subscription Services' acts alleged above violate 18 U.S.C. § 1030(a)(4) and/or 18 U.S.C. § 1030(a)(5)(B). Moreover, the Fraudulent Mobile Subscription Services derive all or substantially all of their revenue through such violations. Hence, all or substantially all revenue of the Fraudulent Mobile Subscription Services (and consequently any funds paid by the Fraudulent Mobile Subscription Services) are derived from a "specified unlawful activity," as that term is defined in 18 U.S.C. § 1957(f)(3) and 18 U.S.C. § 1956(c)(7).

54. The Fraudulent Mobile Subscription Services pay Google for its AdWords services. On information and belief, this payment is made to a depository account held by Google at one or more "financial institutions" as that term is defined in 31 U.S.C. § 5312(a). On information and belief, many if not all of the Fraudulent Mobile Subscription Services have paid Google for its AdWords services well in excess of $10,000. Moreover, Google bills each of the Fraudulent Mobile Subscription Services for the AdWord services they use on a monthly or other periodic basis. On information and belief, many if not all of the Fraudulent Mobile Subscription Services

12

monthly or periodic payments to Google for the AdWords services exceed $10,000.

55.   Google knows (or consciously avoids knowing) that the Fraudulent Mobile Subscription Services derive all or substantially all of their revenue through unauthorized charges to users' cellular telephone accounts and therefore, all or-substantially all funds from the Fraudulent Mobile Subscription Services necessarily represented criminally derived property.

56.   Google violates 18 U.S.C. § 1957(a) by accepting payment from the Fraudulent Mobile Subscription Services for AdWords through a financial institution, when it knows that such payment represents criminally derived property, and such payment in fact represents the proceeds of a specified unlawful act.

57.   By reason of its violation of 18 U.S.C. § 1957(a), Google's acceptance of payment from the Fraudulent Mobile Subscription Services is an unlawful business practice and constitutes unfair competition under Cal. Bus. & Prof. Code § 17200.

58.   Plaintiff and the other Class members have been damaged by this UCL violation because they have ultimately paid additional fees to maintain their cellular services they would not have had to pay if the Fraudulent Mobile Subscription Services had not placed unauthorized charges on their cellular accounts. Absent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged by the Fraudulent Mobile Subscription Services. Absent Google's knowing violation of 18 U.S.C. § 1957(a), it would have never provided AdWords services to the Fraudulent Mobile Subscription Services, and Class members would never have provided their personal information to the Fraudulent Mobile Subscription Services (enabling them to place the unauthorized charges).

59.   Plaintiff, on her own behalf and behalf of the other Class members, seeks an order enjoining Google's unfair competition alleged herein, and restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count II: Breach of Contract**

60. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

61. The Content Policy incorporated into Google's Advertising Terms is a contract between Google and the Fraudulent Mobile Subscription Services.

62. Plaintiff and the other Class members are the intended third-party beneficiaries of the mutual obligations under the Content Policy alleged in Paragraphs 21 and 22. The Fraudulent Mobile Subscription Services understood the Content Policy relating to mobile subscription services was intended to protect Google users who were also cellular subscribers from unauthorized and inadequately disclosed charges.

63. The Fraudulent Mobile Subscription Services' landing pages do not comply with the Content Policy. Google breached its obligations, as alleged in Paragraphs 21 and 22, to only allow advertising that complied with the Content Policy.

64. Plaintiff and the other Class members have been damaged by Google's breach of the Content Policy because they have ultimately paid additional fees to maintain their cellular services they would not have had to pay if the Fraudulent Mobile Subscription Services had not placed unauthorized charges on their cellular accounts. Absent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged by the Fraudulent Mobile Subscription Services. Absent Google's breach of the Content Policy, it would never have displayed AdWords for the Fraudulent Mobile Subscription Services' misleading landing pages, and Class members would never have provided their personal information to the Fraudulent Mobile Subscription Services (enabling them to place the unauthorized charges).

65. Plainitiff, on her own behalf and behalf of the other Class members, seeks damages for Google's breach of contract.

**Count III: Negligence**

66. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

14

67.     Under the common law of California, Google had a duty to Class members when it voluntarily undertook to protect them from unauthorized charges by the Fraudulent Mobile Subscription Services. When it formulated, published, and enforced its Content Policy, Google expressed an intent to protect Class members from misleading landing pages used by mobile subscription services. When Google sold AdWords to the Fraudulent Mobile Subscription Services, the transaction was intended to influence Class members' mobile subscription purchasing decisions.

68.     The risk that Google's AdWords would provide advertising for mobile subscription services that made unauthorized and inadequately disclosed charges to Google users' cellular subscription accounts was foreseeable. Google voluntarily undertook a duty to limit and prevent that risk when it adopted the provisions of its Content Policy relating to mobile subscription services.

69.     Google breached that duty when it permitted the Fraudulent Mobile Subscription Services to advertise through its AdWords program.

70.     Plaintiff and the other Class members have been damaged by Google's breach of its duty because they have ultimately paid additional fees to maintain their cellular services they would not have had to pay if the Fraudulent Mobile Subscription Services had not placed unauthorized charges on their cellular accounts. Absent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged by the Fraudulent Mobile Subscription Services. Absent Google's breach of its Content Policy, it would have never displayed AdWords for the Fraudulent Mobile Subscription Services' misleading landing pages, and Class members would never have provided their personal information to the Fraudulent Mobile Subscription Services (enabling them to place the unauthorized charges).

71.     Plaintiff, on her own behalf and behalf of the other Class members, seeks damages for Google's negligence.

**Count IV: Aiding and Abetting**

72.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged

15

herein.

73. **Trespass to Chattels:** The Fraudulent Mobile Subscription Services intentionally and without informed consent, gained access to the cellular phones of Plaintiff and the other members of the Class, used these phones, occupied their memory, and disrupted the service for these phones.

74. The actions of the Fraudulent Mobile Subscription Services alleged herein imposed an additional marginal cost on Plaintiff and the other members of the Class's operation and use of their cellular phones. The Fraudulent Mobile Subscription Services interfered with Plaintiff and the members of Class's unencumbered use of their cellular phones. The function and operation of the cellular phones of Plaintiff and the other members of the Class was impaired by the unauthorized mobile content and corresponding charges placed on the cellular accounts of Plaintiff and the other members of the Class by the Fraudulent Mobile Subscription Services.

75. **Violation of the CFAA:** As alleged above, the Fraudulent Mobile Subscription Services violated the CFAA and damaged Plaintiff and the other members of the Class.

76. **Violation of the UCL:** The Fraudulent Mobile Subscription Services made misleading statements which reasonably led Plaintiff to believe that she would not be charged if she provided her cellular phone number. Specifically, the Fraudulent Mobile Subscription Services and their agents including m-Qube failed to clearly and accurately disclose the price, subscription period and cancellation procedure of their services and that Plaintiff would be charged for such mobile content services. The other Fraudulent Mobile Subscription Services made similar misrepresentations to other members of the Class.

77. Plaintiff and the other members of the Class were damaged because they relied on the misrepresentations by the Fraudulent Mobile Subscription Services. Specifically, Plaintiff and the other members of the Class paid more to maintain their cellular service than they would have otherwise paid, because of the unauthorized charges by

16

the Fraudulent Mobile Subscription Services.

78. The actions of the Fraudulent Mobile Subscription Services are unlawful and fraudulent business acts or practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

79. **Google's Knowledge:** As alleged above, the ordinary operation of the AdWords program gave Google ample opportunities to discovery that the acts of the Fraudulent Mobile Subscription Services were tortious, as alleged above. Google actually did learn and know that the Fraudulent Mobile Subscription Services committed the acts alleged above, and that such acts were tortious.

80. **Google's Assistance:** Despite its knowledge of the Fraudulent Mobile Subscription Services' tortious acts alleged above, Google continued to supply advertising to the Fraudulent Mobile Subscription Services through the AdWords advertising service. This advertising was an essential part of the Fraudulent Mobile Subscription Services' scheme, because they could not collect unwitting users' cellular numbers without Google driving Internet traffic towards their landing pages.

81. Under 18 U.S.C. § 1957(a) and/or Cal. Bus. & Prof. Code § 17200, Google had a separate and independent legal duty not to exchange advertising for funds it knew the Fraudulent Mobile Subscription Services had derived through the criminal and tortious acts alleged in this Complaint.

82. As a direct and proximate result of the aiding and abetting of these acts, Plaintiff and the other members of the Class have suffered injury, damage, loss, and harm, including, but not limited to, losses for payment of unauthorized mobile subscription charges appearing on their cellular telephone bills and for consumed computing services of their cellular telephones, including computer time, data processing, and storage capacity required to receive such unauthorized services. The wrongful conduct Google aided and abetted was a substantial factor in causing this harm.

83. Google's aiding and abetting of these wrongful acts was willful, oppressive, and in conscious disregard of Plaintiff's rights in contract, and Plaintiff is therefore entitled

17

1   WHEREFORE, Plaintiff prays that the Court enter judgment and orders in her favor

2 and against Defendant as follows:

3

    (a) An order certifying the Class, directing that this case proceed as

4       a class action, and appointing Plaintiff and her counsel to
       represent the Class;

5

    (b) Equitable and injunctive relief against Defendant, including a

6       constructive trust, an accounting, and an injunction prohibiting
       the continued unlawful business practices alleged in Count I;

7

8    (c) Damages;

9

    (d) Restitution and disgorgement of all ill-gotten gains unjustly

10       obtained and retained by Defendant through acts complained of
       herein;

11

    (e) An order granting reasonable attorneys' fees and costs, as well

12       as pre and post-judgment interest at the maximum legal rate; and

13    (f) Such other and further relief as this Court may deem
       appropriate.

14

15 Dated: April 30th, 2008

16              By:

17

18              Alan Himmelfarb
              KAMBEREDELSON LLC

19              2757 Leonis Boulevard
              Los Angeles, California 90058

20              (323) 585-8696
              ahimmelfarb@kamberedelson.com

21              Jay Edelson
              Myles McGuire

22              Ethan Preston
              KAMBEREDELSON LLC

23              53 West Jackson Boulevard
              Suite 550

24              Chicago, Illinois 60604
              (312) 589-6370

25              jedelson@kamberedelson.com
              mmcguire@kamberedelson.com

26              epreston@kamberedelson.com

27

28

**EXHIBIT A**

## oogle Inc. Advertising Program Terms

ese Google Inc. Advertising Program Terms ("Terms") are entered into by, as applicable, the customer signing these Terms or any docume
erences these Terms or that accepts these Terms electronically ("Customer") and Google Inc. ("Google"). These Terms govern Customer'
rticipation in Google's advertising program(s) ("Program") and, as applicable, any insertion orders or service agreements ("IO") executed b
tween the parties and/or Customer's online management of any advertising campaigns. These Terms and any applicable IO are collectively
the "Agreement." Google and Customer hereby agree and acknowledge:

**Policies.** Program use is subject to all applicable Google and Partner policies, including without limitation the Editorial Guidelines
lwords.google.com/select/guidelines.html), Google Privacy Policy (www.google.com/privacy.html) and Trademark Guidelines
ww.google.com/permissions/guidelines.html), and Google and Partner ad specification requirements (collectively, "Policies"). Policies may
any time. Customer shall direct only to Google communications regarding Customer ads on Partner Properties. Some Program features ar
"Beta," "Ad Experiment," or otherwise unsupported ("Beta Features"). To the fullest extent permitted by law, Beta Features are provided '
Customer's option and risk. Customer shall not disclose to any third party any information from Beta Features, existence of non-public Beta
cess to Beta Features. Google may modify ads to comply with any Policies.

**The Program.** Customer is solely responsible for all: (a) ad targeting options and keywords (collectively "Targets") and all ad content, ad
d ad URLs ("Creative"), whether generated by or for Customer; and (b) web sites, services and landing pages which Creative links or direct
and advertised services and products (collectively "Services"). Customer shall protect any Customer passwords and takes full responsibili
stomer's own, and third party, use of any Customer accounts. Customer understands and agrees that ads may be placed on (y) any conten
wided by Google ("Google Property"), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other
perty provided by a third party ("Partner") upon which Google places ads ("Partner Property"). Customer authorizes and consents to all s
cements. With respect to AdWords online auction-based advertising, Google may send Customer an email notifying Customer it has 72 ho
lodification Period") to modify keywords and settings as posted  The account (as modified by Customer, or if not modified, as initially post
emed approved by Customer in all respects after the Modification Period. Customer agrees that all placements of Customer's ads shall con
emed to have been approved by Customer unless Customer produces contemporaneous documentary evidence showing that Customer dis
h placements in the manner specified by Google. With respect to all other advertising, Customer must provide Google with all relevant Cre
date set forth in that Program's applicable frequently asked questions at www.google.com ("FAQ") or as otherwise communicated by Goo
stomer grants Google permission to utilize an automated software program to retrieve and analyze websites associated with the Services fo
I serving purposes, unless Customer specifically opts out of the evaluation in a manner specified by Google. Google may modify any of its
time without liability. Google also may modify these Terms at any time without liability, and Customer's use of the Program after notice th
ms have changed constitutes Customer's acceptance of the new Terms. Google or Partners may reject or remove any ad or Target for any
son.

**Cancellation.** Customer may cancel advertising online through Customer's account if online cancellation functionality is available, or, if n
prior written notice to Google, including without limitation electronic mail. AdWords online auction-based advertising cancelled online will
ving shortly after cancellation. The cancellation of all other advertising may be subject to Program policies or Google's ability to re-schedul
entory or cancel ads already in production. Cancelled ads may be published despite cancellation if cancellation of those ads occurs after a
licable commitment date as set forth in advance by the Partner or Google, in which case Customer must pay for those ads. Google may c
ediately any IO, any of its Programs, or these Terms at any time with notice, in which case Customer will be responsible for any ads alread
tions 1, 2, 3, 5, 6, 7, 8, and 9 will survive any expiration or termination of this Agreement.

**Prohibited Uses; License Grant; Representations and Warranties.** Customer shall not, and shall not authorize any party to: (a) generat omated, fraudulent or otherwise invalid impressions, inquiries, conversions, clicks or other actions; (b) use any automated means or form of data extraction to access, query or otherwise collect Google advertising related information from any Program website or property except as mitted by Google; or (c) advertise anything illegal or engage in any illegal or fraudulent business practice. Customer represents and warran ds and hereby grants Google and Partners all rights (including without limitation any copyright, trademark, patent, publicity or other rights) in vices and Targets needed for Google and Partner to operate Programs (including without limitation any rights needed to host, cache, route re, copy, modify, distribute, perform, display, reformat, excerpt, analyze, and create algorithms from and derivative works of Creative or Tar inection with this Agreement ("Use"). Customer represents and warrants that (y) all Customer information is complete, correct and current; s hereunder and Customer's Creative, Targets, and Customer's Services will not violate or encourage violation of any applicable laws, regul; le of conduct, or third party rights (including without limitation intellectual property rights). Violation of the foregoing may result in immediate his Agreement or customer's account without notice and may subject Customer to legal penalties and consequences.

**Disclaimer and Limitation of Liability.** To the fullest extent permitted by law, GOOGLE DISCLAIMS ALL WARRANTIES, EXPRESS OR :LUDING WITHOUT LIMITATION FOR NONINFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY RPOSE. To the fullest extent permitted by law, Google disclaims all guarantees regarding positioning, levels, quality, or timing of: (i) costs ; k through rates; (iii) availability and delivery of any impressions, Creative, or Targets on any Partner Property, Google Property, or section tl ks; (v) conversions or other results for any ads or Targets; (vi) the accuracy of Partner data (e.g. reach, size of audience, demographics or ; ported characteristics of audience); and (vii) the adjacency or placement of ads within a Program. Customer understands that third parties n ierate impressions or clicks on Customer's ads for prohibited or improper purposes, and Customer accepts the risk of any such impressions ks. Customer's exclusive remedy, and Google's exclusive liability, for suspected invalid impressions or clicks is for Customer to make a cla ind in the form of advertising credits for Google Properties within the time period required under Section 7 below. Any refunds for suspecter ressions or clicks are within Google's sole discretion. EXCEPT FOR INDEMNIFICATION AMOUNTS PAYABLE TO THIRD PARTIES HER D CUSTOMER'S BREACHES OF SECTION 1, TO THE FULLEST EXTENT PERMITTED BY LAW: (a) NEITHER PARTY WILL BE LIABLE NSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES (INCLUDING WITHOUT LIMITATION LOSS OF PROFIT VENUE, INTEREST, GOODWILL, LOSS OR CORRUPTION OF DATA OR FOR ANY LOSS OR INTERRUPTION TO CUSTOMER'S BUSI IETHER IN CONTRACT, TORT (INCLUDING WITHOUT LIMITATION NEGLIGENCE) OR ANY OTHER LEGAL THEORY, EVEN IF ADVIS E POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY :H PARTY'S AGGREGATE LIABILITY TO THE OTHER IS LIMITED TO AMOUNTS PAID OR PAYABLE TO GOOGLE BY CUSTOMER FC 'ING RISE TO THE CLAIM. Except for payment obligations, neither party is liable for failure or delay resulting from a condition beyond the r trol of the party, including without limitation to acts of God, government, terrorism, natural disaster, labor conditions and power failures.

**Agency.**
itomer represents and warrants that (s) it is authorized to act on behalf of and has bound to this Agreement any third party for which Custon ertises (a "Principal"), (b) as between Principal and Customer, the Principal owns any rights to Program Information in connection with thos Customer shall not disclose Principal's Program information to any other party without Principal's consent.

**Payment.**
itomer shall be responsible for all charges up to the amount of each IO, or as set in an online account, and shall pay all charges in U.S. Dol h other currency as agreed to in writing by the parties. Unless agreed to by the parties in writing, Customer shall pay all charges in accorda payment terms in the applicable IO or Program FAQ. Late payments bear interest at the rate of 1.5% per month (or the highest rate permiti ss). Charges are exclusive of taxes. Customer is responsible for paying (y) all taxes, government charges, and (z) reasonable expenses an ; Google incurs collecting late amounts. To the fullest extent permitted by law, Customer waives all claims relating to charges (including witl ation any claims for charges based on suspected invalid clicks) unless claimed within 60 days after the charge (this does not affect Custon

vords.google.com/select/TCUSbilling0806.html

d issuer rights). Charges are solely based on Google's measurements for the applicable Program, unless otherwise agreed to in writing. To ant permitted by law, refunds (if any) are at the discretion of Google and only in the form of advertising credit for only Google Properties. No se Terms or an IO may obligate Google to extend credit to any party. Customer acknowledges and agrees that any credit card and related i ment information that Customer provides to Google may be shared by Google with companies who work on Google's behalf, such as paym cessors and/or credit agencies, solely for the purposes of checking credit, effecting payment to Google and servicing Customer's account. ( ) provide information in response to valid legal process, such as subpoenas, search warrants and court orders, or to establish or exercise it its or defend against legal claims. Google shall not be liable for any use or disclosure of such information by such third parties.

### Indemnification.

itomer shall indemnify and defend Google, its Partners, agents, affiliates, and licensors from any third party claim or liability (collectively, "Li ing out of Use, Customer's Program use, Targets, Creative and Services and breach of the Agreement. Partners shall be deemed third par eficiaries of the above Partner indemnity.

### Miscellaneous.

E AGREEMENT MUST BE CONSTRUED AS IF BOTH PARTIES JOINTLY WROTE IT AND GOVERNED BY CALIFORNIA LAW EXCEPT NFLICTS OF LAWS PRINCIPLES. ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAI ALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA, AND GO D CUSTOMER CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS. The Agreement constitutes the entire and exclusive agre ween the parties with respect to the subject matter hereof, and supersedes and replaces any other agreements, terms and conditions applic ject matter hereof. No statements or promises have been relied upon in entering into this Agreement except as expressly set forth herein, a flicting or additional terms contained in any other documents (e.g. reference to a purchase order number) or oral discussions are void. Eac disclose the terms or conditions of these Terms to any third party, except to its professional advisors under a strict duty of confidentiality or assary to comply with a government law, rule or regulation. Customer may grant approvals, permissions, extensions and consents by emai jifications by Customer to the Agreement must be made in a writing executed by both parties. Any notices to Google must be sent to Googl ertising Programs, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA, with a copy to Legal Department, via confirmed facsimile, y sent via first class or air mail or overnight courier, and are deemed given upon receipt. A waiver of any default is not a waiver of any subs auit. Unenforceable provisions will be modified to reflect the parties' intention and only to the extent necessary to make them enforceable, a aining provisions of the Agreement will remain in full effect. Customer may not assign any of its rights hereunder and any such attempt is v Customer and Google and Partners are not legal partners or agents, but are independent contractors. In the event that these Terms or a F ire or is terminated, Google shall not be obligated to return any materials to Customer. Notice to Customer may be effected by sending an e jil address specified in Customer's account, or by posting a message to Customer's account interface, and is deemed received when sent ( o more than 15 days after having been posted (for messages in Customer's AdWords interface).

*Augu*

 **AdWords Help Center**

Google Help > AdWords Help > Text ads

Change Language: Engli

# AdWords Advertising Policies

## Search AdWords Policies

Example: *pop-up or spelling policy*

[ Search Policies ]

**Select your ad type:**

[ Text ads ]

**Editorial & Format »**

**Content »**

- Academic Aids
- Aids to Pass Drug Tests
- Alcohol
- Anabolic Steroids
- 'Anti' and Violence
- Automated Ad Clicking
- Bulk Marketing
- Copyright
- Counterfeit Designer Goods
- Data Entry Affiliates
- Dialers
- Drugs and Drug Paraphernalia
- e-Gold
- Fake Documents
- Fireworks and Pyrotechnic Devices
- Gambling
- Hacking and Cracking
- Miracle Cures
- Mobile Subscription Services

Policy Home > Text ads > Content

## Content Policy

The policies listed in this section complement our Terms and Conditions and describe Google's advertising policies with regards to products and services. These policies may apply to ads and the content of your site

Application of our policies will always involve an element of discretion and we reserve the right to reject or approve any ads. As noted in our Terms & Conditions, you represent and warrant that your advertisements and/or website comply with all applicable laws.

### Academic Aids

**Don't promote unacceptable academic aids.**

Advertising is not permitted for academic aids. This includes 'test-taking' services in which someone takes an exam for someone else and academic paper-writing services providing custom/pre-written theses, dissertations, etc.

### Aids to Pass Drug Tests

**Don't promote aids to pass drug tests.**

Advertising is not permitted for the promotion of products designed to help someone pass a drug test. This includes products such as drug cleansing shakes and urine test additives.

### Alcohol

**Don't promote unacceptable alcohol products.**

Restrictions on the promotion of alcohol vary based on local regulations and type of alcoholic product

- Ads are not permitted to directly promote hard alcohol and liqueurs. This means that hard alcohol cannot be promoted in ad text or be the purpose of your site (occupying a significant portion of your

- Political Advertising
- Prescription Drugs and Related Content
- Prostitution
- Scams/Phishing for Personal Information
- Sexual & Adult Content
- Solicitation of Funds
- Template Sites for Ad Networks
- Tobacco and Cigarettes
- Traffic Devices
- Weapons
- Webmaster Guidelines Violations

**Link »**
**View all policies »**

Double Serving
AdWords Terms & Conditions
Google Privacy Policy
Advertising in China
Invalid Clicks

site).
- Advertisements for beer may target countries where such ads comply with local regulations. However, beer ads may not target the United States, U.S. territories (American Samoa, Guam, Puerto Rico and the U.S. Virgin Islands), India, Pakistan, Sri Lanka, Thailand, and Malaysia.
- Advertisements for champagne and wine are allowed everywhere that such advertisements comply with local regulations.
- Since we consider beer, wine, and champagne to be products intended for the sale and consumption by adults, ads promoting these products will be given a Non-FamilySafe status.
- Please note that some jurisdictions may enforce any of these additional regulations:
  - require government permits for the advertisement of alcoholic beverages,
  - prohibit advertisements for beverages with a certain level of alcohol content,
  - and/or require certain disclaimers in advertisements for alcohol beverages.

It is the advertiser's responsibility to comply with all local laws.

**Anabolic Steroids**

**Don't promote anabolic steroids.**

Advertising is not permitted for anabolic steroids, muscle-enhancing stacks and cycles, bodybuilding steroid supplements, and related content, irrespective of an advertiser's claims of legality.

**'Anti' and Violence**

**Don't promote violence or advocate against a protected group.**

Ad text advocating against any organization, person, or group of people is not permitted.

Advertisements and associated websites may not promote violence or advocate against a protected group. A protected group is distinguished by their

- Race or ethnic origin
- Color
- National origin
- Religion
- Disability
- Sex
- Age
- Veteran status
- Sexual orientation/Gender identity

**Automated Ad Clicking**

**Don't promote automated ad clicking.**

Advertising is not permitted for the promotion of automated ad clicking products and services.

## Bulk Marketing

**Don't promote bulk marketing products.**

Advertising of bulk marketing products is not permitted if the stated or implied use of the following products is unsolicited spam:

* Email lists that are not opt-in
* Bulk email software
* Bulk messaging

## Copyright

**Don't promote copyrighted content without permission.**

Copyrights are important business assets in which the copyright holder maintains exclusive rights. You must not use AdWords to promote the copying or distribution of copyrighted content for which you don't have consent from the copyright holder and which is not otherwise permitted by law.

To learn more about how we handle copyright issues within the AdWords program, view the Digital Millennium Copyright Act and our copyright policy and procedures

## Counterfeit Designer Goods

**Don't advertise counterfeit designer goods.**

Advertising is not permitted for products that are replicas or imitations of designer goods. A replica good contains the trademarked name or logo of a designer brand but is not made by that brand.

## Data Entry Affiliates

**Don't advertise for data entry affiliate programs.**

Advertising is not permitted for the promotion of data entry affiliate programs. This includes ads directing users to sites that promote the creation/data entry of more ads that direct users to the same site.

There are no exceptions to this policy, which is intended to protect both advertisers and AdWords users.

## Dialers

**Don't promote dialer-related products.**

A dialer is a program that will cut your chosen Internet connection and establish a new connection to a premium rate number. In order to protect our users and maintain the quality of advertising we display, we don't allow ads and sites that require or solicit the use of a dialer program

### Drugs and Drug Paraphernalia

**Don't promote drugs and drug paraphernalia.**

Advertising is not permitted for the promotion of drugs and drug paraphernalia. This includes drug accessories, illegal drugs, and herbal drugs such as salvia and magic mushrooms.

### e-Gold

**Don't promote e-gold or related products.**

Advertising is not permitted for e-gold and e-gold related content. This includes, but is not limited to, e-gold exchange, e-gold investment, and e-gold accounts.

### Fake Documents

**Don't promote fake documents.**

Advertising is not permitted for the promotion of false documents such as fake IDs, passports, social security cards, immigration papers, diplomas, and noble titles.

### Fireworks and Pyrotechnic Devices

**Don't promote fireworks or pyrotechnic devices.**

Advertising is not permitted for the promotion of fireworks and pyrotechnic devices.

### Gambling

**Don't promote online gambling or related sites.**

Advertising is not permitted for the promotion of online casinos and gambling activities.

This includes, but is not limited to, the following:

- sports books
- lotteries
- bingo
- poker

- sites that provide tips, odds, and handicapping
- software facilitating online casinos and gambling
- gambling tutoring online
- gambling related eBooks
- 'play for fun' gambling or casino games of skill including sites where the primary purpose is 'play for fun' gambling
- affiliate sites with the primary purpose of driving traffic to online gambling sites

## Hacking and Cracking

### Don't promote hacking and cracking sites.

Advertising is not permitted for the promotion of hacking or cracking and tools that aid in copyright infringement. For example, we do not permit:

- Sites that provide instructions or equipment to illegally access or tamper with software, servers, or websites
- Sites or products that enable illegal access of cell phones and other communications or content delivery systems/devices
- Mod chips, such as devices that unlock copyright protection
- Products that descramble cable and satellite signals in order to get free cable services
- Copied or backed-up version of software, CDs, or DVDs not intended for personal use
- Products or services that circumvent digital rights management technologies or technical protection measures for copyrighted works

## Miracle Cures

### Don't promote miracle cures.

Advertising is not permitted for the promotion of miracle cures, such as 'Cure cancer overnight"

## Mobile Subscription Services

### Mobile subscription sites must display the required service details.

We allow the advertisement of mobile content services only when the site clearly and accurately displays price, subscription, and cancellation information. This includes, but is not limited to, sites that promote downloading ringtones, wallpaper, or text messages for predictions, love life advice, news, personality quizzes, and/or other entertainment services.

If your site promotes mobile content services and requires users to enter personal information such as names or phone numbers, your site must meet the following criteria:

1. Prominently display these details on the page where users first enter personal information (such as a

name or phone number):
- The identification of your service as a subscription
- The price of the service
- The billing interval (such as per week or once per month)

2. On the first page where users enter personal data, provide a prominent opt-in checkbox or other clea[r] mechanism indicating that the user knowingly accepts the price and subscription service. The user should not be able to proceed without opting in.

3. Clearly display cancellation information (or a clearly marked link to cancellation instructions) on your ad's landing page, the first page of your site users see after clicking on your ad.

All of the items above should be located in a prominent place on your webpage and should be easy to find, read, and understand.

## Political Advertising

**Political advertising is allowed.**

We permit political advertisements regardless of the political views they represent. Stating disagreement with or campaigning against a candidate for public office, a political party, or public administration is generally permissible.

However, political ads must not include accusations or attacks relating to an individual's personal life, nor can they advocate against a protected group.

If you're soliciting political donations, your ad's landing page must clearly state that the donations are non-tax-deductible.

Political campaigns and candidates with questions about these policies are encouraged to contact our Elections Team at elections@google.com

## Prescription Drugs and Related Content

**The promotion of prescription drugs and related content is restricted.**

Google AdWords only accepts pharmaceutical advertising from pharmacies that are based in the U.S. or Canada. Pharmacy-related ad campaigns can only target the U.S., U.S. territories (American Samoa, Guam, Puerto Rico, U.S. Virgin Islands), and/or Canada. Ads for prescription drugs will not be displayed in other countries. Additionally, Google AdWords requires all online pharmacy advertisers and affiliates to be a member of the PharmacyChecker Licensed Pharmacy Program. Ads ill not run until a valid PharmacyChecker identification number is provided.

Note that pet pharmacies and affiliates advertising pet prescription drugs when targeting the U.S. or Canada

must also be PharmacyChecker approved.

If you meet the above requirements and want to get started, review Google's online pharmacy qualification process. If you are not granted a PharmacyChecker ID, we won't be able to run your ads. To be fair to all of our pharmacy advertisers, we make no exceptions.

### Prostitution

**Don't promote prostitution.**

Advertising is not permitted for the promotion of prostitution

### Scams/Phishing for Personal Information

**Don't use phishing or other scamming tactics.**

Advertising is not permitted for sites collecting sensitive personal information or money with fake forms, false claims, or unauthorized use of Google Trademarks. Examples of personal information include email addresses, user names, passwords, and/or payment information.

### Sexual & Adult Content

**Sexual & adult content is restricted.**

Advertising is not permitted for the promotion of child pornography, any sexually suggestive content involving children, or other non-consensual sexual material. We also do not permit ads promoting teen pornography or other pornography that describes models who might be underage.

Examples include, but are not limited to, advertisements for 'teen xxx', 'teen porn', and 'school girl' pornography. Please note that Google does not allow this content regardless of whether or not a site complies with government regulations on this kind of advertising.

While approvable adult-related ads can show in some countries, certain countries such as Germany, China Korea, and India will not show any ads categorized as 'Adult Sexual Content' such as ads with any pornographic content. There may be other effects of family status on how your ads are served.

### Solicitation of Funds

**The solicitation of funds is restricted.**

If the solicitation of funds is promoted in ad text, the ad's landing page should clearly display tax-exempt status such as 501(c)(3) status in the United States, and should state whether the donations are tax-deductible in full or in part. Other countries need to have an equivalent status (must be a registered charity or not-for-profit organization).

However, for the solicitation of political donations, the ad's landing page must clearly state that the donation are *not* tax-deductible.

### Template Sites for Ad Networks

**Don't promote template sites for ad networks such as AdSense.**

Advertising is not permitted for the promotion of template sites for ad networks. This includes products and services that create template or pre-generated websites solely intended to profit from ads.

### Tobacco and Cigarettes

**Don't promote tobacco and cigarettes.**

Advertising is not permitted for the promotion of tobacco or tobacco-related products, including cigarettes, cigars, tobacco pipes, and rolling papers.

### Traffic Devices

**Don't promote illegal traffic devices.**

Advertising is not permitted for the promotion of radar jammers, license plate covers, traffic signal changers and related products.

### Weapons

**The promotion of weapons is restricted.**

Advertising is not permitted for the promotion of certain weapons, such as firearms, firearm components, ammunition, balisongs (switchblades), butterfly knives, and brass knuckles

### Webmaster Guidelines Violations

**Don't promote unacceptable webmaster techniques.**

Advertising is not permitted for the promotion of cloaking, keyword stuffing, search engine spamming, and doorway pages. These unacceptable techniques and services are described in the Google Webmaster Guidelines. Ads and sites promoting such techniques will be disapproved.

We also recommend that you comply with the rest of the Google Webmaster Guidelines which suggest best practices for web development.

©2008 Google - <u>AdWords Home</u> - <u>AdWords Advertising Policies</u> - <u>Contact Us</u> - <u>Privacy Policy</u>

om/support/bin/static.py?page=guidelines.cs&topic=9271&subtopic...

Google AdWords Help (

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Alan Himmelfarb SBN 90480 (62) <br> KamberEdelson, LLC <br> 2757 Leonis Blvd <br> Vernon, California 90058 <br> TELEPHONE NO.: 323-585-8696   FAX NO.: 323-585-8198 <br> ATTORNEY FOR (Name): JENNA GODDARD | FILED <br> UCS <br> APR 30 2008 <br> KIRI TORRE <br> CHIEF EXEC. OFFICER/CLERK <br> SUPERIOR COURT OF CA <br> COUNTY OF SANTA CLARA <br> BY _____ <br>                          J. Cao-Nguy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 N. 1st Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown

| CASE NAME: <br> Goddard v. Google, | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 108CV111658 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [✓] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | Real Property | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action (specify):
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
April 30, 2008     Alan Himmelfarb
         (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

# CIVIL LAWSUIT NOTICE

Superior Court of California, County of Santa Clara
191 N. First Street, San Jose, CA 95113

CASE NUMBER: **ATTACHMENT CV-5012**
**108CV111658**

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

> *DEFENDANTS* (The person(s) being sued): You must do each of the following to protect your rights:
>
> 1. You must file a written response to the *Complaint*, in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
> **Warning: If you do not do these three things, you may automatically lose this case.**

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

| | |
|---|---|
| Your Case Management Judge is: **Joseph Huber** | Department: **8C** |

The 1st CMC is scheduled for: (Completed by Clerk of Court)
  Date: **9|26|00**  Time: **10:00 am**  in Department **8C**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
  Date: _____ Time: _____ in Department _____

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed ADR *Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

APR 30 2008

UCS

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA

BY_____ DEPUTY

J. Cao-Nguyen

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GOOGLE, INC., a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JENNA GODDARD, on her own behalf and on behalf of all others
similarly situated

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of the State of California - Santa Clara
191 N. First Street, San Jose CA 95113

CASE NUMBER:
*(Número del Caso):*
108 CV 111658

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alan Himmelfarb of KAMBEREDELSON LLC, SEN 90480 (SS)
2757 Leonis Blvd., Los Angeles CA 90058, (323) 585-8696

DATE: APR 30 2008    KIRI TORRE    Clerk, by    J. Cao-Nguyen    , Deputy
*(Fecha)*    Chief Executive Officer/Clerk    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

# EXHIBIT 2

**E-FILED**

May 9, 2008 2:58 PM
KIRI TORRE
Chief Executive Officer
Superior Court of CA, County of Santa Clara
Case #1-08-CV-111658 Filing #G-8478
By R. Walker, Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

|  |  |
|---|---|
| JENNA GODDARD, on her own behalf and on behalf of all others similarly situated, | Case No.: 1-08-CV-111658 |
| Plaintiff, | |
| vs. | |
| GOOGLE, INC., a Delaware corporation, | **ORDER DEEMING CASE COMPLEX** |
| Defendants. | |

**Judge:** Hon. Joseph H. Huber

**Dept:** 8C

**Complaint Filed:** April 30, 2008

WHEREAS, the Complaint was filed by Plaintiff Jenna Goddard ("Plaintiff"), individually and on behalf of all others similarly situated, in the Santa Clara County Superior Court on April 30, 2008;

WHEREAS, Plaintiff filed a Civil Case Cover Sheet deeming the matter provisionally complex on April 30, 2008;

WHEREAS, the Civil Lawsuit Notice was issued by the Court on April 30, 2008, assigning the matter to Department 8C (Complex Civil Litigation), the Hon. Joseph H. Huber presiding, pending a ruling on the complexity issue;

E-Filed: May 9, 2009 2:58 PM, Superior Court of CA, County of Santa Clara, Case #1-08-CV-111658 Filing #G-8478

1   IT IS HEREBY ORDERED that:

2   The Court determines that the above-referenced case is **COMPLEX** within the meaning

3   of California Rules of Court 3.400. The matter remains assigned, for all purposes, including

4   discovery and trial, to Department 8C (Complex Civil Litigation), the Hon. Joseph H. Huber

5   presiding. The Case Management Conference remains set for **September 26, 2008 at 10:00**

6   **a.m. in Department 8C**.

7   The parties are directed to the Electronic Filing and Service Standing Order and to the

8   Guidelines for the Complex Civil Litigation Department, copies of which may be downloaded

9   from www.scefiling.org.

10   All parties are hereinafter ordered to submit to the Court's E-Filing website digital

11   copies of all documents that were previously manually filed prior to the entry of this Order.

12   Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the

13   Master Service List shall be under the auspices of (1) Plaintiff Jenna Goddard, as the first-

14   named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.

15   The Complex Case Fee is due from all parties immediately [Government Code Sections

16   70616(a), 70616(b)].

17   Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

18   SO ORDERED.

19

20   Dated: 5-9-08

21   Judge Joseph H. Huber

22

23

24

25

26

27

28

*Goddard v. Google, Inc.*
*Santa Clara County Superior Court, Case No. 1-08-CV-111658*
*Order Deeming Case Complex*