1  ALAN HIMMELFARB- SBN 90480
   KAMBEREDELSON, LLC
2  2757 Leonis Boulevard
   Los Angeles, California 90058
3  t: 323.585.8696

4  JAY EDELSON (*Pro Hac Vice pending*)
   MYLES MCGUIRE (*Pro Hac Vice pending*)
5  KAMBEREDELSON, LLC
   53 West Jackson Blvd.
6  Suite 550
   Chicago, IL 60604
7  t: 312.589.6370
   f: 312.873.4610
8
   ATTORNEYS FOR PLAINTIFF
9

10

11

12
                      **UNITED STATES DISTRICT COURT**
13
                      **NORTHERN DISTRICT OF CALIFORNIA**
14
                              **SAN JOSE DIVISION**
15

16 | JENNA GODDARD, individually and on behalf of a class of similarly situated individuals, | CASE NO. 5:08-cv-02738-JF |

   **PLAINTIFF'S MOTION TO REMAND**

17

18              Plaintiff,                      Date: September 5th, 2008
                                                Time: 9:00 AM
19  v.                                          Judge: Jeremy Fogel
                                                Date Action Filed: 5/30/2008
20  GOOGLE INC., a Delaware corporation,        No Trial Date Set

21              Defendant.

22

23

24

25

26

27

28

---

Plaintiff's Notice of Motion and Motion to Remand                No. 5:08-cv-02738-JF

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 5, 2008, at 9am, or as soon thereafter as the matter may be heard before the Honorable Jeremy Fogel of the United States District Court for the Northern District of California, located at U.S. Courthouse, 450 Golden Gate Avenue, 4th Floor, San Francisco, California 94102, Plaintiff Jenna Goddard will and hereby does move under 28 U.S.C. § 1447(c) for an order remanding this action to the Superior Court of the State of California, County of Santa Clara, with attorneys' fees and costs awarded to Plaintiff.

Defendant, as the removing party, bears the burden of showing by a preponderance of the evidence that removal is proper. As set forth in Plaintiff's Memorandum of Points and Authorities in Support of her Motion to Remand, Defendant has not met that burden, failing to establish the amount in controversy exceeds $5,000,000 as required by the Class Action Fairness Act ("CAFA"). Therefore, remand to state court is appropriate.

DATED: June 30, 2008

**KAMBEREDELSON, LLC**

By: /s/ Alan Himmelfarb
ALAN HIMMELFARB
One of the Attorneys for Jenna
Goddard, individually and on behalf of
a class of similarly situated individuals

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Google, Inc. ("Google") allows mobile content providers who advertise through Google Adwords to operate misleading "landing pages" in violation of Google's own stated policies. As a result, Plaintiff and others who visited those landing pages were injured in the form of being charged for unauthorized mobile content services on their wireless telephone bills (ringtones, horoscopes, sport updates etc.). Determining the amount at issue for jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2005), requires at a minimum the identification of: (1) the 250 largest advertisers of mobile subscription services (ranked by monies paid to Google) on or through Google; (2) the number of such advertisers operating landing pages in violation of the Google Content Policy; (3) the money Google received from the percentage of such advertisers operating landing pages in violation of the Google Content Policy; (4) the number of visitors Google referred to such rogue landing pages; and (5) the monies such visitors were ultimately charged for unauthorized mobile subscription services. Google carries the burden of proof, yet its Notice of Removal makes no attempt at answering any of these questions—keeping the extent of the problem a total mystery.

Google does little more than assert that the amount in controversy exceeds the $5,000,000 threshold for jurisdiction under the CAFA. (Notice of Removal ¶¶ 7, 21, 27). Despite its burden as the removing party, Google fails to provide any evidence—let alone a preponderance— to show visitor injuries exceed $5,000,000. *See e.g. Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (burden on party seeking removal). Google admits that Plaintiff's Complaint does not allege any specific amount in controversy and instead argues the "nature" and "magnitude" of the claims, and the "*potential* size" of the class

establish that over $5,000,000 is at issue. (Notice of Removal ¶¶ 17-21) (emphasis added). As two judges in the Northern District of Illinois and one in the Southern District of Florida have held in rejecting similar arguments, Google has not shown the case's size satisfies CAFA jurisdiction. *See Paluzzi v. Cellco P'ship*, No. 08 C 0405 (N.D. Ill. Apr. 29, 2008) (attached hereto as Exhibit A), *petition for leave to appeal denied*; *Gray v. Cellco P'ship*, No. 08-60146 (S.D. Fla. March 26, 2008) (attached hereto as Exhibit B).

### Statement of Facts

Plaintiff, Jenna Goddard ("Goddard"), brings this putative class action seeking to prevent Google from further allowing fraudulent mobile subscription services to be advertised on its site. Google allows advertisements for such services to link to landing pages that fail to comply with its own Advertising Program Terms (the "Adwords Policy"). (Compl., ¶¶ 18-20). Google also continues to receive and retain fees from those sites, despite knowing (or consciously avoiding knowledge) of non-compliance and that such sites earn all or virtually all of their revenue through unauthorized mobile content charges. (Compl., ¶¶ 25-26, 28-29).

Premium text message services, also known as "mobile content" and "mobile subscription" services, include products such as customized ring tones, sports score reports, weather alerts, stock tips, horoscopes, interactive radio, and participatory television. (Compl., ¶ 7). Armed only with the cellular telephone number attached to a wireless account, a mobile content provider can cause a charge to be placed on that cellular telephone costumer's bill. (Compl., ¶ 9). To accomplish this, mobile content providers partner with third-parties known as "aggregators," who negotiate the necessary relationships with wireless carriers. (Compl., ¶ 10). When informed that a cellular phone number has purchased particular mobile content, aggregators instruct the appropriate cellular carrier to add the charge to the bill associated

with the cellular phone number. (Compl., ¶ 10).

Google's advertising services are an essential step in driving users to mobile content subscription service websites, and without the advertising mobile subscription services would be unable to earn virtually any revenue. (Compl., ¶ 13). Google's AdWords program allows mobile subscription services to select keywords that correspond to their advertisements, which in turn causes the advertisements to be displayed when someone performs a search using a keyword. (Compl., ¶¶ 15-16). As part of AdWords, Google has voluntarily generated a list of products and services that are either illegal or commercially unacceptable—products which Google does not allow to be advertised. (Compl., ¶ 17).

The Adwords Policy provides an exception for mobile subscription services, but requires the landing pages of such services' websites to clearly and accurately disclose a host of important and highly relevant information about purchasing mobile content, such as the service's price, subscription period and cancellation procedures. (Compl., ¶ 18). Google's refusal to enforce its policy has allowed it to receive and retain substantial fees from mobile subscription advertisers at the expense of consumers like Goddard. (Compl., ¶¶ 19-20, 24-26, 28-32). To be sure, the proposed Class is restricted to those persons who received unwanted mobile content after visiting a non-compliant landing page when they clicked on a Google Adwords link. (Compl. ¶¶29-30). The proposed Class is further limited in that only the landing pages operated by the 250 largest mobile content providers who advertise through Google Adwords are at issue. (Compl. ¶¶29-30).

**Argument**

**A. Google bears the burden of establishing CAFA jurisdiction**

CAFA provides, in relevant part, that "the district courts shall have original

jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," where there are at least 100 members of the putative class, and at least one member of the putative class is a citizen of a state different from the defendant. 28 U.S.C. § 1332(d).

Google, as the removing party, bears the burden of proving, by a preponderance of the evidence, that the CAFA requisites have been satisfied, and specifically that the amount in controversy exceeds $5,000,000. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). It is also well-established that statutes conferring removal jurisdiction upon federal courts are to be construed narrowly. *See Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal. . . .") (citations omitted).

In determining whether Google has met its burden, the Court may look to the Complaint to see "whether it is 'facially apparent' [] that the jurisdictional amount is in controversy;" but if not, "may consider facts in the removal petition, and [] require parties to submit summary-judgment-type evidence. . . ." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (1997) (internal citations omitted). Conclusory allegations are insufficient to support jurisdiction. *Id.*; *Gaus*, 980 F.2d at 567. Evidence a removing party might use to establish federal jurisdiction includes admissions in state court, calculations based on the complaint's allegations, or introducing affidavits from the defendant's employees or experts. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006).

**B. Google has not provided any evidence of the amount in controversy**

Without providing an evidentiary basis, Google asks the Court to accept on faith that there is over $5,000,000 at stake. Google relies on the mere language of the Complaint, yet

acknowledges that "[t]he Complaint does not allege an exact amount in controversy." (See Notice of Removal ¶¶ 17, 19-21). Conspicuously absent from Google's arguments are calculations based upon the number of rogue landing pages,[1] the number of visitors to those websites, the amount of unauthorized mobile content charges generated, or the actual revenue Google has received and retained from these fraudulent charges.

The only citation the Notice of Removal advances is Plaintiff's allegation that many of the non-compliant mobile content providers make periodic payments to Google in amounts of $10,000 or more. (Notice of Removal ¶ 20). That is it. There is not an iota of evidence suggesting how many rogue pages exist, let alone the number that actually make these payments and the payment amounts. Unfortunately for Google, the Court cannot base its jurisdiction on a defendant's "speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002; see also *Paluzzi*, No. 08 C 0405 at 3.

In *Paluzzi*, defendant Verizon Wireless ("Verizon") was unsuccessful in establishing CAFA jurisdiction, even while providing more evidence than Google has here. *Id*. Verizon argued that to meet the CAFA threshold, the unauthorized charges complained of need only represent a percentage of its total mobile content revenue. *Id.* The court was not persuaded by that calculation, holding that regardless of the percentages, Verizon failed to provide the evidence necessary for the court to make a determination as to the amount in controversy. *Id.*

Likewise, in *Fiddler*, the court declined to find CAFA jurisdiction based on

---

[1] Again, the proposed class is restricted so as to only cover "[a]ll persons or entities who suffered damages as a result of clicking on a Google Adwords advertisement for mobile subscription services," where the advertisement linked to a landing page operated in violation of the Adwords Policy. This group is further limited to only the largest 250 mobile content providers who advertise through Google Adwords. (See Compl., ¶¶ 29, 40). Given these limitations, it is surprising Google fails to even identify the 250 mobile content providers who purchase the largest amount of Google Adwords advertising.

1  percentages where the defendants presented evidence of "total gross revenue from third-party
2  mobile content from Illinois subscribers' and the 'aggregate retail value of the traffic'
3  processed by the other." *Fiddler*, 2008 WL 2130436, at *2; *see also Gray*, No. 08-60146
4  (refusing to speculate as to the size of the class and the claims of each class member, or to
5  assume that a certain percentage of charges were unauthorized).

Unless and until Google provides some evidence showing the amount of money lost by visitors of the landing pages in breach, or the value it received and retained from fraudulent mobile subscription services, it has failed to meet its burden. *See Fiddler*, 2008 WL 2130436 (remanding where defendants' evidence of "total sales during the relevant time period brings [d]efendants no closer to establishing the amount in controversy in this case since [d]efendants have not provided even an estimation of the portion of total sales implicated by [plaintiff's] claims"); *accord Paluzzi*, No. 08 C 0405 at 3; *Gray*, No. 08-60146 at 4. Because Google has not proven by a preponderance of the evidence that amount in controversy exceeds $5,000,000, this Court lacks jurisdiction over the underlying matter. Further, because Google failed to advance an objectively reasonable basis for seeking removal, Plaintiff should be awarded the attorneys' fees and costs necessary to bring this motion. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court remand the underlying matter to the Superior Court of the State of California, County of Santa Clara, and order Google to pay reasonable attorneys' fees and costs.

Dated June 30, 2008

Respectfully submitted,

By: /s/ Alan Himmelfarb
ALAN HIMMELFARB
One of the Attorneys for Jenna Goddard, individually and on behalf of a class of similarly situated individuals

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that a copy of Plaintiff's Notice of Motion and Motion to Remand, Memorandum of Points and Authorities in Support of Motion to Remand, and [Proposed] Order Granting Plaintiff's Motion to Remand, were served upon the parties below in accordance with Fed. R. Civ. P. 5(b) by causing a copy of the same to be placed in the United States Mail, postage prepaid, and sent to their last known address as follows:

Karen Johnson-McKewan
Nancy E. Harris
Nikka N. Rapkin
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

*Attorneys for Defendant Google, Inc.*

Dated: June 30, 2008

By: /s/ Alan Himmelfarb
ALAN HIMMELFARB
One of the Attorneys for Jenna Goddard, individually and on behalf of a class of similarly situated individuals

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN PALUZZI, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>CELLCO PARTNERSHIP, a Delaware General Partnership d/b/a Verizon Wireless, and MBLOX, INC., a Delaware corporation,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)　No.  08 C 0405<br>)<br>)　Judge Robert W. Gettleman<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

　　　　Plaintiff Susan Paluzzi brought a five count putative class action complaint in the Circuit Court of Cook County, Illinois, against defendants Cellco Partnership d/b/a Verizon Wireless ("Verizon") and mBlox, Inc., claiming that defendants have a practice of unlawfully charging cellular telephone customers for unauthorized products and services.  Verizon removed the case to this court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which gives federal district courts original jurisdiction over class actions in which the amount in controversy exceeds $5 million and any member of a class of over 100 plaintiffs is a citizen of a state different from the state of any defendant.  Plaintiff has moved to remand, arguing that the court lacks subject matter jurisdiction and that Verizon has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5 million.  The motion is granted.

　　　　Plaintiff's complaint, brought on behalf of herself and two classes, seeks to stop Verizon's practice of billing cellular telephone customers for unauthorized mobile content services.  Such services, also known as premium text message services, include ringtones, sports score reports, weather alerts, horoscopes, and interactive radio, delivered to customers' mobile

devices. Mobile content service providers charge and collect from their customers by "piggybacking" on cellphone bills sent out by wireless carriers such as Verizon. To accomplish this, mobile content service providers partner with third-party aggregators such as defendant mBlox, who act as middlemen between the numerous mobile content service providers and the carriers. When a mobile content service provider provides its services to a particular carrier's customer, the aggregator with whom the service provider has contracted and the carrier each retain a portion of the mobile content service charge collected from the customer.

Plaintiff claims that Verizon has set up and maintained its billing system in a manner that results in unauthorized and erroneous charges for mobile content services. She seeks to represent two classes: (1) a carrier class; and (2) an aggregator class. Plaintiff asserts claims for breach of contract, restitution, tortious interference with contract, computer tampering in violation of 720 ILCS 5/16D-3 and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

Defendant, as proponent of federal jurisdiction, bears the burden of establishing removal jurisdiction. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447-48 (7th Cir. 2005). A removing party must prove by the preponderance of the evidence that the amount in controversy exceeds the threshold in order to meet this burden. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 541, 42 (7th Cir. 2006).

To meet its burden, Verizon has provided evidence that it has 400,000 wireless customers in Illinois who subscribed to premium text messaging services, and that since inception those subscribers have been billed a total of $13 million for mobile services Verizon argues that

2

because plaintiff's complaint places at issue Verizon's entire system for billing mobile content, all charges that Verizon has collected from mobile customers are in controversy.

Verizon characterizes plaintiff's complaint too broadly. Plaintiff's claim includes charges for unauthorized services, not all amounts Verizon has billed and collected for mobile content services. It is impossible to tell from Verizon's submissions how many of its customers were overbilled, and by how much. To conclude that more than $5 million is in controversy the court would have to speculate as to the size of the classes and the average amount of recovery for each class member, or simply assume that the amount overcharged is approximately 38% of the total amount billed by Verizon for mobile content services. Such speculation is an insufficient basis for the assertion of subject matter jurisdiction. See Reason v. General Motors Co., 896 F. Supp. 829, 835 (S.D. Ind. 1995) (citing N.L.F.C., Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir. 1993)).

Finally, while defendant's argument that potential punitive damages and attorney's fees should be included in establishing the amount in controversy is legally correct, it is insufficient to carry Verizon's burden. Any award of punitive damages must be based on the amount of compensatory damages awarded, and as already noted that amount is too speculative to be determined. Rather than supplying a good faith estimate of the actual amount in controversy as is Verizon's burden, adding putative damages just adds more speculation into the mix. With respect to attorney's fees, plaintiff is correct that the amount of attorney's fees to be considered as part of the amount in controversy is the amount of fees incurred at the time jurisdiction is invoked. Atteberry v. Esurance Ins. Services, Inc., 473 F. Supp.2d 876, 877 (N.D. Ill. 2007). Although Verizon has failed to provide any evidence of what those fees might be, it is highly

unlikely that at this state of the litigation they would amount to a substantial portion of the $5 million required to confer federal jurisdiction under CAFA.

Accordingly, the court concludes that Verizon has failed to provide sufficient evidence that the amount in controversy exceeds $5 million, and consequently removal was improper. Plaintiff's motion for remand to the Circuit Court of Cook County, Illinois is granted. Plaintiff's requests for attorney's fees and costs is denied.[1]

**ENTER:** **April 29, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[1]Nothing in this order is intended to suggest that the case may not become removable in the future based on a new development. See 28 U.S.C. § 1446(b)2.

# EXHIBIT B

Case 5:08-cv-02738-JF   Document 11   Filed 06/30/2008   Page 15 of 20

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 08-60146-CIV-ALTONAGA/Turnoff

**LISA GRAY**, individually and on behalf of a
class of similarly situated individuals,

 Plaintiff,
vs.

**CELLCO PARTNERSHIP**, a Delaware
General Partnership d/b/a Verizon Wireless;
and **MOBILE MESSENGER AMERICAS,
INC.**, a Delaware corporation,

 Defendants.
_____ /

### ORDER ON MOTION TO REMAND

**THIS CAUSE** is before the Court on Plaintiff, Lisa Gray's ("Gray['s]") Motion to Remand [D.E. 9], filed February 25, 2008. The Court has carefully reviewed the parties' written submissions and applicable law.

Gray has brought this putative class action against Defendants, Cellco Partnership d/b/a Verizon Wireless ("Verizon") and Mobile Messenger Americas, Inc. ("Mobile Messenger"), seeking to stop a practice Gray alleges Defendants engage in of causing cellular telephone customers to be billed for unauthorized and unwanted mobile content services and to obtain redress for persons who have been injured by that practice. Verizon[1] timely removed this action based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which gives federal district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of a class of over 100 plaintiffs is a citizen of a state different from the state of any defendant.

---

[1] Under the Class Action Fairness Act of 2005 no other defendants are required to consent or join in the removal. *See* 28 U.S.C. § 1453(b).

Case No. 08-60146-CIV-ALTONGA/Turnoff

Gray seeks a remand on the ground that Verizon has failed to show by a preponderance of the evidence that the action places at least $5 million in controversy.

Gray's Complaint contains a count for breach of contract (Count I), restitution/unjust enrichment (Count II), and tortious interference with contract (Count III) on behalf of two proposed classes: as to Count I, a Carrier Class, and as to Counts II and III, a Mobile Content Provider Class. The "Carrier Class" is defined as a class consisting of all Verizon wireless telephone subscribers in Florida who suffered losses or damages as a result of Verizon billing for mobile content products and services not authorized by the subscriber. The Mobile Content Provider Class consists of all wireless telephone subscribers in Florida who suffered losses or damages as a result of incurring charges on their cellular telephone bills from, or on behalf of, Mobile Messenger which were not authorized by the subscriber. Gray alleges that Verizon, systematically and repeatedly, and without authorization, has been billing its customers for the purchase of products and services not agreed to by the customers and along with third-party services providers, has been profiting significantly through this practice. The disputed services include access to and billing for third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, payment services and other forms of software provided by hundreds of third-party vendors with names such as Mobile Messenger.

Verizon asserts that while the Complaint does not allege an amount in controversy, the $5 million threshold is satisfied for several reasons. First, reading the Complaint as a whole reveals that Plaintiff is challenging Verizon's entire billing system for mobile content charges to Florida wireless subscribers and Plaintiff cannot insist the class she seeks to represent includes only those who may ultimately prove their charges were unauthorized. Verizon relies on the declaration of Bill Medrano,

2

Case No. 08-60146-CIV-ALTONGA/Turnoff

attached to its Notice of Removal, which states Verizon's total charges for mobile content to wireless subscribers in Florida exceeds the sum of $24 million, an amount far greater than the $5 million threshold required for federal jurisdiction under CAFA. Second, even if Plaintiff is not challenging the entire billing system, because Plaintiff is seeking punitive damages, capped at three times the amount of compensatory damages (unless a defendant is shown to have acted with the specific intent to harm the claimant), if Plaintiff merely recovers $1.25 million in compensatory damages (less than 5% of Verizon's total mobile content charges), then the CAFA jurisdictional threshold is satisfied.

Under 28 U.S.C. § 1447(c), a case removed from state court should be remanded if it appears that it was removed improvidently. The burden of establishing federal jurisdiction, as Verizon recognizes, falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329-30 & n.8 (11th Cir. 2006) (removing party bears burden of establishing federal jurisdiction under CAFA). Moreover, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). When the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Where a "'plaintiff has not pled a specific amount of damages, the removing defendant must prove by a *preponderance of the evidence* that the amount in controversy exceeds the jurisdictional requirement.'" *Miedema*, 450 F.3d at 1330 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (emphasis added)). Because the amount in controversy is not apparent on the face of Gray's Complaint, the undersigned must necessarily "look to the notice of removal and may

3

require evidence relevant to the amount in controversy at the time the case was removed." *Id.*

Notwithstanding Verizon's characterization of Plaintiff's claims, Gray does not claim that all amounts Defendants billed and collected for mobile content services were improper, rather, she claims that some of those charges were unauthorized and thus improper. To find that more than $5 million is in controversy the undersigned would necessarily have to speculate as to the size of the classes and the likely average amount of recovery for each class member, or assume that approximately 20% of the mobile content service charges were improper.[2] A district court, however, is not permitted to engage in this type of guesswork. *See Lowrey v. Alabama Power Co.*, 483 F.3d 1184, 1210 (11th Cir. 2007). The undersigned agrees with Plaintiff, therefore, that Verizon has failed to adequately demonstrate a relationship between the amount in controversy and the $24 million figure Verizon claims it charged all Florida consumers for mobile content services. *See, e.g., Pearson's Pharmacy, Inc. v. Blue Cross & Blue Shield of Alabama*, 2007 WL 3496031, at *1 (M.D. Ala., Nov. 14, 2007).

As to Verizon's argument that the prayer for punitive damages brings this case within the jurisdictional amount, the Complaint requests exemplary damages if the challenged conduct is proved to be willful. And while the Court must consider punitive damages when determining if the jurisdictional amount in controversy has been satisfied, unless it is apparent that such cannot be recovered, *see, e.g., Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted), the Court returns to what sum, if any, is shown by a preponderance of the evidence to be the amount in controversy from which one can extrapolate a punitive damage recovery. *See, e.g., Sharritt v. Liberty Mut. Ins. Co.*, 2005 WL 1505994, at *1 (S.D. Ala. June 24,

---

[2] For example, Gray alleges she was improperly charged $19.99 and further alleges Defendants improperly charged consumers "as little as a few dollars to at most several hundreds of dollars per person."

4

Case No. 08-60146-CIV-ALTONGA/Turnoff

2005) (finding defendant had not satisfied its burden where it had only shown amount in controversy to be $6,700, thus, punitive damage would have to be more than ten times the compensatory damages). Verizon posits that as little as $1.25 million is necessary for punitive damages in three times that amount to bring this case over the requisite jurisdictional sum. Even assuming that Verizon's estimate is not unreasonably high, the Court must nevertheless reject it because it is not based on any analysis of the evidence at the time of removal. *See Lowrey*, 483 F.3d at 1210 (rejecting defendants' argument that, to reach the jurisdictional threshold, each of the roughly 400 plaintiffs need only recover on average $12,500 – "a relatively low hurdle" – because it would require the court to engage in "impermissible speculation"). The punitive damages discussion, therefore, simply adds more speculation to a record insufficient to satisfy Verizon's burden as the removing party.

Resolving all doubts in favor of remand, as the Court must, *see, e.g., Miedema*, 450 F.3d at 1328-29, it is

**ORDERED AND ADJUDGED** that the Motion to Remand **[D.E. 9]** is **GRANTED** and this cause remanded to the Seventeenth Judicial Circuit, in and for Broward County, Florida. The Clerk of Court is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of March, 2008.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: Hon. William C. Turnoff
 counsel of record