**E-Filed 10/10/08**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JENNA GODDARD, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC., a Delaware Corporation,<br><br>Defendant. | Case No. C 08-2738 JF<br><br>ORDER[1] DENYING PLAINTIFF'S MOTION FOR REMAND<br><br>[Re: docket no. 11] |

Plaintiff Jenna Goddard ("Goddard") brings the instant putative class action on behalf of

herself and all those similarly situated who were charged for unauthorized mobile content

services after Defendant Google Inc. ("Google") allowed third parties to advertise allegedly

deceptive cellular telephone subscription services through its AdWords program. Goddard filed

the action in the Santa Clara Superior Court on April 30, 2008. Defendants removed the action

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 08-2738 JF
ORDER DENYING PLAINTIFF'S MOTION FOR REMAND
(JFEX2)

Dockets.Justia.com

to this Court on May 30, 2008. Goddard moves to remand the action to the state court on the basis that Google has failed to show that there is an amount in controversy sufficient to establish federal jurisdiction. The Court has considered the briefing submitted by the parties as well as the oral arguments presented by counsel at the hearing on October 3, 2008. For the reasons set forth below, the  motion will be denied.

## I.  BACKGROUND

Goddard alleges that Google "operates the most widely-used Internet search engine in the world" and that it generates revenue primarily through online advertising.  Compl. ¶ 2. She also asserts that Google and its customers participate in Google's AdWords program, which allows advertisers to select keywords that correspond to their advertisements.  In turn, the advertisements are displayed when a person performs a keyword search. Compl. ¶ 15-16. Goddard alleges that through AdWords, Google allows advertisements that link to fraudulent websites that sell premium text message services such as customized ring tones, sports score reports, stock updates, and horoscopes in violation of Google's Content Policy.[2]

Goddard claims that a portion of Google's top 250 Adwords customers who are mobile content purveyors utilize landing pages that are not in compliance with Google's Content Policy. She provides the identities of seven such non- complying advertisers, Compl. ¶ 36, Ex. B, and alleges that Google's refusal to enforce its policy has allowed it to receive and retain substantial fees from mobile subscription advertisers at the expense of customers. Goddard also alleges that "many, if not all of the Fraudulent Mobile Subscription Services['] monthly or periodic payments to Google for the AdWords services exceed $10,000." Compl. ¶ 54.

Goddard claims that she was injured when she provided her cellular telephone number to a fraudulent mobile subscription services website, which charged her for unauthorized mobile content services in the form of premium text messages. Goddard asserts that "absent Google's

---

[2] Google has compiled a list of products and services that it does not allow to be advertised under virtually any circumstances. Compl. ¶ 18, 22. Google provides an exception for mobile subscription services, but it requires that the landing pages of such services' websites disclose clearly and accurately a host of relevant information about purchasing mobile content, such as the service's price, subscription period, and cancellation procedures.  Compl. ¶ 18.

1  provision of AdWords services to the fraudulent mobile subscription services, she never would

2  have been damaged." Compl. ¶ 58. Goddard brings this putative class action to prevent Google

3  from allowing fraudulent mobile subscription services to advertise further on Google's website.

4  She purports to represent a nation-wide class of similarly situated plaintiffs who suffered

5  damages after clicking on ads for mobile subscription services on Google AdWords that linked to

6  fraudulent mobile subscription services websites. She asserts that the proposed class consists of

7  at least one thousand individuals and other entities. Goddard seeks imposition of a constructive

8  trust, an accounting, an injunction prohibiting the continued unlawful business practices,

9  damages, restitution, disgorgement of all ill-gotten gains, and attorneys' fees and costs.

## II. DISCUSSION

11  The Class Action Fairness Act ("CAFA") vests district courts with "original jurisdiction

12  of any civil action in which . . . the amount in controversy exceeds the sum or value of

13  $5,000,000." 28 U.S.C. § 1332(d).  Under CAFA, the burden of establishing removal jurisdiction

14  rests with the removing party. *Lowedermilk v. U.S. Bank Nat'l Ass'n,* 479 F.3d 994, 997 (9th Cir.

15  2007).  If the jurisdictional amount in controversy is not facially apparent in the Complaint, the

16  removing defendant must prove by a "preponderance of the evidence" that the amount in

17  controversy requirement has been met. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir.

18  2006); *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398 (9th Cir. 1996) ("[T]he defendant

19  must provide evidence establishing that it is 'more likely than not' that the amount in controversy

20  exceeds that amount."). In determining whether the jurisdictional requirement has been met, the

21  court may consider evidence submitted subsequent to the notice of removal, including evidence

22  submitted in conjunction with an opposition to a motion to remand. *Cohen v. Petsmart, Inc.,* 281

23  F.3d 837, 840 n.1 (9th Cir. 2002); *see Willingham v. Morgan*, 395 U.S. 402, 407 n. 3, (1969) ("it

24  is proper to treat the removal petition as if it had been amended to include the relevant

25  information contained in the later-filed affidavits").

26  Because Goddard's complaint does not allege a specific amount in controversy,  Google

27  must demonstrate that it is "more likely than not" that the amount in controversy exceeds $ 5

28  million. The Court concludes that Google has met its burden. First, Google points out that if the

Court accepts Goddard's allegations as true, Google could be required to disgorge revenues received from the purported 250 mobile subscription service advertisers at the rate of $10,000 per month per advertiser throughout the four-year period covered by Goddard's complaint. Google's Mem. In Opp. To Pl.'s Mot. to Remand ("Google Opp. Mem.") at 7. Google thus would have collected $480,000 from each fraudulent advertiser.[3] Even if only eleven of the purported 250 Google advertisers engaged in the alleged fraud, the CAFA threshold would be met;[4] currently, Goddard's complaint identifies seven. It is a reasonable inference that four additional advertisers from the alleged 250 also will be identified. This number represents disgorgement benefits alone.

Second, Google's primary source of revenue is its online advertising programs, including AdWords. Google Opp. Mem. At 10. Google's revenue from its advertising programs was more than $5 billion in the first quarter of 2008. Google Opp. Mem. at 10. As set forth in the declaration of Google financial analyst Matthew Hudson, Google's revenue data for mobile subscription services and mobile content providers well exceeds the amount in controversy required by CAFA. *See* Declaration of Matthew Hudson in Support of Google Inc.'s Opposition to Motion to Remand ("Hudson Decl.") ¶ 8. Moreover, ring tone subscription providers represent only a small portion of the total revenue that may be subject to disgorgement and restitution under Goddard's complaint. *See* Compl. ¶ 7.

Finally, in addition to disgorgement, Goddard seeks money damages for breach of contract, as well as restitution and attorney's fees and costs. With a purported class that includes every person in the United States who was charged without authorization for mobile content services by any cellular telephone company that used Google AdWords for advertising, it is more likely than not that in the event Goddard proves her claim, such damages will exceed $5,000,000. Viewing claims for damages together with the other forms of relief Goddard requests, there appears to be no real question that the jurisdictional requirements of CAFA are satisfied.

---

[3] $10,000 x 12 (months per year) x 4 (years) = $480,000.

[4] $5,000,000 ÷ $480,000 = 10.417. Eleven advertisers would put Goddard's disgorgement claim over $5 million. Google's Opp. Mem. at 7.

4

# IV. ORDER

The motion for remand is DENIED.


Dated: October 10, 2008

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:


Alan Himmelfarb Consumerlaw1@earthlink.net

Karen Johnson-McKewan kjohnson-mckewan@orrick.com, cfleetwood@orrick.com, gjohnson@orrick.com

Nancy E. Harris nharris@orrick.com, vsweet@orrick.com

Nikka Noel Rapkin nrapkin@orrick.com, jknight@orrick.com


Kikka N Rapkin
Orrick Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

Case No. C 08-2738 JF
ORDER DENYING PLAINTIFF'S MOTION FOR REMAND
(JFEX2)