KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
NANCY E. HARRIS (SBN 197042)
nharris@orrick.com
NIKKA N. RAPKIN (SBN 244207)
nrapkin@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     415-773-5700
Facsimile:     415-773-5759

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNA GODDARD, on her own behalf and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>          v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>                   Defendant. | Case No.  C 08-02738 (JF)<br><br>**GOOGLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   December 5, 2008<br>Time:  9:00 a.m.<br><br>Judge:  The Honorable Jeremy Fogel<br>Date Action Filed: May 30, 2008<br>No Trial Date Set |

Dockets.Justia.com

# TABLE OF CONTENTS

                                                                        **Page**

I.     INTRODUCTION. ........................................................................................1

II.    RULE 12(B)(6) STANDARD. ....................................................................2

III.   THE ALLEGATIONS IN THE COMPLAINT. ...........................................3

IV.    LEGAL ARGUMENT. ...............................................................................4

       A.    Plaintiff's Claims are Barred by Section 230 of the Communications
             Decency Act. ..................................................................................5

             1.    Under Section 230, Google Is Immune from Plaintiff's Claims that
                   She Was Injured By An Advertisement Appearing on the Google
                   Website. ..................................................................................6

                   a.    Google is a Provider of An Interactive Computer Service. ............6

                   b.    Plaintiff's Alleged Injury Was Caused by Information
                         "Provided by Another Information Content Provider." ................7

                   c.    Section 230 Immunizes Google From Any Liability Arising
                         From the MSSP Advertisements on its Website. .........................9

             2.    By Seeking to Hold Google Liable Based on Its Advertising Terms,
                   Plaintiff's Negligence and Breach of Contract Claims Are Also
                   Barred By Section 230(c)(2)(A). ...............................................11

       B.    Even in the Absence of Section 230, Plaintiff Has Failed to Plead Any
             Viable Claim. .................................................................................12

             1.    Plaintiff Fails To Plead A Violation Of California Business &
                   Professions Code Section 17200. ..............................................12

                   a.    The MSSPs Did Not Violate the Computer Fraud and Abuse
                         Act. ...........................................................................12

                   b.    Google Did Not Knowingly Engage in a Monetary
                         Transaction Involving Criminally Derived Property. ..................14

             2.    Plaintiff Fails To State A Claim For Breach Of Contract. .........................16

                   a.    Google Made No Promise to Enforce its Advertising Terms. .......16

                   b.    Plaintiff is Not an Intended Third Party Beneficiary of the
                         Advertising Terms. ......................................................17

             3.    Plaintiff's Negligence Claim Is Barred As A Matter Of Law. .................18

             4.    Plaintiff's Claim For Aiding And Abetting Various Violations Also
                   Fails. .....................................................................................19

V.     CONCLUSION ........................................................................................20

GOOGLE'S MOTION TO DISMISS
C 08-02738 (JF)

Page

**FEDERAL CASES**

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006)................................................................6

*American Family Mut. Ins. Co. v. Rickman*,
554 F. Supp. 2d 766 (N. D. Ohio 2008) ...........................................13, 14

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990) ...................................................................2

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) .......................................................6, 7, 10

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ...........................................................................24

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .....................................................................2

*Carafano v. Metrosplash*,
339 F.3d 1119 (9th Cir. 2003) .....................................................5, 6, 7 10, 11

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ...................................................................8

*Doe ex. rel. Doe v. School Dist. of City of Norfolk*,
340 F.3d 605 (9th Cir. 2003) .................................................................20

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) .......................................................4, 6, 10

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................................13

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
521 F.3d 1157 (9th Cir. 2008) .............................................................8, 9

*Green v. America Online (AOL)*,
318 F.3d 465 (3d Cir. 2003) .......................................................4, 10, 17

*Highfields Capital Management, L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005).....................................................17

*Langdon v. Google*,
474 F. Supp. 2d 622 (D. Del. 2007) ......................................................4, 7

*McIntosh v. U.S.*,
Civ. No. 05-373 (BTM), 2008 WL 4492592 (S.D. Cal. Sept. 29, 2008) ...............19

*Novak v. Overture Services Svcs., Inc.*,
309 F. Supp. 2d 446 (E.D.N.Y. 2004)...................................................................7

*Optinrealbig.com v. Ironport Systems*,
323 F. Supp. 2d 1037 (N.D. Cal. 2004)..............................................................10

*Parker v. Google*,
422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'n* 242 Fed. Appx. 833 (3d Cir. 2007).................4, 7

*Roy v. Gomez*,
81 F.3d 863 (9th Cir. 1996) (en banc)................................................................15

*Rutgard v. United States*,
116 F.3d 1270 (9th Cir. 1996) ....................................................................14, 15

*Shamrock Foods Co. v. Gast*,
535 F. Supp. 2d 962 (D. Ariz. 2008)..................................................................13

*United States v. Czubinski*,
106 F.3d 1069 (1st Cir. 1997) ..........................................................................14

*United States v. Stein*,
37 F.3d 1407 (9th Cir. 1994) ............................................................................15

*United States v. Yagman*,
502 F. Supp. 2d 1084 (C.D. Cal. 2007)..........................................................14, 15

*Universal Communication Systems v. Lycos*,
478 F.3d 413 (1st Cir. 2007)..........................................................................10, 11

**STATE CASES**

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002) ...........................................................................6, 10

*Martinez v. Socoma Companies*,
11 Cal. 3d 394 (1974)......................................................................................17

*McCulloch v. Ford Dealers Advertising Ass'n*,
234 Cal. App. 3d 1385 (Cal. App. 1991)...........................................................18

*Orser v. Vierra*,
252 Cal. App. 2d 660 (Cal. App. 1967)..............................................................19

*Paz v. State of California*,
22 Cal. 4th 550 (2000)....................................................................................19

*Souza v. Westlands Water District*,
135 Cal. App. 4th 879 (2006) ..................................................................15, 16, 17

# TABLE OF AUTHORITIES
(continued)

Page

*Walters v. Seventeen Magazine,*
   195 Cal. App. 3d 1119 (3d Dist. 1987) ...................................................18

## FEDERAL STATUTES

18 U.S.C. § 1030 ..............................................................................12, 13, 14

18 U.S.C. § 1957 ........................................................................1, 12, 13, 14, 15

47 U.S.C. § 230 ...............................................................................*passim*

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................1, 2

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................*passim*

Cal. Civ. Code § 1739.7 ......................................................................10

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 5, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District Court, 280 S. First Street, San Jose, CA 95113, Google Inc. will move the court for an order dismissing Plaintiff's Class Action Complaint pursuant to the Communications Decency Act, 47 U.S.C. § 230, ("Section 230"), and Federal Rule of Civil Procedure 12(b)(6). This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the [Proposed] Order, all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing.

# STATEMENT OF ISSUES

1.     Are Plaintiff's state law claims barred as a matter of law by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which establishes immunity against state law claims for interactive computer service providers?

2.     Has Plaintiff stated a claim under California Business & Professions Code section 17200, *et seq.* (the "UCL" or "Section 17200"), when she fails to plead facts that would support a claim of the predicate violation of law, 18 U.S.C. § 1957(a)?

3.     Has Plaintiff alleged a claim for breach of contract when she has not pled – and cannot plead – that she was an intended beneficiary of the alleged contract or that any promise was made to enforce the alleged terms in her favor?

4.     Is Plaintiff's claim for negligence barred as a matter of law?

5.     Has Plaintiff pled any facts that would support any claim for aiding and abetting?

# MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION.

The Communications Decency Act, 47 U.S.C. § 230(c), immunizes Internet companies like Google against any state law claim that would treat it as the publisher or speaker of information provided by a third party. Plaintiff Jenna Goddard's complaint seeks to do precisely that and thus fails to state a claim as a matter of law.

Plaintiff's claims against Google are the latest in a series of cases against mobile subscription service providers ("MSSPs"), billing aggregators, and cellular telephone companies involved in the distribution and billing for mobile content services such as telephone ring tones, wallpaper, games, daily horoscopes and similar functionality. After a cell phone user subscribes to a mobile content service through the subscriber's telephone or the mobile content service's website, the MSSP provides the information to a billing aggregator who ensures that the charges for the service are placed on the subscriber's cellular telephone bill. Plaintiff contends she was charged for services she did not authorize after she gave her cellular phone number to an MSSP website. Google's *only* connection to the alleged misconduct is that Plaintiff claims she found fraudulent MSSPs through a Google search. Google provided Plaintiff with no mobile subscription services itself, nor did Google participate in any way in charging her for MSSP services. Google had nothing to do with the series of events that led to any alleged unauthorized charges and has been hauled into Court for nothing more than allowing paid advertisements containing links to one or more allegedly misleading MSSP websites. Section 230(c) was enacted to immunize Internet companies from having to face suit on exactly these types of claims; dismissal at the pleading stage is both warranted and appropriate. Moreover, even in the absence of Section 230(c) immunity, Plaintiff has failed to plead any viable claim. Accordingly, as discussed below, each of her claims should be dismissed with prejudice.

## II. RULE 12(b)(6) STANDARD.

Dismissal under Rule 12(b)(6) for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Plaintiff's claims against Google should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the immunity accorded Google by 47 U.S.C. § 230(c).

### III.    THE ALLEGATIONS IN THE COMPLAINT.

Defendant Google Inc. is a Delaware corporation headquartered in Mountain View, California that provides Internet services to the public.  Complaint ¶ 2.[1]  Plaintiff alleges that Google "operates the most widely-used Internet search engine in the world" and maintains the "largest, most comprehensive index of websites and other online content." *Id*.  Google generates revenue primarily by online advertising, including its AdWords program.  ¶ 2.

Plaintiff alleges that she was injured by providing her cell phone number to one or more unidentified MSSPs by entering her number on one or more MSSP websites.  ¶ 37.  She claims to have visited the Google search engine in December 2007 to find a cell phone ringtone provider.  ¶ 35.  Once there, Plaintiff alleges she entered terms like "ringtone" into the Google search engine (¶ 35), leading her to a display of AdWords advertisements "as part of the result of the search."  ¶ 16.  Plaintiff "clicked on one or more of the AdWords advertisements appearing along the search results" (¶ 35), which led her to websites belonging to MSSPs that she does not identify.  ¶ 36.  Plaintiff alleges she entered her telephone number onto "one or more" such MSSP websites.  ¶¶ 36-37.  Although Plaintiff identifies none of the MSSPs, their website addresses, or the wireless carrier that imposed the unauthorized charges, she claims the MSSP websites did not display information required pursuant to Google's Advertising Program Terms, and specifically Google's AdWords Content Policy.  ¶ 36.  Plaintiff does not allege that she read or relied upon Google's Content Policy prior to locating a MSSP through the Google search engine.

After entering her telephone number into "one or more" MSSP websites, Plaintiff's cellular telephone bill was charged "by one or more purveyors of mobile subscription services and their agents, including m-Qube, for unwanted mobile content services."  ¶¶ 37, 39.  Plaintiff does ***not*** allege that Google was involved in creating the MSSP website(s) that supposedly defrauded her, or that Google ever received any monies from Plaintiff.  The only link alleged between Google and Plaintiff is that the MSSP websites she landed on were Google AdWords customers.  ¶¶ 33-39.

---

[1]  References to paragraph numbers ("¶ __") herein refer to the Complaint, unless otherwise indicated.

Plaintiff further alleges that Google's AdWords program allows its advertising customers to draft short advertisements and select corresponding keywords using Google-supplied optimization tools, and that when a Google user enters a search query in the Google search engine that matches the advertising customer's selected keywords, the Google website displays the customer's advertisements. ¶¶ 15-16. Users can click on the advertisement, which leads the user's internet browser to the advertiser's website. *Id.*

Before advertisers may participate in Google's AdWords program, they must agree to Google's Advertising Program Terms, which require compliance with Google's policies (including its AdWords Content Policy), payment and cancellation terms, and similar requirements. ¶¶ 21-22 and Ex. A. Plaintiff alleges Google imposes additional requirements on certain types of advertisers, including MSSPs, obligating them to conform the content of their websites to display certain information, including price, subscription period, and cancellation procedures. ¶¶ 18, 22. Plaintiff does not allege when Google put these requirements in place, but alleges that the Content Policy contained language specifically pertaining to MSSPs as early as 2008. ¶ 22.

## IV. LEGAL ARGUMENT.

The Communications Decency Act , 47 U.S.C. § 230(c), immunizes providers and users of interactive computer services from liability for editorial decisions regarding the posting, screening, and deletion of third party content available through such a service. Claims falling within Section 230 immunity are properly resolved on a motion to dismiss. *See Green v. America Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) (affirming dismissal of plaintiff's claims under section 230); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (same); *Langdon v. Google*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) (dismissing claims against Google, Yahoo, and Microsoft on the grounds that each is immune as an interactive service provider under Section 230); *Parker v. Google*, 422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'm*, 242 Fed. Appx. 833, 838 (3d Cir. 2007) (granting Google's motion to dismiss defamation, invasion of privacy, and negligence claims under Section 230).

### A. Plaintiff's Claims are Barred by Section 230 of the Communications Decency Act.

To realize the Internet's full promise as a medium for the exchange of ideas and information, Congress has immunized providers of internet services such as Google from liability for content posted by others, but made accessible through, *e.g.*, Google. *Carafano v. Metrosplash*, 339 F.3d 1119, 1122 (9th Cir. 2003). In 1996, Congress enacted Section 230, which provides in pertinent part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

To encourage voluntary monitoring, Section 230 also immunizes providers of internet services from liability for taking actions to limit objectionable material. 47 U.S.C. § 230(c)(2) ("No provider or user of an interactive computer service shall be held liable on account of … any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be . . . otherwise objectionable.").

Plaintiff's sole contention against Google is that she was harmed by an allegedly misleading website she found through an advertisement an MSSP had placed on the Google website through the AdWords program. Plaintiff does **not** claim that Google created the allegedly fraudulent website, subscribed her to a mobile content service, or added charges for mobile subscription services to her cellular telephone bill. Instead Plaintiff claims that she "clicked on one or more of the AdWords advertisements appearing along the search results," and then she navigated to the allegedly fraudulent MSSP website where she entered her phone number, leading to the alleged injury. ¶ 35.

Based on this single incident, Plaintiff claims that Google should be liable for her injury (1) because she accessed the allegedly fraudulent MSSP website through an advertisement appearing on the Google website and (2) because Google allegedly did not fully enforce its Content Policy, which allegedly required Google's MSSP advertisers to post certain information on their websites. As demonstrated below, Google, as a provider of an interactive computer service, cannot be liable for damage resulting from the allegedly misleading MSSP website, the

advertisement the MSSP placed on the Google website through the AdWords program, or for Google's efforts (such as its Content Policy) to restrict such content. These claims are precisely the types of claims Congress intended to bar through Section 230.

1. **Under Section 230, Google Is Immune from Plaintiff's Claims that She Was Injured By An Advertisement Appearing on the Google Website.**

A defendant is immune from liability under Section 230 for the content of postings on its website if: (1) it qualifies as a provider or user of an interactive computer service; and (2) the plaintiff's claims would hold the defendant liable as a publisher or distributor of information created or developed by "another information content provider." *Carafano*, 339 F.3d at 1123. Creation and development "means something more substantial than merely editing portions." *Batzel v. Smith*, 333 F.3d 1018, 1030-31 (9th Cir. 2003). To further Congress's goal of ensuring the free flow of information on the Internet, "reviewing courts have treated § 230(c) immunity as quite robust." *Carafano*, 339 F.3d at 1123.

a. **Google is a Provider of An Interactive Computer Service.**

There can be no dispute that Google qualifies as a "provider of interactive computer service" as broadly defined by Section 230(f)(2).[2] The Ninth Circuit defines an interactive computer service as "'*any*' information services or other systems, as long as the service or system allows "multiple users" to access "a computer server.'" *Batzel*, 333 F.3d at 1030 (emphasis in original) (rejecting expressly district court's more restrictive definition). Interactive computer services include internet dating services, newsletters, listservs, search engines, auction websites, and social networking sites among many other services. *See, e.g.*, *Carafano*, 339 F.3d at 1123 (internet dating service is provider of interactive computer service); *Batzel*, 333 F.3d at 1030 (internet newsletter); *Doe v. MySpace, Inc.*, 528 F.3d at 419 (social networking site); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002) (online auction program); *Almeida v. Amazon.com, Inc.*,

_____

[2] Section 230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."

456 F.3d 1316 (11th Cir. 2006) (internet retailer). Google's status as an interactive computer service under Section 230 has already been adjudicated in a number of federal courts. *Langdon v. Google*, 474 F. Supp. 2d at 631 (dismissing claims against Google and other interactive computer service providers under Section 230); *Parker v. Google*, 422 F. Supp. 2d at 500-01 ("[T]here is no doubt that Google qualifies as an 'interactive computer service.'"); *Novak v. Overture Svcs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (Google is a "provider or user of an interactive computer service" and eligible for Section 230 immunity).

### b. Plaintiff's Alleged Injury Was Caused by Information "Provided by Another Information Content Provider."

It is equally clear that Plaintiff's alleged injury was the result of information provided by "another information content provider." According to Plaintiff's allegations, the causes of her injuries are (1) the misleading website created and operated by an allegedly fraudulent MSSP and (2) the advertisement on Google's website on which Plaintiff clicked to be transported to the MSSP's website. Because Google did not provide the content of either the allegedly misleading MSSP website or the MSSP advertisement on Google's website, this content constitutes "information provided by another information content provider" for purposes of Section 230 and Google cannot be held liable as its publisher. *Carafano*, 339 F.3d at 1123.

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). A defendant is not an "information content provider" unless it bears actual "responsibility for the 'underlying misinformation'" at issue. *Carafano*, 339 F.3d at 1123, 1125 (noting that "reviewing courts have treated § 230(c) immunity as quite robust, adopting a . . . relatively restrictive definition of 'information content provider'"). "Minor wording changes" and "neutral forms and tools" to assist with development and creation of content do not transform an interactive computer services provider into a content provider. *Carafano*, 339 F.3d at 1171; *Batzel*, 333 F.3d at 1022. Rather, a service is not a content provider unless the service *directly* contributed to the creation of the unlawful content at issue in the case. *Carafano*, 339 F.3d at 1124 ("[T]he critical issue is whether [the defendant] acted as an

information content provider with respect to the information that [plaintiffs] claim is false or misleading."); *Fair Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1175 (9th Cir. 2008) ("The message to website operators is clear: If you don't encourage illegal content, or design your website to require users to input illegal content, you will be immune.").

The Complaint contains many details regarding the nature and extent of the alleged wrongdoing by MSSPs, ¶¶ 6-12, but never contends that Google played any role in creating, developing, or providing any content whatsoever for the "one or more" misleading MSSP websites that Plaintiff claims to have visited in search of ringtones. Nor does Plaintiff point to any facts supporting the conclusion that Google had any responsibility for providing any misleading information to her. The only link to Google that Plaintiff can muster is that the allegedly misleading website she landed upon was maintained by a Google AdWords customer that she located through a Google search engine query. However, as Plaintiff admits, Google is not a "content provider" of advertisements posted to its site; rather, Google AdWords advertisements are created when "Google's advertiser customers draft short advertisements" and "select keywords that correspond to their advertisements." ¶ 15. Thus, it is the MSSP, *not* Google, that provided the content of any advertisement she encountered as a result of a Google query. Plaintiff's allegation that "Google assists its customers in drafting AdWords and selecting keywords," ¶ 15, does not change the analysis; Plaintiff does not allege that Google contributes to any allegedly misleading content.

The courts have made clear that the provision of neutral tools, including keyword search functions, is squarely within the protections afforded by the CDA. In *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), the Seventh Circuit held the online classified website craigslist immune from liability for discriminatory housing advertisements submitted by users because there was no basis to conclude that craigslist provided any of the discriminatory content. "Nothing in the service craigslist offers induces anyone to post any particular listing or express a preference for discrimination." 519 F.3d at 671-72. The Ninth Circuit came to the same conclusion in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1173-75 (9th Cir. 2008). The Ninth

Circuit *en banc* panel found that Section 230 immunity applies unless "it is *very* clear that the website *directly* participates in developing the illegality" at issue. *Id.* at 1174 (emphasis added). The Court held that Roommates.com was a content provider and not entitled to immunity when it required its users to disclose (through answers to a user questionnaire) discriminatory information as a condition of using its services. *Id.* at 1164. However, the Ninth Circuit drew a clear distinction between active development of illegal content and the provision of neutral tools to assist a website user. It ruled that Roommates.com was not liable for discriminatory statements posted by its users in an "Additional Comments" section of profile pages because it had no role in developing the alleged illegal content and expressly found that the provision of keyword search tools was protected under Section 230:

> *Providing neutral tools for navigating websites is fully protected by CDA immunity*, absent substantial affirmative conduct on the part of the website creator promoting the use of such tools for unlawful purposes.

*Id.* at 1174, n. 37 (emphasis added).

Nothing in Plaintiff's Complaint supports a conclusion that Google "directly participate[d] in developing the illegality" at issue. Plaintiff does not allege any facts upon which one could conclude that Google provided any of the allegedly misleading content in either the MSSP websites or the advertisements those MSSP's created using Google's AdWords program.

**c. Section 230 Immunizes Google From Any Liability Arising From the MSSP Advertisements on its Website.**

In an attempt to artfully plead around Section 230, Plaintiff has deployed the same insufficient factual underpinnings in support of claims of an alleged violation of Section 17200, negligence, breach of contract, and aiding and abetting. The law, however, is clear: Google is immune from any state law cause of action that seeks to hold it liable for the third party content appearing on its website. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). Each of Plaintiff's claims seeks to hold Google liable for the same set of facts – an alleged injury

1    arising from a third party advertisement placed on Google's website – and each of Plaintiff's

2    claims is therefore barred under Section 230.

3        Courts consistently resist plaintiffs' "artful pleading" efforts to place their claims outside

4    the scope of Section 230.  *MySpace,* 528 F.3d at 419-20 (5th Cir. 2008) (holding MySpace

5    immune under Section 230 for failure to implement better technology to protect minors from

6    predatory MySpace users, despite plaintiffs' arguments that such claims were outside the scope of

7    Section 230); *see also Green*, 318 F.3d at 471 (holding America Online immune under Section

8    230 for a computer virus launched by a user through an America Online chat room); *Gentry*, 99

9    Cal. App. 4th 816 (rejecting plaintiffs' arguments that claims of failure to provide certificates of

10   authenticity for autographed sports memorabilia under California Civil Code Section 1739.7 were

11   outside the scope of Section 230).

12       Recognizing that Section 230 applies to *any* cause of action for injury arising from third

13   party content, courts have held interactive computer service providers immune from claims under

14   Section 17200, state securities laws, and cyberstalking statutes, and for trade libel, invasion of

15   privacy, misappropriation of the right of publicity, negligence, and defamation, among other

16   claims.  *Carafano*, 339 F.3d 1119 (immunity for invasion of privacy, misappropriation of the

17   right of publicity, and negligence); *Batzel*, 333 F.3d 1018 (defamation); *Universal*

18   *Communication Systems v. Lycos*, 478 F.3d 413, 415 (1st Cir. 2007) (state securities and

19   cyberstalking statutes); *Optinrealbig.com v. Ironport Systems*, 323 F. Supp. 2d 1037 (N.D. Cal.

20   2004) (trade libel); *Gentry*, 99 Cal. App. 4th at 836 (Section 17200 and California Civil Code

21   Section 1739.7).

22       Plaintiff alleges she was injured by unauthorized charges placed on her cell phone bill

23   after she provided her cell phone number to a MSSP website.  The *entirety* of her claim against

24   Google is that she discovered the MSSP website through an advertisement the MSSP placed on

25   Google.  Each of her claims – for violation of Section 17200, breach of contract, negligence, and

26   aiding and abetting – arises from this single allegation and each seeks to hold Google liable for

27   the advertisement.  Because Google cannot be liable under Section 230 for any injury arising

28

from an advertisement on its website created by a third party, Plaintiff's entire complaint against Google must be dismissed.

## 2. By Seeking to Hold Google Liable Based on Its Advertising Terms, Plaintiff's Negligence and Breach of Contract Claims Are Also Barred By Section 230(c)(2)(A).

Although Plaintiff's entire Complaint is properly dismissed under Section 230(c)(1), Section 230(c)(2)(A) provides a separate basis for immunity against Plaintiff's negligence and breach of contract claims. Plaintiff contends that Google's Advertising Terms and Content Policy "expressed an intent to protect Class members," creating a duty to protect them from websites that did not comply with the policy and that she was injured when Google failed to fully enforce its terms. ¶ 67-68. Plaintiff further alleges that Google's failure to remove advertising that did not comply with its Content Policy was a contractual breach of the Advertising Terms. ¶ 62-64. These claims are barred by Section 230(c)(2)(A).

Congress enacted Section 230 in part "to encourage voluntary monitoring for offensive or obscene material" by eliminating liability based on internet service providers' voluntary efforts to restrict the posting of objectionable material. *Carafano*, 339 F.3d at 1122. To this end, Section 230(c)(2)(A) creates immunity for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be . . . otherwise objectionable."

Nearly all of the websites at issue in Section 230 jurisprudence involve express policies and user agreements that were intended to prohibit the purportedly wrongful conduct. No court has found that website policies and user terms create more liability or narrow the scope of Section 230. *See, e.g., Universal Communication Systems v. Lycos*, 478 F.3d 413, 415 (1st Cir. 2007) ("[U]sers are required to agree to a 'Subscriber Agreement,' which, *inter alia,* requires users to comply with federal and state securities laws."); *Carafano*, 339 F.3d at 1121 ("Matchmaker policies prohibit members from posting last names, addresses, phone numbers or e-mail addresses within a profile. Matchmaker reviews photos for impropriety before posting them but does not review the profiles themselves, relying instead upon participants to adhere to the service guidelines.").

Google's Advertising Terms and Content Policy are precisely the type of "good faith" effort to limit objectionable material that Congress sought to immunize through Section 230. Specifically, Plaintiff contends that through its Advertising Terms and Content Policy, Google set up a procedure for "disallowing advertisements for mobile subscription services that link to non-compliant websites." ¶ 19. The crux of Plaintiff's claims is that Google failed to remove every "non-compliant website," and that as a result she was exposed to a misleading MSSP website. ¶¶ 24-26. This is a transparent attempt to hold Google liable for an "action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be . . . otherwise objectionable." *See* 47 U.S.C. § 230(c)(2).

**B.      Even in the Absence of Section 230, Plaintiff Has Failed to Plead Any Viable Claim.**

**1.      Plaintiff Fails To Plead A Violation Of California Business & Professions Code Section 17200.**

Plaintiff's Section 17200 claim alleges, improbably, that Google engaged in "money laundering" as prohibited by 18 U.S.C. § 1957(a) by knowingly accepting funds derived from a "specified unlawful act." Plaintiff claims that the funds the MSSPs paid to Google for its advertising services were derived from a violation of the Computer Fraud and Abuse Act ("CFAA"), allegedly a "specified unlawful act" for purposes of 18 U.S.C. § 1957(a). Because Plaintiff's allegations do not, and cannot, state a claim that the MSSPs violated the CFAA as an initial matter and because, in any event, Google could not have had the requisite knowledge under 18 U.S.C. § 1957(a) that such funds were derived from an allegedly unlawful activity, Plaintiff has failed to state a claim for violation of Section 17200.

**a.      The MSSPs Did Not Violate the Computer Fraud and Abuse Act.**

To establish that the MSSP revenue paid to Google for advertising services was derived from a "specified unlawful act" for purposes of Section 1957, Plaintiff alleges the MSSPs violated 18 U.S.C. § 1030(a)(4) or 18 U.S.C. § 1030(a)(5)(B) of the CFAA by charging her for

mobile content to which she did not subscribe.[3]  ¶ 53.  The MSSPs' charges, no matter how fraudulent they are alleged to be, are not within the scope of the CFAA, and Plaintiff's allegations are insufficient to state a claim that the MSSPs violated the CFAA as a matter of law.

Congress enacted the CFAA to punish destructive computer hacking and theft of information stored on computers.  *See Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965-66 (D. Ariz. 2008) ("The general purpose of the CFAA 'was to create a cause of action against computer hackers (e.g., electronic trespassers).'"); *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001).  Courts have recognized that "the legislative history supports a narrow view of the CFAA."  *Shamrock Foods Co.,* 535 F. Supp. 2d at 966.  Because the goal of the CFAA is to punish hackers and trespassers who cause injury to others by infiltrating their computers, the CFAA requires both a trespass of a computer *and* loss, damage, or fraud resulting from the unauthorized access.  *American Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 770 -771 (N. D. Ohio 2008).  The two provisions of the CFAA upon which Plaintiff relies, Section 1030(a)(4) and Section 1030(a)(5)(B), both expressly apply only where the defendant has (1) accessed a protected computer without authorization, *and* (2) perpetuated a fraud or caused damage by means of that access.[4]

The scheme of the CFAA is clear: it is not enough to merely access computers; the defendant must actively cause harm and obtain something of value *by way of the access. United*

---

[3]  The fraud Plaintiff alleges is the "intent to defraud [subscribers] out of the services' unauthorized charges."  ¶ 11. Similarly, the alleged "damage" is based on the allegation that "[i]f the Fraudulent Mobile Subscription Services' unauthorized charges are not paid eventually, the cellular carriers will discontinue all services (including cellular service)" and therefore "impair the availability of Class members' access to and communication with their cellular service." ¶ 51.

[4]  Section 1030(a)(4) applies only where an individual "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, *and by means of such conduct furthers the intended fraud and obtains anything of value.*" 18 U.S.C. § 1030(a)(4) (emphasis added). Similarly, Section 1030(a)(5)(B) only applies if a person "intentionally accesses a protected computer without authorization, and as a result of such conduct, *recklessly causes damage.*" 18 U.S.C. § 1030(a)(5)(B) (emphasis added). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information, that (A) causes loss aggregating at least $5,000 in value during any 1-year period to one or more individuals." 18 U.S.C. § 1030(e)(8). These claims are not satisfied in the absence of loss or damage resulting directly from the unlawful access.

1  *States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997) (reversing conviction under CFAA because,

2  although defendant's use of IRS computer to browse confidential taxpayer information

3  "unquestionably exceeded authorized access to a Federal interest computer," "he did not obtain

4  'anything of value'").  The damage must be actually related to "the context of computer hacking."

5  *American Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 770-71 (N.D. Ohio 2008)

6  (holding that damage caused by accessing employer's information and sharing it with employer's

7  competitor was not damage for purposes of the CFAA because damage related to misuse of

8  information rather than misuse of the computer).

9       Plaintiff does not claim that she was damaged, harmed, or defrauded by the MSSPs'

10  alleged access to her cell phone.  Rather, she alleges she was injured because the MSSPs *charged*

11  *for that access*.  ¶¶ 51-52.  Accordingly, there is no nexus between the alleged fraud and damage,

12  on the one hand, and the alleged access to Plaintiff's cell phone, on the other.  Although these

13  charges are a result of a service that includes sending text messages to a cell phone, it cannot be

14  said that the fraud arises from the allegedly unauthorized access to Plaintiff's cell phone.

15           **b.      Google Did Not Knowingly Engage in a Monetary Transaction
                       Involving Criminally Derived Property.**
16

17       Even assuming *arguendo* that the MSSPs did violate the CFAA, Plaintiff's Section 17200

18  claim cannot succeed unless Google itself performed an unlawful act.  Although Plaintiff claims

19  Google engaged in "money laundering" as prohibited by 18 U.S.C. § 1957(a), there is no set of

20  facts by which Google could have violated § 1957(a).

21       Violation of 18 U.S.C. § 1957(a) requires actual knowledge "that a transaction involved

22  criminal property" and that "the property was derived from a specified unlawful activity." *United*

23  *States v. Yagman*, 502 F. Supp. 2d 1084 (C.D. Cal. 2007).  Recognizing the possibility for abuse

24  of Section 1957, the Ninth Circuit construes the statute narrowly, holding that "Section 1957 was

25  enacted as a tool in the war against drugs. . . . Such a powerful instrument of criminal justice

26  should not be expanded by judicial invention or ingenuity." *Rutgard v. United States*, 116 F.3d

27  1270, 1292 (9th Cir. 1996).

28

To violate Section 1957, the transferred funds must be traceable directly to the underlying crime. *Rutgard*, 116 F.3d at 1292-93 (overturning Section 1957 conviction on grounds that defendant's bank account contained some lawfully obtained money as well as criminally derived money and the government failed to trace the withdrawal to the unlawful funds); *Yagman*, 502 F. Supp. 2d at 1087-1093 (overturning convictions for failure to adequately trace funds in commingled account). There is no Section 1957 violation where, for example, both lawful and unlawfully obtained funds are commingled in an account and payment could have been with either the lawful or unlawfully obtained monies. *Rutgard*, 116 F.3d at 1292-93. Moreover, the defendant must actually know that the property represents criminally derived property. *See United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994) (reversing conviction for insufficient knowledge instruction to jury), *disapproved on other grounds by Roy v. Gomez,* 81 F.3d 863, 866 & n.3 (9th Cir. 1996) (en banc).

Plaintiff has not pled any facts by which Google could reasonably have possessed the requisite knowledge that the payments from the MSSPs constituted property derived from a statutorily proscribed act as alleged by Plaintiff. Plaintiff's unfounded and overblown claim that "all or substantially all" of revenue of the MSSPs who failed to abide by Google's Content Policy was criminally derived is insufficient to establish that Google could have known that the particular funds it received in payment for advertising space were criminally derived.[5]

*/ / /*

---

[5] Plaintiff's Section 17200 claim suffers from additional fatal flaws. Plaintiff can not establish that she is entitled to any restitution from Google under Section 17203. Restitution is the exclusive monetary remedy available to private plaintiffs under Section 17200 and "is limited to the return of property or funds in which the plaintiff has an ownership interest (or is claiming through someone with an ownership interest)." *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 453 (2005). Because Plaintiff alleges that she paid the MSSPs, ***not*** Google, and because she does not contend that she had any ownership interest in funds paid to Google, she can not establish any entitlement to restitution from Google. *See id; Clayworth v. Pfizer, Inc.*, 83 Cal. Rptr. 3d 45, 70 (2008). Plaintiff's inability to assert restitution as a remedy against Google and her failure to allege that Google caused any injury deprives her of standing to assert a Section 17200 claim against Google is an independent basis upon which to dismiss this action. Cal. Bus. & Prof. Code § 17204 (a private person has standing to assert a Section 17200 claim only if he or she (1) "has suffered injury in fact," and (2) "has lost money or property as a result of such unfair competition"); *see Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1994 (S.D. Cal. 2005); *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855-8 (2008).

## 2. Plaintiff Fails To State A Claim For Breach Of Contract.

Plaintiff claims that Google requires its AdWords customers to sign a set of Advertising Terms before they are permitted to advertise through Google. Plaintiff alleges that, among other provisions, these Advertising Terms require customers to abide by Google's policies (including its AdWords Content Policy), which allegedly obligate MSSP advertisers to include certain information (such as mobile subscription pricing and cancellation procedures) on their websites. ¶¶ 21-22 and Ex. A. Plaintiff claims that by failing to disallow advertisements that did not include the required information, Google somehow breached a promise to which Plaintiff was the intended beneficiary. ¶ 67. Under California law, however, Plaintiff cannot recover against Google for breach of contract unless (1) Google actually made a promise to disallow advertisements that were not in compliance with its Content Policy, and (2) Plaintiff is a third party beneficiary of that promise – i.e., that the *promisee* of Google's alleged promise (the MSSP Advertisers) intended to benefit Plaintiff.[6] *Souza v. Westlands Water District*, 135 Cal. App. 4th 879 (2006). Plaintiff has not, and cannot, allege the requisite facts for either prong and her breach of contract claim should be dismissed. *See id.*

### a. Google Made No Promise to Enforce its Advertising Terms.

As an initial matter, Google cannot be liable for a promise it did not make. *See Souza*, 135 Cal. App. at 892 ("If a contract is to be a basis of liability for the district's violation of [its Terms and Conditions] . . . it must be a contract in which the *district* promises to abide by [these terms].") (emphasis added). Google's Advertising Terms were a promise by Google's advertising customers *to Google* in exchange for participation in Google's advertising service. Plaintiff has not alleged and cannot point to any provision in Google's Advertising Terms by which Google promised to enforce the Advertising Terms or otherwise remove noncompliant advertisements.

In dismissing allegations virtually indistinguishable from Plaintiff's, the California Court of Appeal recognized the absurdity of holding a service provider liable for failure to enforce its own terms and conditions. *See Souza*, 135 Cal. App. 4th at 893-94. There is no basis for

---

[6] Plaintiff does not allege that she was a party to the Advertising Terms and therefore cannot enforce the terms unless she is an intended third party beneficiary. *Id.*

inferring (and Plaintiff does not allege) that Google made a promise to its advertising customers that it would enforce the Advertising Terms against them; any such promise would have been made to Google's advertisers and would have been to their *detriment*. *See id.* at 892. Google's Advertising Terms commit only its AdWords customers to comply with their terms; they do not confer any rights upon Plaintiff. *See also Green*, 318 F.3d at 472 (holding "that Green failed to state a claim for breach of contract because . . . by their terms, the Member Agreement and Community Guidelines were not intended to confer any rights on Green and AOL did not promise to protect Green from the acts of other subscribers"). Because Google made no promise to enforce its Advertising Terms, Plaintiff's claims against Google for its failure to enforce its those terms must be dismissed.

### b. Plaintiff is Not an Intended Third Party Beneficiary of the Advertising Terms.

In any event, as a non-party to the Advertising Terms, Plaintiff may assert a claim for breach of contract *only* if she is an intended third party beneficiary of the agreement. *Souza*, 135 Cal. App. 4th 879; *Martinez v. Socoma Companies*, 11 Cal. 3d 394, 406 (1974). Whether a party is a third party beneficiary can be determined as a matter of law. *Souza*, 135 Cal. App. 4th at 891.

For Plaintiff to be an intended third party beneficiary of the Advertising Terms as an initial matter, the Advertising Terms would have to reflect, on their face, an intent to benefit Plaintiff. *Martinez*, 11 Cal. 3d at 406. "To attain standing as a third party beneficiary of a contract, a person must show *clearly* that when the parties executed their agreement they intended its execution to confer real benefits on that person." *Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005) (holding that internet users are not third party beneficiaries of Yahoo! Service agreement because there "is nothing in the language of the contract that even remotely suggests such intention") (emphasis in original). Plaintiff has not alleged that the Advertising Terms reflect any intent to benefit her and, in fact, expressly alleges that the terms were intended to benefit Google. ¶ 30-32.

More significantly, a third party is not an intended beneficiary of an agreement unless the *promisee* intends the agreement to benefit the third party. *Id.* at 893. ("The point of the third-

party beneficiary doctrine is to allow a third party to enforce, against a promisor, rights running to the third party for which the *promisee* bargained."). The intent of the promisor "is not at issue." *Id.* Assuming *arguendo* that Google did in fact promise to enforce its Advertising Terms, Google would be the promisor of the agreement and *the allegedly fraudulent MSSP would be the promisee*. Consequently, for Plaintiff to be an intended third party beneficiary, the Advertising Terms would have to reflect an intent by the allegedly fraudulent MSSP to benefit Plaintiff. As the *Souza* Court recognized, such a result is absurd and Plaintiff cannot be an intended beneficiary as a matter of law. *Id.* at 893. Accordingly, her breach of contract claim must be dismissed.

### 3. Plaintiff's Negligence Claim Is Barred As A Matter Of Law.

A long line of California cases establishes that publishers, including publishers of advertisements, have no independent duty to police content for accuracy. *See, e.g.*, *Walters v. Seventeen Magazine*, 195 Cal. App. 3d 1119, 1122 (3d Dist. 1987) (holding that magazine could not be held liable for teen's injury from a product advertised in the magazine); *see also McCulloch v. Ford Dealers Advertising Ass'n*, 234 Cal. App. 3d 1385 (Cal. App. 1991) (holding that corporation had no duty to participants in fraudulent contest despite having affixed its logo to the materials promoting the contest). Accordingly, absent a showing of some special duty, Plaintiff may not assert a claim of negligence against Google.

Plaintiff alleges that Google's Advertising Terms caused it voluntarily to assume a duty of care to Google's users. ¶ 67. Plaintiff claims that Google's Content Policy required its MSSP advertisers to "prominently display" certain information on their websites, including identification of the service as a subscription, price of the service, billing interval, and cancellation information. ¶ 22. Plaintiff alleges that "these statements in its Content Policy amount to public representations by Google of the accuracy and clarity of pricing, subscription, and cancellation information that Google users can expect to find on third-party websites linked to AdWords advertisements." ¶ 23.

Under California law, however, Google can not be found to have assumed a duty to Plaintiff unless (1) the Advertising Terms themselves increased the risk of harm or (2) Plaintiff

actually relied upon the Advertising Terms. *Paz v. State of California,* 22 Cal. 4th 550, 560 (2000). "A defendant's undertaking of protective services increases the risk of harm if, as a result of his actions, the risk of harm is greater than if he had done nothing at all." *McIntosh v. U.S.,* Civ. No. 05-373 (BTM), 2008 WL 4492592, *8 (S.D. Cal. Sept. 29, 2008).

Plaintiff has not alleged that she relied on—or even read—Google's Advertising Terms and Content Policy. In any event it would be absurd to suggest that she relied on the Content Policy to her detriment: had Plaintiff read Google's Content Policy, the conspicuous absence of the required information about pricing, subscription, and cancellation on the MSSP website would have alerted her to the fact that the website was out of compliance with the Content Policy.

Plaintiff also fails to allege that the Advertising Terms somehow increased her risk of injury. Had Google "done nothing at all," the allegedly misleading MSSP websites would have been equally, if not more, misleading. Plaintiff's risk of harm from the MSSP advertisements was therefore the same, if not less, than it would have been in the absence of Google's Advertising Terms.

### 4. Plaintiff's Claim For Aiding And Abetting Various Violations Also Fails.

To state a claim for aiding and abetting, Plaintiff must allege that the aider and abetter (1) "knows that the other's conduct constitutes a breach of duty," *and* (2) "gives substantial assistance or encouragement to the other so to conduct himself." *Orser v. Vierra*, 252 Cal. App. 2d 660, 666 (Cal. App. 1967). Courts emphasize that the substantial assistance requirement is necessary to protect defendants with only a "slight" or tenuous relationship to the alleged wrongdoing. *Id.* at 669. To ascertain whether a defendant has provided substantial assistance, courts look at "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind." *Id.*

Plaintiff alleges that, by simply allowing MSSPs to advertise on its website, Google aided and abetted the MSSP's violation of Section 17200, violation of the CFAA, and trespass to chattels. ¶¶ 73-76. Plaintiff has failed, as an initial matter, to allege that Google provided "substantial assistance," as required to state a claim for aiding and abetting. Moreover, Plaintiff's

sole allegation against Google is that Google provided the MSSPs the opportunity to advertise. Such a tenuous relationship to the alleged wrongdoing cannot amount to the substantial assistance required to hold Google liable for the MSSP's activities. *Id.* at 669 ("The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other.").[7]

## V.    CONCLUSION

This case should be dismissed without leave to amend. Though leave to amend is generally given freely, "permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief, or if she is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Doe ex. rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 616 (9th Cir. 2003); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (a complaint must recite allegations sufficient "to raise a right to relief above the speculative level" and "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action."). Here, no amendments are possible to cure Plaintiff's inability to plead a colorable ground for relief against Google for conduct that is attributable to others.

Dated: October 31, 2008

KAREN G. JOHNSON-MCKEWAN
NANCY E. HARRIS
NIKKA N. RAPKIN
Orrick, Herrington & Sutcliffe LLP


*/s/Karen G. Johnson-McKewan*
KAREN G. JOHNSON-MCKEWAN
Attorneys for Defendant
GOOGLE INC.

---

[7] In any event, as discussed previously, the MSSPs have not violated the CFAA as a matter of law. *See* Section III.B.1.a. Even if the transmission of content to the Plaintiff's cell phone could constitute trespass of a chattel, the harm Plaintiff alleges—charges for mobile content services she did not subscribe to—are unrelated to any "trespass" of her cell phone, and the relationship between the MSSP advertisements and the MSSP's "trespass" is so tenuous as to be unforeseeable. *See Orser*, 252 Cal. App. 2d at 669.