| | |
|---|---|
| 1 | KAREN G. JOHNSON-MCKEWAN (SBN 121570)<br>kjohnson-mckewan@orrick.com |
| 2 | NANCY E. HARRIS (SBN 197042)<br>nharris@orrick.com |
| 3 | NIKKA N. RAPKIN (SBN 244207)<br>nrapkin@orrick.com |
| 4 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building |
| 5 | 405 Howard Street<br>San Francisco, CA  94105-2669 |
| 6 | Telephone:     415-773-5700<br>Facsimile:      415-773-5759 |
| 7 | |
| 8 | Attorneys for Defendant<br>GOOGLE INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNA GODDARD, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.  C 08-02738 (JF)<br><br>**GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:   December 5, 2008<br>Time:  9:00 a.m.<br><br>Judge:  The Honorable Jeremy Fogel<br>Date Action Filed: May 30, 2008<br>No Trial Date Set |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1
II. ARGUMENT ........................................................................................................2
    A. Each of Plaintiff's Claims Is An Attempt to Hold Google Liable for the Publication of Content Provided by Another ..........................................2
        1. Section 230 Bars Plaintiff's Section 17200 Claim.....................................3
        2. Section 230 Bars Plaintiff's Negligence and Contract Claims ..................5
            a. Plaintiff's Claims Seek Impermissibly To Hold Google Liable for Failure to Remove Advertisements On Its Website..........................................................................................5
            b. Plaintiff Does Not Support Her Argument that Google Can Be Liable for Failure to Remove Non-Compliant Advertisements ...........................................................................7
        3. Plaintiff's Aiding and Abetting Claim is Barred by the CDA ....................8
        4. Google's Content Policy Falls Within the Scope of Section 230(c)(2)(A) ..............................................................................................9
    B. Whether or Not Section 230 Applies, Plaintiff Does Not State Viable Claims ..................................................................................................9
        1. Plaintiff Fails to State a Claim Under Section 17200................................9
            a. Plaintiff Fails To State A Claim for Violation of the Computer Fraud And Abuse Act ...................................................10
            b. Plaintiff Fails to State a Claim That Google Knowingly Accepted Criminally Derived Funds ............................................11
        2. Plaintiff Fails to State a Claim for Breach of Contract.............................12
        3. Plaintiff's Negligence Claim is Barred by California Law.......................13
        4. Plaintiff States No Claim for Aiding and Abetting .................................14
III. CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*American Family Mut. Ins. Co. v. Rickman*,
 554 F. Supp. 2d 766 (N.D. Ohio 2008) ................................................................................. 10

*Balistreri v. Pacifica Police Dep't.*,
 901 F.2d 696 (9th Cir. 1988) ................................................................................................. 11

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ................................................................................................. 7

*Carafano v. Metrosplash.com, Inc.*,
 339 F.3d 1119 (9th Cir. 2003) ................................................................................................. 9

*Doe v. MySpace*,
 528 F.3d 413 (5th Cir. 2008) .......................................................................................... 2, 3, 4

*Doe v. SexSearch.com*,
 502 F. Supp. 2d 719 (N.D. Ohio 2007) ................................................................................... 8

*In re Doubleclick Privacy Litig.*,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................................... 10

*Fair Housing Council v. Roommates.com LLC*,
 521 F.3d 1157 (9th Cir. 2008) ........................................................................................ 6, 7, 8

*FTC v. Accusearch*,
 No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sept. 28, 2007) .......................................... 5

*Green v. Am. Online*,
 318 F.3d 465 (3d Cir. 2003) ...................................................................................... 2, 3, 6, 12

*Henry v. Lehman Commercial Paper, Inc.*,
 471 F.3d 977 (9th Cir. 2006) ................................................................................................. 14

*Highfields Capital Mgmt., L.P. v. Doe*,
 385 F. Supp. 2d 969 (N.D. Cal. 2005) ................................................................................... 12

*Mazur v. eBay, Inc., No. C 07-3967*,
 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ............................................................... 7, 11, 13

*PatentWizard, Inc. v. Kinko's Inc.*,
 163 F. Supp. 2d 1069 (D.S.D. 2001) ....................................................................................... 8

*Rutgard v. United States*,
 116 F.3d 1270 (9th Cir. 1996) ............................................................................................... 11

*Shamrock Foods Co. v. Gast*,
 535 F. Supp. 2d 962 (D. Ariz. 2008) ............................................................................... 10, 11

**TABLE OF AUTHORITIES**
**(continued)**

Page

*United States v. Stein*,
    37 F.3d 1407 (9th Cir. 1994) ...................................................................................................11

*United States v. Yagman*,
    502 F. Supp. 2d 1084 (C.D. Cal. 2007) ...................................................................................11

**STATE CASES**

*Branick v. Downey Savings & Loan*,
    39 Cal. 4th 235 (Cal. 2006).......................................................................................................5

*Casey v. U.S. Bank Nat'l Ass'n.*,
    127 Cal. App. 4th 1138 (Cal. App. 2005) ...............................................................................14

*FNS Mortgage Service Corp. v. Pacific Gen. Group, Inc.*,
    24 Cal. App. 4th 1564 (1994) ............................................................................................13, 14

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) .............................................................................................2, 3, 4

*Hanberry v. Hearst Corp.*,
    276 Cal. App. 2d 680 (1969) ..............................................................................................13, 14

*Mukthar v. Latin American Security Service*,
    139 Cal. App. 4th 284 (Cal. App. 2006) ...................................................................................14

*Paz v. State of California*,
    22 Cal. 4th 550 (2000)........................................................................................................13, 14

*Souza v. Westlands Water Dist.*,
    135 Cal. App. 4th 879 (Cal. App. 2006) ..................................................................................12

**FEDERAL STATUTES**

18 U.S.C. § 1957(a) ..............................................................................................................5, 9, 11

47 U.S.C. § 230..........................................................................................................................*passim*

**STATE STATUTES**

Cal. Bus. Code § 17200................................................................................................................*passim*

Cal. Civ. Code § 1739.7 ......................................................................................................................4

**OTHER**

Fed. R. Civ. P. ...........................................................................................................................1, 11

## I. INTRODUCTION

Plaintiff Jenna Goddard's ("Plaintiff") Opposition to Google Inc.'s Motion to Dismiss ("Opp.") rests on a wholesale mischaracterization of her own Complaint. Recognizing that her claims cannot proceed under Section 230 of the Communications Decency Act ("Section 230"), 47 U.S.C. § 230 – the Complaint, after all, would hold Google liable for content published by others – Plaintiff asks the Court to ignore the allegations she has actually made, and accept her recharacterization of those allegations instead. The Complaint, for example, defines the putative class as "[a]ll persons or entities who suffered damages as a result of clicking on a Google AdWords advertisement for mobile subscription services which linked to a Fraudulent Mobile Subscription Services website." ¶40.[1] The Opposition, on the other hand, argues Plaintiff's claims "arise from content created by Google (such as its Content Policy) and Google's conduct (such as its acceptance of tainted funds) which was (and remains) unrelated to content created by the mobile content providers." Opp. at 3. It is the Complaint, however, that controls here. Moreover, what Plaintiff wishes she had alleged works no better, because Section 230 also forecloses liability for Google's alleged failure to invoke an advertising and content policy to prevent the appearance of ads on Google webpages that led Plaintiff to click on purportedly fraudulent websites. No matter how Plaintiff packages her claims, it is perfectly clear that the alleged *cause* of her harm was fraudulent MSSPs. ("Absent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged *by the Fraudulent Mobile Subscription Services*." ¶58.) Plaintiff's attempt in her Opposition to evade application of Section 230 by treating Google's Content Policy as the published material that caused her damage goes nowhere, because the Complaint explicitly alleges otherwise and Section 230 still immunizes Google.

Moreover, even without the immunity afforded Google under Section 230, Plaintiff's Complaint would have to be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state valid claims.

---

[1] Citations to "¶__" are references to the relevant paragraph of the Complaint.

## II. ARGUMENT

### A. Each of Plaintiff's Claims Is An Attempt to Hold Google Liable for the Publication of Content Provided by Another.

Plaintiff argues that Section 230 does not apply because her claims are "unrelated to content created by the mobile content providers."[2] Opp. at 3. This argument – plainly a device to avoid application of Section 230 – flies in the face of the plain language of the complaint, and a host of appellate decisions that reject virtually indistinguishable efforts to evade Section 230. *See, e.g., Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008); *Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002).

Holding a defendant "responsible for content originating from other parties, [] would be treating it as the publisher . . . contrary to Congress's expressed intent under section 230(c)(1)." *Gentry*, 99 Cal. App. 4th at 831. This, however, is precisely what Plaintiff seeks to do. The sole basis for each of Plaintiff's four claims is that she "suffered damages as a result of clicking on a Google AdWords advertisement for mobile subscription services which linked to a Fraudulent Mobile Subscription Services website." ¶ 40.

Though the Complaint focuses primarily on the workings of the mobile content service industry (in which Google is *not* a participant), the gravamen of the Complaint is that Plaintiff was injured after entering her cell phone number on one or more allegedly fraudulent MSSP websites she viewed after clicking on a Google AdWords advertisement. ¶ 37. Google's only connection to the events allegedly causing Plaintiff's damages is that it accepted ads for publication on its website. As Plaintiff alleges repeatedly, "[a]bsent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members *would never have been damaged* by the Fraudulent Mobile Subscription Services." ¶¶ 58, 64, 70 (emphasis added).

Despite arguments to the contrary now, the Complaint is explicit: had Google declined to publish the allegedly fraudulent MSSP advertisements on its website, Plaintiff would not have been injured. Whether Plaintiff characterizes her claim as (1) negligence or breach of contract

---

[2] Plaintiff concedes that Google is an interactive computer service (Opp. at 4) and apparently agrees that Google is not responsible for the ads that allegedly caused her injury. Opp. at 4.

(for failure to remove ads not in compliance with Google's Content Policy and Advertising Terms), (2) acceptance of unlawful funds (for advertising services that caused Plaintiff's injury), or (3) aiding and abetting the allegedly fraudulent MSSPs (by allowing them to advertise), each of Plaintiff's claims depends on the allegedly fraudulent MSSP ad appearing on Google's website. By pursuing Google for the alleged damage ensuing from these ads, Plaintiff would hold Google liable for their publication. *See MySpace*, 528 F.3d at 420 ("No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities.").

### 1. Section 230 Bars Plaintiff's Section 17200 Claim.

Plaintiff argues that her claim for violation of California Business & Professions Code Section 17200 ("Section 17200") "is independent of the fraudulent mobile content providers' AdWords" and therefore does not seek to treat Google as a publisher for purposes of Section 230. Opp. at 8. The actual allegations of the Complaint do not support this characterization. Plaintiff alleges she was damaged by clicking on an MSSP's advertisement that Google published: "[a]bsent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged by the Fraudulent Mobile Subscription Services."[3] ¶ 58.

Courts have consistently resisted plaintiffs' arguments that their claims "do not attempt to treat [the defendant] as a 'publisher' of information." *MySpace*, 528 F.3d at 419. The longstanding and well-accepted rule is that holding computer services liable for third party content appearing on their websites would impermissibly treat the service as "the publisher or speaker" of that information under Section 230. *Id.*, at 418; *Green*, 318 F.3d 465; *Gentry*, 99 Cal. App. 4th 816. Plaintiff's efforts to circumvent Section 230 are indistinguishable from those arguments the Fifth Circuit and California Court of Appeal rejected in the *MySpace* and *eBay* cases. Both cases involve plaintiffs' arguments that their causes of action premise liability on

---

[3] Plaintiff further alleges that "Absent Google's knowing violation of 18 U.S.C. § 1957(a), it would never have provided AdWords services to the Fraudulent Mobile Subscription Services, and Class members would never have provided their personal information to the Fraudulent Mobile Subscription Services (enabling them to place the unauthorized charges)." ¶ 58.

something other than publication of information, and both found the chain of events underlying the claims arose from the publication of third party content on the defendants' websites, mandating dismissal.

The plaintiffs in *Gentry*, 99 Cal. App. 4th 816, focused on California's autographed sports memorabilia statute, Cal. Civ. Code § 1739.7, to argue that eBay should be liable for failure to furnish certificates of authenticity for sale of autographed merchandise through its website. Plaintiffs argued their claims sought only "to enforce eBay's independent duty under the statute to furnish a warranty as the ' "provider" of descriptions,' not as a publisher." *Id.* at 831. Recognizing the foundational allegation was that plaintiffs had been injured by purchasing fraudulent merchandise through eBay, the Court held that "enforcement of appellants' Civil Code § 1739.7 cause of action is inconsistent with Section 230 because it would 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 833.

The Fifth Circuit employed similar reasoning to dismiss claims against the social networking site, MySpace. *MySpace*, 528 F.3d 413. Plaintiffs sued MySpace for failing to implement safety measures after minor Julie Doe was assaulted by another MySpace user she met and traded information with through the website. *Id.* at 419. To evade application of Section 230, plaintiffs contended their claims were "predicated solely on MySpace's failure to implement basic safety measures" and therefore did "not attempt to treat [MySpace] as a 'publisher' of information." The Fifth Circuit disagreed, finding the claims, no matter how packaged, ultimately sought to hold MySpace liable for events resulting from the availability of information on its website. The Court found plaintiffs' "allegations are merely another way of claiming that MySpace was liable for publishing the communications." *Id.* at 419. "If MySpace had not published communications between Julie Doe and [her attacker], including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred." *Id.*

The rule of *MySpace* and *Gentry* is clear: if a claim's success would render a website liable for publication of third party content, Section 230 applies and the claims must be

dismissed.[4] It matters not whether a plaintiff characterizes her claims as failure to provide a certificate of authenticity, failure to provide technological safety mechanisms, or unfair competition based on failure to reject an advertisement; if the claim would hold the computer service liable for an injury resulting from third party information available on its website, it is barred.[5] Plaintiff's Section 17200 claim must be dismissed under Section 230.[6]

### 2. Section 230 Bars Plaintiff's Negligence and Contract Claims.

#### a. Plaintiff's Claims Seek Impermissibly To Hold Google Liable for Failure to Remove Advertisements On Its Website.

Plaintiff agrees that MSSPs, and not Google, drafted the AdWords advertisements that allegedly caused her injury. Instead, she argues her negligence and contract claims do not depend on these ads, but instead "hinge on information Google *created* – such as the terms of Google's

---

[4] Plaintiff relies on *FTC v. Accusearch*, No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sept. 28, 2007), an unpublished decision from the District of Wyoming, for the principle that Plaintiff's Section 17200 claim is independent of the publication of advertisements on Google's website. *Accusearch* addressed the FTC's claims that defendants had engaged in unlawful sale of private information. Among other allegations, the FTC claimed defendants "advertised the availability of phone records, solicited orders, purchased the records from third-party sources for a fee, and then resold them to the end-consumers." *Id.* at *5. Though the court did not apply Section 230 to the FTC's claims, its decision was not that a Section 17200 claim falls outside the immunity of Section 230, but rather that the FTC's claims were not premised on publication of third party information. *Id.* ("Defendants' argument might be more persuasive if the FTC sought to hold liable an internet service provider who . . . merely delivered an email containing ill-gotten consumer phone records.").

[5] Plaintiff's argument that "Google's liability on Goddard's UCL claim is independent of the fraudulent mobile content providers' AdWords" (Opp. at 8), is empty rhetoric. Google's liability, as alleged in the Complaint, is entirely dependent on the content of the MSSP advertisements. Indeed, Plaintiff's standing to bring suit under Section 17200 is contingent on the injury she allegedly experienced as a result of clicking on the AdWords advertisement. *Branick v. Downey Savings & Loan*, 39 Cal. 4th 235, 241 (Cal. 2006) (standing under Section 17200 requires "injury in fact").

[6] Plaintiff argues her Section 17200 claim constitutes an "enforcement" of the federal money laundering statute, 18 U.S.C. § 1957(a) and thus falls outside of Section 230. This argument is little more than an unsupported argument for an exception to Section 230 for state law claims (such as unfair competition claims) predicated on federal statutes. Because of the desire "to ensure vigorous enforcement of Federal criminal laws to deter . . . obscenity, stalking, and harassment," § 230(b)(5), Section 230 provides a narrow exception for enforcement of Federal criminal statutes such as "chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children)." § 230(e)(1). Congress's express policy in Section 230 establishes conclusively that it did not intend to expand the range of exceptions beyond those specifically enumerated, and plaintiff cites no authority to the contrary. Indeed, given the breadth of state unlawful competition statutes such as Section 17200, such an exception would very nearly swallow the rule.

5
DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. C 08-02738

Content Policy." Opp. at 2. Not only does this argument directly conflict with Plaintiff's allegations that "[a]bsent Google's provision of AdWords services to the Fraudulent Mobile Subscription Services, the Class members would never have been damaged by the Fraudulent Mobile Subscription Services" (¶¶ 64, 70), it is legally unsupported.

The heart of Plaintiff's negligence and breach of contract claims is that Google failed to enforce its Content Policy by neglecting to remove MSSP ads leading to websites that did not comply with Google's Content Policy and Advertising Terms. ¶¶ 63, 69. Plaintiff's argument is far from clear, but whether Google's Content Policy and Advertising Terms are "information provided by another information content provider" is beside the point; the issue is whether the *advertisements* were provided by another content provider, and this Plaintiff does not dispute. *See e.g.*, *Fair Housing Council v. Roommates.com LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (finding website not liable for portions of the site provided by third parties, though defendant was responsible for other content on its site). While it may be that the Complaint alleges that Google's Content Policy and Advertising Terms is the source of its purported duty, that policy did not cause Plaintiff's alleged harm. Rather, it is Google's publication of, or failure to remove, the MSSP advertisements that Plaintiff alleges as the cause of her injury.

Plaintiff's contract and negligence claims are indistinguishable from those in *Green*, 318 F.3d at 468. Green alleged that "AOL negligently failed to live up to its contractual obligations" in its user agreement by declining to remove AOL users who harassed him and transmitted a virus to his computer through AOL chat rooms. *Id.* at 468. Although it did not address the question of who drafted the AOL user agreement, the Third Circuit dismissed the claims on the grounds that plaintiff's claims simply sought to hold "AOL liable for its alleged negligent failure to properly police its network for content transmitted by its users . . . [and] would 'treat' AOL 'as the publisher or speaker' of that content." *Id.* at 471. Just as AOL could not be liable under Section 230 for breach of contract claims arising from third party information provided through its service (regardless of the drafter of the contract itself), Google is immune from Plaintiff's claims that it failed to remove noncompliant advertisements, regardless whether Google drafted its Content Policy and Advertising Terms.

### b. Plaintiff Does Not Support Her Argument that Google Can Be Liable for Failure to Remove Non-Compliant Advertisements.

Plaintiff relies on a short but confusing litany of cases that are either supportive of Google's arguments or taken entirely out of context. In particular, Plaintiff cites to *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) and *Fair Housing Council*, 521 F.3d 1157. Each of these cases *supports* Google's claim to Section 230 immunity. The issue in *Batzel* and *Fair Housing* was whether a service's assistance in drafting the allegedly injurious content on its website removes the content from the purview of "information provided by another information content provider" for Section 230 purposes. *See Batzel*, 333 F.3d at 1022 (basic editorial and word changes insufficient to make the internet service liable for its content); *Fair Housing*, 521 F.3d at 1175 (Section 230 did not immunize website because the unlawful content resulted from a detailed questionnaire the website required users to complete). Neither case suggests, as Plaintiff argues, that an internet service provider could be liable for third party content, such as the MSSP advertisements at issue here. Nor do these cases support Plaintiff's otherwise unsupported premise that "[t]here is no CDA immunity for claims such as these that arise from Google's own terms of service." Opp. at 5. Rather, both *Fair Housing* and *Batzel* establish that internet services, such as Google, cannot be liable under Section 230 for those parts of their websites provided by third parties, even if the service was responsible for creating other parts of the site. *See Fair Housing*, 521 F.3d at 1174 (holding website not liable for comments in the "Additional Comments" section of site because it did not develop those sections).

*Mazur v. eBay, Inc.*, No. C 07-3967, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008), an unpublished decision on which Plaintiff relies heavily, also supports Google's claim to immunity under Section 230. Despite Plaintiff's suggestions otherwise, *Mazur* did not involve a website's terms and conditions of use, but an FAQ-type webpage eBay provided directly to its users promising that eBay's live auction service was safe.[7] *Id.* at *8. The court held Section 230 nevertheless applied to "plaintiff's assertion that eBay knew of the seller's illegal conduct and

---

[7] The eBay publication stated "Bidding on eBay Live Auctions is very safe. All live auctions are run by reputable international auction houses, which are carefully screened by eBay before being authorized to sell to you." *Id.* at *8.

7

failed to prevent it." *Id.* at *9. Similarly, "eBay's assertion that the auction houses were screened is not actionable because "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish . . . – are barred." *Id.* at *9 (citations omitted). The court concluded that while eBay could not be liable under Section 230 for its "assurances of accuracy or promise to remove unauthorized auctioneers," it could be liable for misrepresentations since "eBay *promised that Live Auctions were safe*" and this did not involve the "publisher's editorial function." *Id.* at *12.

Plaintiff here, however, is not alleging fraud, but contending Google breached its Content Policy by failing to remove the MSSP ads that did not comply with its Content Policy and Advertising Terms. Thus, Plaintiff would do exactly what the court said Mazur could not: hold a service liable for an alleged "promise to remove" noncompliant members. This is precisely the sort of claim Congress disallowed with Section 230.[8]

### 3. Plaintiff's Aiding and Abetting Claim is Barred by the CDA.

Plaintiff relies on a single out-of-context quote from *Fair Housing*, 521 F.3d at 1175 – a case that nowhere mentions aiding and abetting – to argue that claims for aiding and abetting "fall[] outside the scope of the CDA." Opp. at 11. Plaintiff does not argue that her aiding and abetting claim would not hold Google liable for publication of MSSP ads; instead she argues that aiding and abetting is somehow outside of Section 230. There is no support for this argument. Section 230(e)(3) provides expressly, plainly, and without exception for aiding and abetting claims, that "*[n]o* cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3). *See PatentWizard, Inc. v. Kinko's Inc.*, 163 F. Supp. 2d 1069 (D.S.D. 2001) (dismissing aiding and abetting claim pursuant to Section 230). Plaintiff's proposed exception to Section 230 would swallow the rule, since all

---

[8] Although the facts alleged and the language of the Content Policy and Advertising Terms make it plain that Google makes no representation as to the safety of its advertisers' websites, Google would be immune for such representations, in any event, as long as they were based only on "a regurgitation of its users' representations." *Id.* at *11 (distinguishing *Doe v. SexSearch.com*, 502 F. Supp. 2d 719 (N.D. Ohio 2007)). Because the signing of the Content Policy and Advertising Terms was a representation by Google's AdWords *customers*, Google could not be liable for any alleged assurance derived from that representation.

publication of unlawful content would, under Plaintiff's definition, amount to aiding and abetting the alleged unlawfulness.

### 4. Google's Content Policy Falls Within the Scope of Section 230(c)(2)(A).

In asserting that liability can be predicated on Google's Content Policy, Plaintiff once again, and without legal authority, argues this Court should ignore the plain language of Section 230(c), which provides that no interactive computer service "shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access or availability of material." § 230(c)(2). Opp. at 6. Congress's purpose in enacting Section 230 was to encourage efforts to restrict objectionable material, and to ensure that such efforts do not create additional liability risks. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Google's Content Policy and Advertising Terms is just such an effort to limit certain kinds of ads and thus cannot create liability for Google's alleged failure to enforce its terms. Although Plaintiff argues that Google's issuance of the Content Policy and Advertising Terms was not an "action" taken to "restrict availability" of noncompliant MSSP ads, Plaintiff alleges in her Complaint that these documents expressly discourage ads that do not meet certain specifications. ¶ 22. Thus, by Plaintiff's other allegations, Google's Content Policy and Advertising Terms are at least in part an effort to restrict objectionable material, and Plaintiff's contract and negligence claims must be dismissed as an attempt to hold Google liable for these policies.

### B. Whether or Not Section 230 Applies, Plaintiff Does Not State Viable Claims.

### 1. Plaintiff Fails to State a Claim Under Section 17200.

Plaintiff's Opposition does not resolve the deficiencies in her claim that Google engaged in unfair competition through a predicate violation of the federal money laundering statute, 18 U.S.C. § 1957(a). In particular, she has not alleged (and cannot) that Google's acceptance of payment for the allegedly fraudulent MSSP advertisements violated the federal money laundering statute, because the MSSPs did not derive those funds from a "specified unlawful activity" and because, even if they had, Google could not possibly have had the requisite knowledge that the funds were unlawfully obtained as a matter of law.

### a. Plaintiff Fails To State A Claim for Violation of the Computer Fraud and Abuse Act.

The Computer Fraud and Abuse Act ("CFAA") is an anti-hacking statute that does not contemplate Plaintiff's attenuated claim regarding the MSSPs alleged transmission of mobile content to cell phones. *See e.g.*, *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965-66 (D. Ariz. 2008); *In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001). To state a claim that the allegedly fraudulent MSSPs violated the CFAA, Plaintiff must allege facts establishing that the MSSPs "accesse[d] a protected computer without authorization" and furthered a fraud or caused damage by way of that access. *Shamrock Foods Co.*, 535 F. Supp. 2d at 965-66. Plaintiff cannot do so here.

Plaintiff is unable to establish that the allegedly fraudulent MSSPs accessed her cell phone at all. Although Plaintiff argues that "mobile content providers accessed her . . . cellular phone[] by sending her unauthorized mobile content" (Opp. at 12), merely sending such information cannot constitute "access" for purposes of the CFAA without the absurd result that *any* transmission of mobile content, text messages, emails and so forth would constitute access to a cell phone or computer for purposes of the CFAA. Moreover, Plaintiff's Opposition indicates that it is *not the MSSPs* that accessed Plaintiff's cell phone, but either (1) the aggregators who serve as middlemen actually responsible for transmission of the mobile content, or (2) the mobile content itself.[9] Regardless of who, if anyone, accessed Plaintiff's cell phone, it very clearly is not the MSSPs, and the MSSPs therefore could not have violated the CFAA.

Plaintiff's opposition also fails to resolve the deficiencies in her claim that the MSSPs caused damage "by means of" accessing her cell phone as required under the CFAA. *American Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 770-71 (N.D. Ohio 2008). Although Plaintiff argues that the CFAA should be treated as mail fraud, such that the access need only be "incident" to the scheme (Opp. at 15), this does not square with the legislative history or courts'

---

[9] "The design of the infrastructure for mobile content also requires mobile content providers' *transmissions to aggregators (the middlemen between mobile content providers and cellular carriers)* to include both *the mobile content which accesses consumers' cellular phones* and the instructions necessary to charge consumers for the mobile content." Opp. at 15 (emphasis added).

interpretation of the CFAA. Unlike mail fraud, the CFAA was designed precisely to target a specific offense – computer hacking – and "the legislative history supports a narrow view of the CFAA." *Shamrock Foods Co.*, 535 F. Supp. 2d at 965. Because the MSSPs did not violate the CFAA, Plaintiff has failed to allege that Google accepted funds derived from a specific unlawful activity and Plaintiff's Section 17200 claim must be dismissed.

### b. Plaintiff Fails to State a Claim That Google Knowingly Accepted Criminally Derived Funds.

Even were it true that the MSSPs' alleged conduct violates the CFAA, Plaintiff cannot state a claim that Google "knowingly engage[d] . . . in a monetary transaction in criminally derived property of a value greater than $10,000" for purposes of § 1957(a). *See, e.g., Mazur*, 2008 WL 618988 at *3 ("A motion to dismiss should be granted if plaintiff fails to proffer 'enough facts to state a claim to relief that is plausible on its face.'") (citations omitted). As Plaintiff concedes, Google's liability depends on its knowing that the MSSPs' payments were themselves criminally derived. Opp. at 16; *see also United States v. Yagman*, 502 F. Supp. 2d 1084 (C.D. Cal. 2007); *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994). The threshold for funds to be "criminally derived" is high: the funds must be traceable directly to an underlying crime and cannot have been commingled with lawfully obtained funds. *Rutgard v. United States*, 116 F.3d 1270, 1292-3 (9th Cir. 1996) (noting that Congress enacted Section 1957 as a tool in the war against drugs and warning against an expansive application).

Plaintiff argues Google had the requisite knowledge because "Google knew that fraud was endemic in the mobile content industry." Opp. at 17. Even if that were true, however, it is not sufficient to establish that Google had any knowledge or belief that the payments it received from its MSSP advertisers were "criminally derived." Although all facts should be interpreted in the light most favorable to Plaintiff, dismissal under Fed. R. Civ. P. 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal is appropriate where, as here, the "plaintiff fails to proffer 'enough facts to state a claim to relief that is plausible on its face.'" *Mazur*, 2008 WL 618988 at * 3. In this instance, Plaintiff cannot allege

11

any remotely plausible set of facts that would establish that Google could possibly have known that all of the monies it received from its MSSP customers were criminally derived.

### 2. Plaintiff Fails to State a Claim for Breach of Contract.

Plaintiff's claim to be an intended beneficiary of Google's Content Policy is inconsistent with the allegations of the Complaint, the Opposition, and abundant case law establishing that the incidental beneficiaries of user agreements are not intended beneficiaries for contract purposes.[10] *See, e.g., Green*, 318 F.3d at 472 (AOL user agreement); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005) (Yahoo! service agreement). It is not enough to benefit from an agreement; under California law, there must be an actual expression of intent by an agreement's promisee to benefit the third party. *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 893 (Cal. App. 2006).

Google cannot be liable for a promise it did not make. *Souza*, 135 Cal. App. 4th 879 (Cal. App. 2006). Because Plaintiff cannot point to anything in the Content Policy and Advertising Terms constituting a promise by Google that it would ensure users that its advertisers were in compliance with the terms, Plaintiff takes the untenable position that Google is liable as a promisor of the *entire* Content Policy and Advertising Terms because Google is a promisor of *certain provisions* of the agreement. Opp. at 20. Not only is this argument incompatible with basic contract principles, it runs directly counter to *Souza*, 135 Cal. App. 4th 879, in which the court found, in an analogous service agreement, that the water district was *not* a promisor of the terms imposing certain requirements on the water district's customers. *Id.* at 893. As promisee, Google cannot be liable for the MSSPs alleged promise to provide certain information on their landing pages. *See id.* Plaintiff does not ever discuss *Souza*, let alone distinguish it.

---

[10] The Complaint alleges Google created its Content Policy to benefit itself (i.e., to "create the appearance that its search engine is protecting users' interests" and "hopes to lull governmental agencies into falsely believing that Google is acting responsibly") ¶¶ 31-32. The Opposition asserts "Google's motivation behind [sic] Content Policy was to create the appearance to the public and to regulators that it is acting to prevent [ ] fraud." Opp. at 7.

### 3. Plaintiff's Negligence Claim is Barred by California Law.

Although the existence of a duty is the *sine qua non* of any negligence claim, Plaintiff provides no authority for the proposition that Google owed Plaintiff any duty. Instead, Plaintiff relies on *Mazur v. eBay, Inc.*, 2008 WL 618988, an affirmative misrepresentation case that sheds no light on Plaintiff's negligence claim here,[11] and a series of cases that hold an entity can be liable for assuming a duty where the entity provides a "seal of approval" and the plaintiff is then injured after *actually relying* on that endorsement. *See, e.g.*, *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 684 (1969); *FNS Mortgage Service Corp. v. Pacific Gen. Group, Inc.*, 24 Cal. App. 4th 1564, 1567-68 (1994).

Plaintiff bypasses her failure to allege a duty, arguing her claim is for negligent undertaking for Google's "failure to enforce the terms of the Content Policy." This theory runs contrary to California law. As a threshold matter, Plaintiff has not alleged that Google undertook to remove non-compliant MSSP websites or that it endorsed any MSSP website. Moreover, the California Supreme Court in *Paz v. State of California*, 22 Cal. 4th 550, 560 (2000), establishes that Google cannot be liable for its allegedly negligent failure to enforce its Content Policy unless either (1) the Content Policy actually increased Plaintiff's risk of injury; or (2) Plaintiff relied on the Content Policy to her detriment. *Id.* at 560. Plaintiff has alleged neither.

Perhaps recognizing that her attempt to distinguish *Paz* is unavailing, Plaintiff relegates her discussion to a footnote. Plaintiff argues that "*Paz* only means that the duty imposed by a defendant's undertaking does not include instantaneously eliminating any preexisting risks of harm the moment the undertaking begins." Opp. at 22-3 n.15. *Paz* holds no such thing. The *Paz* plaintiff alleged liability for defendants' failure to provide operational traffic signals despite earlier promises. *Paz*, 22 Cal. 4th at 555. The Court nevertheless found, because defendants'

---

[11] Plaintiff argues that the *Mazur* court allowed a claim for negligence "on virtually the same set of facts alleged by Goddard." Opp. at 21. Not so. Rather, the claims in Mazur alleged eBay made affirmative statements to the plaintiff that its live auctions were "safe," *Mazur*, 2008 WL 618988, *10. Plaintiff here has made no such claim and does not allege that Google ever made direct promises to her regarding the safety of MSSPs.

13
DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
Case No. C 08-02738

conduct had not "increased the risk of physical harm to plaintiff beyond that which allegedly [already] existed," defendants were not liable under a negligent undertaking theory.[12] *Id.* at 559.

Plaintiff also relies on a series of inapposite cases that hold that an advertiser or similar service may be liable where customers rely on its direct representations that its advertisers are safe. *See Hanberry*, 276 Cal. App. 2d at 684 (Good Housekeeping's "seal of approval"); *FNS Mortgage Service Corp.*, 24 Cal. App. 4th at 1567-68 (local building code official's reliance on defendant's certification that plumbing products met uniform standards criteria). Plaintiff, however, does not allege either that Google made any direct representation, or that she relied on anything in making her decision to use Google's search engine or to enter her telephone numbers on MSSP websites. Because Plaintiff failed to allege that (1) the Content Policy actually increased her risk of injury (which it obviously did not); or (2) that she relied on the Content Policy to her detriment, she has not stated a claim for negligence. *See Paz*, 22 Cal. 4th at 560.

### 4. Plaintiff States No Claim for Aiding and Abetting.

Plaintiff provides no authority to support her assertion that providing advertising services is sufficient to constitute "substantial assistance" for purposes of pleading an aiding and abetting claim. Indeed, the cases upon which she relies underscore that the threshold for "substantial assistance" is considerably higher than the mere provision of advertising services. *See Henry v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 995 (9th Cir. 2006) (affirming jury verdict of aiding and abetting because defendant satisfied "all of First Alliance's financing needs," "kept First Alliance in business, knowing that its financial difficulties stemmed directly and indirectly from litigation over its dubious lending practices," and admitted that it provided "significant assistance to First Alliance's business"); *Casey v. U.S. Bank Nat'l Ass'n.*, 127 Cal. App. 4th 1138, 1142 (Cal. App. 2005) (noting bank could be liable for aiding and abetting money laundering by allowing opening of accounts with invalid tax identification numbers, removal of hundreds of

---

[12] Plaintiff's reliance on *Mukthar v. Latin American Security Service*, 139 Cal. App. 4th 284 (Cal. App. 2006), is similarly misplaced. *Mukthar* holds that a security service may be negligent where it agrees to provide a security guard and then fails to do so. Plaintiff cannot point to any indication that Google promised to remove or take any action in response to noncompliant ads.

thousands of dollars of cash in unmarked duffel bags, payment of obviously forged negotiable instruments, etc.).

Nor is Plaintiff's allegation that Google's AdWords services is "an *essential part* of the [alleged] scheme, because [the mobile content providers] could not collect unwitting users' cellular phone numbers without Google driving Internet traffic towards their landing pages," sufficient to plead an aiding and abetting claim. Opp. at 24 (emphasis in original). Plaintiff's reasoning would lead to unbounded liability for aiding and abetting claims, and there is no support for such an expansive reading of the law.

### III. CONCLUSION

For the reasons set forth here and in Google's opening brief, Google respectfully requests that the Court grant the Motion to Dismiss without leave to amend.

Dated: November 21, 2008

KAREN G. JOHNSON-MCKEWAN
NANCY E. HARRIS
NIKKA N. RAPKIN
Orrick, Herrington & Sutcliffe LLP

*/s/ Karen G. Johnson-McKewan*
Karen G. Johnson-McKewan
Attorneys for Defendant
GOOGLE INC.