KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
NANCY E. HARRIS (SBN 197042)
nharris@orrick.com
NIKKA N. RAPKIN (SBN 244207)
nrapkin@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNA GODDARD, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.  C 08-02738 (JF)<br><br>**GOOGLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         April 3, 2009<br>Time:        9:00 a.m.<br>Judge:       The Honorable Jeremy Fogel<br><br>Date Action Filed:  May 30, 2008<br>No Trial Date Set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................2

II.   PROCEDURAL HISTORY ......................................................................................3

    A.   Original Complaint and Motion to Dismiss ......................................................3

    B.   Order Dismissing Complaint ............................................................................3

    C.   Amended Complaint .........................................................................................4

III.  RULE 12(B)(6) STANDARD ..................................................................................5

IV.   LEGAL ARGUMENT ..............................................................................................6

    A.   Plaintiff Has Not Alleged Any Facts Establishing That Google Directly
        Participated in Developing the Alleged Illegality ...........................................6

    B.   Two Ninth Circuit Cases Establish That A Website Does Not Lose Its
        Section 230 Immunity By Providing Neutral Tools That Do Not Materially
        Contribute To the Alleged Illegality ...............................................................8

        1.   Google's Alleged Provision of Neutral Tools Cannot Render
            Google An Information Content Provider ..............................................8

        2.   Google Is Not An Information Content Provider.....................................10

    C.   Even If the CDA Did Not Apply Here, Plaintiff Has Not Pleaded Any
        Viable Claim ...................................................................................................12

        1.   Plaintiff Fails To Plead A Violation Of California Business &
            Professions Code Section 17200 ............................................................12

            a.   The MSSPs Did Not Violate the Computer Fraud and Abuse
                Act ............................................................................................12

            b.   Google Did Not Knowingly Engage in a Monetary
                Transaction Involving Criminally Derived Property ...................14

        2.   Plaintiff Fails To State A Claim For Breach Of Contract ........................15

            a.   Google Made No Promise to Enforce its Advertising Terms .......16

            b.   Plaintiff is Not an Intended Third Party Beneficiary of the
                Advertising Terms ....................................................................17

        3.   Plaintiff's Negligence Claim Is Barred As A Matter Of Law .................17

        4.   Plaintiff's Claim For Aiding And Abetting Various Violations Also
            Fails .......................................................................................................19

V.    CONCLUSION .......................................................................................................19

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                    <u>Page</u>

3

*Am. Family Mut. Ins. Co.* v. *Rickman*,
    554 F. Supp. 2d 766 (N. D. Ohio 2008) ...................................................13

4

*Balistreri* v. *Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1988)..............................................................6

5

6

*Batzel* v. *Smith*,
    333 F.3d 1018 (9th Cir. 2003)..........................................................7

7

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ......................................................................6

8

9

*Cahill* v. *Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996)...............................................................6

10

*Carafano* v. *Metrosplash.com*,
    339 F.3d 1119 (9th Cir. 2003).....................................................*passim*

11

12

*Fair Housing Council of San Fernando Valley* v. *Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008).....................................................*passim*

13

*Gentry* v. *eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) ............................................................7

14

15

*Green* v. *America Online*,
    318 F.3d 465 (3d Cir. 2003)..............................................................16

16

*Grosz* v. *Lassen Cmty. College Dist.*,
    572 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................6

17

18

*Hall* v. *Time, Inc.*,
    158 Cal. App. 4th 847 (2008)............................................................15

19

*Highfields Capital Mgmt., L.P.* v. *Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ...............................................17

20

21

*In re DoubleClick Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...............................................13

22

*Laster* v. *T-Mobile United States, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005)..............................................15

23

24

*Madrid* v. *Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005)............................................................15

25

*Martinez* v. *Socoma Cos.*,
    11 Cal. 3d 394 (1974) .....................................................................17

26

27

28

ii

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page

3 *McCulloch* v. *Ford Dealers Adver. Ass'n*,
        234 Cal. App. 3d 1385 (1991)..................................................................................18

4
*McIntosh v. U.S.*,
5        Civ. No. 05-373 (BTM), 2008 WL. 4492592 (S.D. Cal. Sept. 29, 2008) .......................18

6 *Optinrealbig.com, LLC* v. *Ironport Sys.*,
        323 F. Supp. 2d 1037 (N.D. Cal. 2004)...........................................................................7

7
*Orser* v. *George*,
8        252 Cal. App. 2d 660 (1967).....................................................................................19

9 *Paz* v. *State of California*,
        22 Cal. 4th 550 (2000) .............................................................................................18

10
*Shamrock Foods Co.* v. *Gast*,
11        535 F. Supp. 2d 962 (D. Ariz. 2008) .......................................................................13

12 *Souza* v. *Westlands Water Dist.*,
        135 Cal. App. 4th 879 (2006)............................................................................16, 17

13
*United States* v. *Czubinski*,
14        106 F.3d 1069 (1st Cir. 1997) ................................................................................13

15 *United States* v. *Rutgard*,
        116 F.3d 1270 (9th Cir. 1997).................................................................................14

16
*United States* v. *Stein*,
17        37 F.3d 1407 (9th Cir. 1994)...................................................................................15

18 *United States* v. *Yagman*,
        502 F. Supp. 2d 1084 (C.D. Cal. 2007) ..................................................................14

19
*Walters* v. *Seventeen Magazine*,
20        195 Cal. App. 3d 1119 (1987)..................................................................................18

21 **STATUTES**

22 18 U.S.C. § 1030(a)(4)........................................................................................12, 13

23 18 U.S.C. § 1030(a)(5)(B)..................................................................................12, 13

24 18 U.S.C. § 1030(e)(8).............................................................................................13

25 18 U.S.C. § 1957......................................................................................................14

26 18 U.S.C. § 1957(a) .........................................................................................1, 12, 14

27 47 U.S.C. § 230...................................................................................................*passim*

28 Cal. Bus. & Prof. Code § 17200 .........................................................................*passim*

**TABLE OF AUTHORITIES**
**(Continued)**

Page

Cal. Bus. & Prof. Code § 17203 ................................................................. 15

Cal. Bus. & Prof. Code § 17204 ................................................................. 15

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 5

1                                **NOTICE OF MOTION AND MOTION**

2          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on April 3, 2009 at 9:00 a.m. or as soon thereafter as the

4 matter may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District

5 Court, 280 S. First Street, San Jose, CA 95113, Google Inc. will move the Court for an order

6 dismissing Plaintiff's Amended Complaint pursuant to the Communications Decency Act, 47

7 U.S.C. § 230, and Federal Rule of Civil Procedure 12(b)(6).  This motion is based on the Notice

8 of Motion and Motion, the supporting Memorandum of Points and Authorities, the [Proposed]

9 Order, all pleadings on file in this action, oral argument of counsel, and any other matter that may

10 be submitted at the hearing.

11                                  **STATEMENT OF ISSUES**

12          1.        Are Plaintiff's state law claims barred as a matter of law by Section 230 of the

13 Communications Decency Act of 1996, 47 U.S.C. § 230, which establishes immunity for

14 interactive computer service providers against state law claims arising from statements made by

15 users?

16          2.        Has Plaintiff stated a claim under California Business & Professions Code Section

17 17200, *et seq.* (the "UCL" or "Section 17200"), when she fails to plead facts that would support a

18 claim of the predicate violation of law, 18 U.S.C. § 1957(a)?

19          3.        Has Plaintiff alleged a claim for breach of contract when she has not pled – and

20 cannot plead – that she was an intended beneficiary of the alleged contract or that any promise

21 was made to enforce the alleged terms in her favor?

22          4.        Is Plaintiff's claim for negligence barred as a matter of law?

23          5.        Has Plaintiff pled any facts that would support any claim for aiding and abetting?

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1       <u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

2    **I.**     **INTRODUCTION**

3         The Court dismissed Plaintiff's original complaint on the ground that Section 230 of the

4    Communications Decency Act of 1996 (the "CDA" or "Section 230") barred each of her claims.

5    Docket No. 48.  In its Order, the Court held that Google is an interactive computer service

6    provider for purposes of Section 230, and that each of Plaintiff's claims sought to hold Google

7    liable for the publication of third-party content, precisely the liability Section 230 proscribes.  *Id.*

8    at 4 n.2, 13.  In granting Plaintiff leave to amend, the Court cautioned Plaintiff that any new

9    complaint must allege facts that "make it very clear that [Google] ***directly participates in***

10   ***developing the illegality***' at issue." *Id.* at 6 (quoting *Fair Housing Council of San Fernando*

11   *Valley* v. *Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*) ("Roommates")).[1]

12         Plaintiff has ignored the Court's admonition.  Instead, her Amended Complaint is rife with

13   conclusory, unsupported (and outlandish) allegations that Google "controlled much of the

14   underlying commercial activity" of its advertisers, "substantially participates in the creation of

15   AdWords ads," "*encourages* illegal content" and "effectively *requires* advertisers to engage in

16   illegal conduct."  Docket No. 49, ¶¶ 19, 21.[2]  Plaintiff alleges no facts that would, if proven,

17   establish that Google is the "information content provider" of the offending statements and, as a

18   consequence, Section 230 continues to bar her claims, and the amended complaint should be

19   dismissed.

20         Plaintiff alleges that the "Keyword Tool" features of Google's AdWords product result in

21   "collaboration" by Google in the development of illegal content.  This argument is not only

22   without foundation, the Ninth Circuit has already rejected it twice, holding expressly that the

23   provision of neutral tools, such as keyword generation tools from which advertisers may choose

24   their keywords, does not deprive a website of Section 230 immunity.  *See Roommates*, 521 F.3d

25   at 1168-69; *Carafano v. Metrosplash.com,* 339 F.3d 1119, 1125 (9th Cir. 2003).

26   [1]  All emphasis herein is added unless otherwise indicated.

27   [2] All paragraph references ("¶") herein are to the Amended Complaint (Docket No. 49) unless
otherwise indicated.

28

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1   Plaintiff also contends that Google provides in-person advice to some AdWords customers

2   "in order to provide tailored advice on how to best optimize AdWords, including proposing ad

3   budgets, selecting keywords and designing ad copy." ¶ 20.  Yet, nowhere does Plaintiff allege

4   that Google engaged in such in-person meetings to develop any misleading Mobile Subscription

5   Service Provider ("MSSP") advertisements or to create any of the MSSP websites that allegedly

6   caused her injury.  Plaintiff has not and cannot establish that Google acted as an information

7   content provider of any statements that provide the basis for her claims – claims that are legally

8   insufficient even if the CDA did not apply here – and her claims are barred by Section 230.

9   Accordingly, the Amended Complaint should be dismissed with prejudice.

10  **II.     PROCEDURAL HISTORY**

11          **A.     ORIGINAL COMPLAINT AND MOTION TO DISMISS**

12  Plaintiff filed her original complaint on April 30, 2008, alleging she was injured when she

13  provided her cell phone number to "one or more" MSSPs who had advertised free ring tones, and

14  that those MSSPs thereafter placed charges on her cell phone bill for services she had expected

15  would be free.  She sought to hold Google liable for her claimed injuries because (a) she had

16  found the MSSPs through a Google search; and (b) Google's advertising policies should have

17  prevented the appearance of the MSSPs' misleading ads on its search pages.  *See* Docket No. 1 at

18  9-26.

19  Google moved to dismiss the Complaint on grounds, among others, that Section 230

20  immunizes internet service providers, including Google, from claims arising from content

21  provided by others.  *See* Docket No. 43.

22          **B.     ORDER DISMISSING COMPLAINT**

23  On December 17, 2008, this Court granted Google's motion to dismiss.  Docket No. 48.

24  The Court found Plaintiff's claims are "premised fundamentally on Google's publication of the

25  AdWords advertisements," but that Plaintiff had failed to allege facts to support the proposition

26  that Google was acting as an "internet content provider" or an "information content provider."

27  Docket No. 48 at 13.  The Court found that Plaintiff's "bare allegation" that "Google assists its

28  customers in drafting AdWords and selecting keywords through both live support from its

3

1  AdWords Specialists and its advertising campaign optimization services" was "insufficient to

2  overcome the 'robust' protections of the CDA." *Id.*  In allowing Plaintiff another opportunity to

3  plead, the Court held Plaintiff must make "it 'very clear that [Google] directly participates in

4  developing the alleged illegality.'"  *Id.* at 6-7 n.3 (quoting *Roommates*, 521 F.3d at 1174)

5  (insertion in original).

6       **C.     AMENDED COMPLAINT**

7       In response to the Order, Plaintiff filed an Amended Complaint on January 16, 2009.

8  Docket No. 49.  As before, Plaintiff alleges that she received unauthorized charges on her cell

9  phone bill after she provided her cell phone number on "one or more" unidentified MSSP

10  websites.[3]  ¶ 47.  Plaintiff claims she accessed these MSSP websites by clicking on Google

11  AdWords advertisements that appeared on the Google website after she entered terms like

12  "ringtone" into the Google search engine.   ¶¶ 45-6.  Although she does not identify the MSSPs or

13  the address of their websites, Plaintiff alleges that the websites did not display information

14  required by Google's Advertising Program Terms and Content Policy.  ¶ 47.

15       Plaintiff also continues to allege that MSSPs, billing aggregators, and cellular carriers

16  have engaged in a scheme by which they cause consumers "to be billed for services and products

17  irrespective of whether the consumer actually agreed to purchase them."  ¶ 10. According to

18  Plaintiff, these MSSPs collect consumer cell phone numbers, which they then provide to billing

19  aggregators.  ¶ 11.  These billing aggregators act as middlemen who instruct "the relevant cellular

20  carrier to add the charge to the bill associated with that cell phone number." *Id.*

21       Plaintiff further alleges (as she did before) that "Google will participate in in-person

22  meetings . . . in order to provide tailored advice on how best to optimize their use of AdWords."

23  ¶ 20.  She acknowledges that "keyword suggestions" are "utilized only at the discretion of the

24  advertiser" and that keyword ideas "will trigger the appearance of the relevant advertisement"

25  only "if selected by the advertiser."   ¶¶ 23, 25.  Google's Keyword Tool itself informs

26  advertisers: "You are responsible for the keywords you select and for ensuring that your use of

27  ───────────────
[3] MSSPs provide products such as "customized ring tones for use with cell phones, sports score
28  reports, weather alerts, stock tips, horoscope services, and the like." *Id.* ¶ 8.

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1    the keywords does not violate any applicable laws." *Id.* Ex A.

2           In response to the Order Dismissing the Complaint, however, plaintiff now alleges for the

3    first time that Google assists its customers in choosing keywords through its Keyword Tool,

4    which Plaintiff describes as a "suggestion tool" that uses an "algorithm" to "'suggest' specific

5    keywords to advertisers." ¶ 22. From nothing more than these alleged facts, Plaintiff draws the

6    startling conclusion that "Google's involvement [in the development of MSSPs' advertisements]

7    was so pervasive that the company ***controlled much of the underlying commercial activity***

8    ***engaged in by the third-party advertisers***." ¶ 21. Plaintiff continues:

9           Google creates algorithms, known as "suggestion tools," for use by
              advertisers and consumers alike. These algorithms control and determine
10            the results given to its advertisers and to consumers for any search
              constructed through the use of Google's search engine. Through the use
11            (and manipulation) of these algorithms, *Google not only **encourages illegal***
              ***conduct**, it collaborates in the development of the illegal content and,*
12            *effectively, **requires** its advertiser customers to engage in it.*

13   *Id.*

14          Though Plaintiff includes allegations that Google (a) controls the commercial activities of

15   its advertisers, and (b) requires its advertisers to engage in illegal conduct, none of the "facts"

16   alleged come close to supporting such claims. Plaintiff alleges that Google's mathematical

17   algorithm "suggests" the use of the word "free" in relation to "ringtone," as a means of attracting

18   more visitors to their sites, and that MSSPs whose offerings are not actually free are literally

19   powerless to resist the suggestion. ¶¶ 24-25.

20          Plaintiff does not allege, however, that Google assisted in creating either the AdWords

21   advertisements Plaintiff allegedly clicked on or the MSSP websites she visited, or that Google

22   *required* its advertisers either to adopt its suggestions or to include certain text in their

23   advertisements. And while Plaintiff alleges the "manipulation" of the algorithms (¶ 21), nowhere

24   does Plaintiff allege facts supporting that conclusion. Nor does Plaintiff allege that Google

25   compelled MSSPs to offer their services for free when those advertisers had no intention of

26   honoring such offers.

27   **III.    RULE 12(B)(6) STANDARD**

28          Dismissal under Rule 12(b)(6) for failure to state a claim "can be based on the lack of a

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

2    *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  To avoid dismissal,

3    "plaintiffs must plead facts showing they are entitled to relief."  *Grosz v. Lassen Cmty. College*

4    *Dist.*, 572 F. Supp. 2d 1199, 1207 n.11 (E.D. Cal. 2008).  "[L]abels and conclusions, and a

5    formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*,

6    550 U.S. 544, 555 (2007).  In deciding a motion to dismiss, "all allegations of material fact are

7    taken as true and construed in the light most favorable to the nonmoving party," *Cahill v. Liberty*

8    *Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); however, "[f]actual allegations must be

9    enough to raise a right to relief above the speculative level on the assumption that all of the

10   complaint's allegations are true."  *Bell Atl.*, 550 U.S. at 555.

11   **IV.    LEGAL ARGUMENT**

12            Under Section 230, an interactive computer service is not liable for information a third

13   party posts to its website if: (1) it qualifies as a provider or user of an interactive computer service

14   under Section 230; (2) the plaintiff's claims would hold the defendant liable as a publisher or

15   distributor of information created by another information content provider; and (3) the website is

16   not itself an information content provider of the content at issue.  *Carafano*, 339 F.3d at 1123.

17            The primary issue before the Court is whether Plaintiff has now alleged facts sufficient to

18   establish that Google is an information content provider under Section 230.  Plaintiff's Amended

19   Complaint demonstrates conclusively that she has not pled, and cannot plead, such facts; it should

20   be dismissed for failure to state a claim.

21            **A.    PLAINTIFF HAS NOT ALLEGED ANY FACTS ESTABLISHING THAT GOOGLE**
              **DIRECTLY PARTICIPATED IN DEVELOPING THE ALLEGED ILLEGALITY**

22

23            Plaintiff's Amended Complaint – essentially a lengthy rehashing of the allegations in her

24   original complaint – does not allege facts that could establish that Google acted as an

25   "information content provider" under the Ninth Circuit's narrow definition.[4]  Rather, Plaintiff's

26   claims – that Google provides a "keyword tool" and "advice on how best to optimize their use of

27   _____

28   [4] Section 230 defines an "information content provider" as "any person or entity that is
     responsible, in whole or in part, for the creation or development of information provided through
     the Internet or any other interactive computer service." § 230(f)(3).

1  AdWords, including proposing ad budgets, selecting keywords and designing ad copy" – seek to

2  hold Google liable for the neutral tools Google provides its AdWords customers.  ¶ 20.

3       As this Court already held in dismissing Plaintiff's original complaint, the law is clear:

4  "providing third parties with neutral tools to create web content is considered to be squarely

5  within the protections of § 230," regardless of whether "a service provider knows that third

6  parties are using such tools to create illegal content."  Docket No. 48 at 5 (noting that "[t]he broad

7  scope of § 230 extends to multiple forms of putative 'involvement' by an interactive service

8  provider in generating online content").

9       As the Ninth Circuit held *en banc* in *Roommates*, an internet service does not become an

10  "information content provider" merely by "augmenting the content generally."  521 F.3d at 1167-

11  68.  Rather the service must "materially" contribute "to its alleged unlawfulness."  *Id.*; *see also*

12  *Carafano*, 339 F.3d at 1123 (noting that courts treat "§ 230(c) immunity as quite robust, adopting

13  a . . . relatively restrictive definition of 'information content provider'").  Consequently, websites

14  are not liable under Section 230 for basic editing functions, "[m]inor wording changes," and

15  "neutral tools," even if such actions facilitate the dissemination of unlawful content.  *Batzel v.*

16  *Smith*, 333 F.3d 1018, 1022, 1031 (9th Cir. 2003) (listserv did not become an information content

17  provider of a defamatory posting by changing some wording, and adding a message stating that

18  "the FBI has been informed of the contents" of the post); *see also Optinrealbig.com, LLC v.*

19  *Ironport Sys.*, 323 F. Supp. 2d 1037, 1046-47 (N.D. Cal. 2004) (defendant did not become an

20  information content provider of allegedly libelous emails it forwarded, even though it added a line

21  of text and a link to its website); *see also Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 831 (2002)

22  (eBay could not be liable for "dissemination of representations made by the individual

23  defendants").

24       Recognizing that "[w]ebsites are complicated enterprises, and there will always be close

25  cases where a clever lawyer could argue that something the website operator did encouraged the

26  illegality," courts reject rationalizations by plaintiffs seeking artfully to plead around the CDA by

27  alleging that the defendant was an information content provider.  *Roommates*, 521 F.3d at 1174.

28  Because Congress intended the CDA "to protect websites not merely from ultimate liability, but

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1  from having to fight costly and protracted legal battles," the Ninth Circuit held that "close cases .

2  . . must be resolved in favor of immunity, lest we cut the heart out of Section 230 by forcing

3  websites to face death by ten thousand duck-bites, fighting off claims that they promoted or

4  encouraged – or at least tacitly assented to – the illegality of third parties." *Id.* at 1174-75.  Only

5  "[w]here it is very clear that the website directly participates in developing the alleged illegality"

6  will the website lose its Section 230 immunity.  *Id.* at 1174.

7       Plaintiff alleges no facts supporting her broad conclusion that Google's keyword and

8  optimization tools somehow require (or make irresistible) illegal content or force Google's

9  advertisers into illegal conduct as a condition of access, or that Google otherwise "directly

10  participates in developing the alleged illegality." *Roommates*, 521 F.3d at 1174.

11 **B.      TWO NINTH CIRCUIT CASES ESTABLISH THAT A WEBSITE DOES NOT LOSE ITS
            SECTION 230 IMMUNITY BY PROVIDING NEUTRAL TOOLS THAT DO NOT**
12 **        MATERIALLY CONTRIBUTE TO THE ALLEGED ILLEGALITY**

13      The Ninth Circuit's rulings in *Carafano v. Metrosplash.com* and *Fair Housing Council v.*

14  *Roommates.com* establish conclusively that Google cannot be liable for the neutral tools it

15  allegedly provides to its advertiser customers.

16 **1.      GOOGLE'S ALLEGED PROVISION OF NEUTRAL TOOLS CANNOT RENDER
            GOOGLE AN INFORMATION CONTENT PROVIDER**
17

18      An interactive computer service becomes an information content provider *only* by

19  "materially contributing to [the content's] alleged unlawfulness." *Roommates*, 521 F.3d at 1168.

20  Websites do not lose Section 230 immunity by offering neutral tools that merely facilitate the

21  development of content without contributing to the content's underlying illegality. *Carafano*, 339

22  F.3d at 1125.  Rather, a website's involvement must be "direct and palpable," for example, by

23  "removing the word 'not' from a user's message reading '[Name] did not steal the artwork' in

24  order to transform an innocent message into a libelous one." *Roommates*, 521 F.3d at 1169.

25      *Carafano* concerned a false dating profile that an anonymous user posted to the

26  defendant's matchmaking website by impersonating a famous television actress. *Carafano*, 339

27  F.3d at 1121.  The profile appeared to have been posted by the actress and indicated that she

28  sought a sexual encounter and made allegedly offensive statements about her sexual preferences.

1   *Id.*  To prepare the profile, the anonymous user employed tools the defendant website provided to

2   assist its users in creating online profiles.  In particular, the website provided its users with "a

3   detailed questionnaire containing both multiple-choice and essay questions," including "more

4   than fifty questions from menus providing between four and nineteen options.  Some of the

5   potential multiple choice answers are innocuous; some are sexually suggestive." *Carafano*, 339

6   F.3d at 1121.  From this "menu of 'pre-prepared responses,'" the anonymous user had selected

7   responses such as "'Playboy/Playgirl' for 'main source of current events' and 'looking for a one-

8   night stand' for 'why did you call.'" *Id.* at 1125.  The website used these responses to create the

9   online profile.  *Id.*

10      While acknowledging that these tools facilitated the development of the libelous profile,

11  sometimes providing even the actual language itself, the Ninth Circuit found the questionnaires

12  were merely "neutral tools" that were not sufficient to render the website an information content

13  provider under the CDA.  *Carafano*, 339 F.3d at 1125; *see also Roommates*, 521 F.3d at 1171

14  (interpreting *Carafano*).  The Ninth Circuit held that the website lacked responsibility for the

15  "underlying misinformation'" and therefore was not an information content provider under

16  Section 230.  *Id.*

17      The Ninth Circuit's *en banc* decision in *Roommates* further illuminates the scope of

18  *Carafano*'s "neutral tools" analysis, holding that a website loses its Section 230 immunity only

19  where it is "very clear that the website directly participates in developing the illegality" at issue.

20  *Roommates*, 521 F.3d at 1174.  Although the Court warned that "there will always be close cases

21  where a clever lawyer could argue that *something* the website operator did encouraged the

22  illegality," *id.* (emphasis in original), it found that "Roommate does much more than provide

23  options" or "encourage or solicit."  *Id.* at 1166 n.19.  Instead, the website "makes answering the

24  discriminatory questions a condition of doing business."  *Id.* at 1166.[5]  In contrast, Google's

_____

[5] *Roommates* addressed a website service that matched available housing with potential tenants.
Before users could post or review listings, the website required users to answer a series of
questions that allegedly violated the Fair Housing Act, including inquiries into "sex, sexual
orientation and whether he would bring children to a household." *Id.* at 1161.  In other words, the
Ninth Circuit held, "the part of the profile that is alleged to offend the Fair Housing Act and state
housing discrimination laws – the information about sex, family status and sexual orientation – is
provided by subscribers in response to Roommate's questions, which they cannot refuse to

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1   Keyword Tool does nothing *but* provide options that the customer may accept or reject at the

2   customer's discretion; Google does not solicit – much less require – its customers to provide

3   illegal content as a condition of doing business or otherwise.

4         Plaintiff's Amended Complaint does not allege any facts indicating that Google bears any

5   responsibility for any "underlying misinformation" or other unlawful content.  The content at

6   issue in this lawsuit is the creation of users; Google compels the selection of no particular content.

7   Google's algorithm-based "suggestion tool" and live advice to its advertising customers are

8   indistinguishable as a legal matter from the multiple-choice and essay questionnaire in *Carafano*.

9   *Compare Carafano,* 339 F.3d at 1125 (CDA applies where user volitionally selected false

10   content) *with Roommates,* 521 F.3d at 1168-69 (CDA does not apply where user was compelled

11   to answer allegedly unlawful questions).

12           **2.**     **GOOGLE IS NOT AN INFORMATION CONTENT PROVIDER**

13         Just as it was the anonymous user who selected responses to the matchmaking website's

14   questionnaire in *Carafano*, it is Google's advertising customers who decide which, if any, of the

15   keywords generated by the Keyword Tool they should adopt; the "selection of content" from

16   these tools is "left exclusively to the user."  *Carafano*, 339 F.3d at 1124.  Plaintiff admits that

17   keywords "are typically utilized only at the discretion of the advertiser" and will only be included

18   "if selected by the advertiser."  ¶¶ 21-22, 25.  In fact, Google's Keyword Tool clearly informs

19   advertisers, "You are responsible for the keywords you select and for ensuring that your use of

20   the keywords does not violate any applicable laws."  *Id.* Ex. A.  In the same vein, Plaintiff does

21   not allege that live Google representatives so much as *suggested* misleading or unlawful content

22   to its customers or encouraged any customer to adopt any such content.

23         Plaintiff nevertheless claims that Google was an information content provider because

24   Google's algorithms "encourage" its MSSP advertisers to use the word "free" when drafting

25   AdWords advertisements, even if the services the MSSPs offer are not free.  In particular,

26   Plaintiff alleges that when a potential advertiser or a Google user enters "ringtone" into Google's

27
28   answer if they want to use defendant's services."  *Id.* at 1166.  The website then displayed this
     information on the user's profile page and used the information to actively match users with
     compatible responses.  *Id.*

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1    Keyword Tool, the tool suggests alternative search terms, including "free ringtone." ¶ 22.

2    Plaintiff does not allege that this tool is anything more than a neutral algorithm, and Plaintiff

3    admits that such tools are typically "innocuous." ¶ 22.  Plaintiff nevertheless claims that Google

4    "effectively requires" its MSSP advertisers to use the keyword "free," regardless of its veracity,

5    because their advertisements allegedly would not appear if Google users did not search for the

6    keywords "free ringtone."  ¶¶ 19, 25-6.

7            At its core, Plaintiff's allegations amount to a claim that because Google provides data to

8    its advertisers showing alternate keyword options, Google "effectively requires advertisers to

9    engage in illegal conduct."  ¶ 19.  This is not only ludicrous, but even as alleged, the conduct is

10   not comparable with the website's conduct in *Roommates*.  Nowhere does Plaintiff allege that

11   Google requires its customers to adopt its keyword suggestions as a "condition of doing business"

12   or that the use of any particular keyword (such as "free") resulted in illegal ad content.

13   *Roommates*, 521 F.3d at 1166.  Plaintiff admits that the ultimate selection of keywords is "only at

14   the discretion of the advertiser," ¶¶ 25; Google, at most, provides "a framework that could be

15   utilized for proper or improper purposes," *Roommates*, 521 F.3d at 1172.  Google is no more

16   responsible for the selection of false content by advertisers than the matchmaking website was

17   responsible for the selection of false multiple-choice answers in *Carafano*.  As this Court held in

18   dismissing Plaintiff's original Complaint, the Ninth Circuit "emphasized repeatedly that the

19   *Roommates* website lost immunity only by *forcing* its users to provide the allegedly

20   discriminatory information as a condition of access."  Docket No. 48 at 5 (emphasis in original).

21   Plaintiff's Amended Complaint again fails to allege any facts establishing that Google "forced"

22   its users to adopt any keywords, much less contributed in a "direct and palpable" way to the

23   alleged illegality.[6]  *Id.* at 1169.

24

25

26   [6] If anything, Google is even less an information content provider than the website in *Carafano*;
     while the website in *Carafano* offered menus of "pre-prepared responses," with language such as
27   "Playboy/Playgirl" and "looking for a one night stand" that the website surely must have known
     would allow impersonations and pranks, Google's customers were merely presented with a
28   neutral list of algorithm-generated keywords.

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

**C.      EVEN IF THE CDA DID NOT APPLY HERE, PLAINTIFF HAS NOT PLEADED ANY VIABLE CLAIM[7]**

**1.      PLAINTIFF FAILS TO PLEAD A VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**

Plaintiff's Section 17200 claim alleges, improbably, that Google engaged in "money laundering" as prohibited by 18 U.S.C. § 1957(a) by knowingly accepting funds derived from a "specified unlawful act." Plaintiff claims the funds the MSSPs paid to Google for its advertising services were derived from violations of the Computer Fraud and Abuse Act ("CFAA"), allegedly a "specified unlawful act" for purposes of 18 U.S.C. § 1957(a). Because Plaintiff's allegations do not, and cannot, state a claim that the MSSPs violated the CFAA as an initial matter and because, in any event, Google could not have had the requisite knowledge under 18 U.S.C. § 1957(a) that such funds were derived from an allegedly unlawful activity, Plaintiff has failed to state a claim for violation of Section 17200.

**a.      THE MSSPs DID NOT VIOLATE THE COMPUTER FRAUD AND ABUSE ACT**

To establish that the MSSP revenue paid to Google for advertising services was derived from a "specified unlawful act" for purposes of Section 1957, Plaintiff alleges the MSSPs violated 18 U.S.C. § 1030(a)(4) or 18 U.S.C. § 1030(a)(5)(B) of the CFAA by charging her for mobile content to which she did not subscribe.[8] ¶ 64. The MSSPs' charges, no matter how fraudulent they are alleged to be, are not within the scope of the CFAA, and Plaintiff's allegations are insufficient to state a claim that the MSSPs violated the CFAA as a matter of law.

---

[7] While Plaintiff has added new allegations to her Amended Complaint in a misguided attempt to plead around Section 230, she made no material changes to her substantive claims or to the theories underlying those claims. Accordingly, Google respectfully repeats here the arguments set forth in its original motion to dismiss as to why those claims should be dismissed independent of whether Section 230 immunity applies. Google does not believe it is necessary for the Court to reach these arguments, if, as discussed above, Section 230 immunizes Google from Plaintiff's claims.

[8] The fraud Plaintiff alleges is the "intent to defraud [subscribers] out of the services' unauthorized charges." ¶ 61. Similarly, the alleged "damage" is based on the allegation that "[i]f the Fraudulent Mobile Subscription Services' unauthorized charges are not paid eventually, the cellular carriers will discontinue all services (including cellular service)" and therefore "impair the availability of Class members' access to and communication with their cellular service." ¶ 62.

Congress enacted the CFAA to punish destructive computer hacking and theft of information stored on computers. *See Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965-66 (D. Ariz. 2008) ("The general purpose of the CFAA 'was to create a cause of action against computer hackers (e.g., electronic trespassers).'"); *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001).  Courts have recognized that "the legislative history supports a narrow view of the CFAA." *Shamrock Foods Co.,* 535 F. Supp. 2d at 966.  Because the goal of the CFAA is to punish hackers and trespassers who cause injury to others by infiltrating their computers, the CFAA requires both a trespass of a computer *and* loss, damage, or fraud resulting from the unauthorized access.  *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 770 (N. D. Ohio 2008).  The two provisions of the CFAA upon which Plaintiff relies, Section 1030(a)(4) and Section 1030(a)(5)(B), both expressly apply only where the defendant has (1) accessed a protected computer without authorization, *and* (2) perpetrated a fraud or caused damage by means of that access.[9]

The scheme of the CFAA is clear: it is not enough to merely access computers; the defendant must actively cause harm and obtain something of value *by way of the access. United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997) (reversing conviction under CFAA because, although defendant's use of IRS computer to browse confidential taxpayer information "unquestionably exceeded authorized access to a Federal interest computer," "he did not obtain 'anything of value'").  The damage must be actually related to "the context of computer hacking." *Am. Family Mut. Ins. Co.*, 554 F. Supp. 2d at 770-71 (holding that damage caused by accessing employer's information and sharing it with employer's competitor was not damage for purposes of the CFAA because damage related to misuse of information rather than misuse of the

_____

[9]  Section 1030(a)(4) applies only where an individual "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, *and by means of such conduct furthers the intended fraud and obtains anything of value*."  18 U.S.C. § 1030(a)(4) (emphasis added).  Similarly, Section 1030(a)(5)(B) only applies if a person "intentionally accesses a protected computer without authorization, and as a result of such conduct, *recklessly causes damage*."  18 U.S.C. § 1030(a)(5)(B) (emphasis added).  "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information, that (A) causes loss aggregating at least $5,000 in value during any 1-year period to one or more individuals."  18 U.S.C. § 1030(e)(8).  These claims are not satisfied in the absence of loss or damage resulting directly from the unlawful access.

1    computer).

2         Plaintiff does not claim that she was damaged, harmed, or defrauded by the MSSPs'

3    alleged access to her cell phone. Rather, she alleges she was injured because the MSSPs *charged*

4    *for that access.* ¶¶ 62-63. Accordingly, there is no nexus between the alleged fraud and damage,

5    on the one hand, and the alleged access to Plaintiff's cell phone, on the other. Although these

6    charges are a result of a service that includes sending text messages to a cell phone, it cannot be

7    said that the fraud arises from the allegedly unauthorized access to Plaintiff's cell phone.

8                     **b.    GOOGLE DID NOT KNOWINGLY ENGAGE IN A MONETARY**
                             **TRANSACTION INVOLVING CRIMINALLY DERIVED PROPERTY**
9

10        Even assuming *arguendo* that the MSSPs did violate the CFAA, Plaintiff's Section 17200

11   claim cannot succeed unless Google itself performed an unlawful act. Although Plaintiff claims

12   Google engaged in "money laundering" as prohibited by 18 U.S.C. § 1957(a), there is no set of

13   facts by which Google could have violated § 1957(a).

14        Violation of 18 U.S.C. § 1957(a) requires actual knowledge "that a transaction involved

15   criminal property" and that "the property was derived from a specified unlawful activity." *United*

16   *States v. Yagman*, 502 F. Supp. 2d 1084 (C.D. Cal. 2007). Recognizing the possibility for abuse

17   of Section 1957, the Ninth Circuit construes the statute narrowly, holding that "Section 1957 was

18   enacted as a tool in the war against drugs" and "[s]uch a powerful instrument of criminal justice

19   should not be expanded by judicial invention or ingenuity." *United States v. Rutgard*, 116 F.3d

20   1270, 1292 (9th Cir. 1997).

21        To violate Section 1957, the transferred funds must be traceable directly to the underlying

22   crime. *Rutgard*, 116 F.3d at 1292-93 (overturning Section 1957 conviction on grounds that

23   defendant's bank account contained some lawfully obtained money as well as criminally derived

24   money and the government failed to trace the withdrawal to the unlawful funds); *Yagman*, 502 F.

25   Supp. 2d at 1087-1093 (overturning convictions for failure to adequately trace funds in

26   commingled account). There is no Section 1957 violation where, for example, both lawful and

27   unlawfully obtained funds are commingled in an account and payment could have been with

28   either the lawful or unlawfully obtained monies. *Rutgard*, 116 F.3d at 1292-93. Moreover, the

                                                    14
                                                                GOOGLE INC.'S MOTION TO DISMISS AMENDED
                                                                                               COMPLAINT
                                                                                         C 08-02738 (JF)

1    defendant must actually know that the property represents criminally derived property.  *See*

2    *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994) (reversing conviction for insufficient

3    knowledge instruction to jury).

4         Plaintiff has not pled any facts by which Google could reasonably have possessed the

5    requisite knowledge that the payments from the MSSPs constituted property derived from a

6    statutorily proscribed act as alleged by Plaintiff.  Plaintiff's unfounded and overblown claim that

7    "all or substantially all" of the revenue of the MSSPs who failed to abide by Google's Content

8    Policy was criminally derived is insufficient to establish that Google could have known that the

9    particular funds it received in payment for advertising space were criminally derived.[10]

10        **2.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

11        Plaintiff claims that Google requires its AdWords customers to sign a set of Advertising

12   Terms before they are permitted to advertise through Google.  Plaintiff alleges that, among other

13   provisions, these Advertising Terms require customers to abide by Google's policies (including

14   its AdWords Content Policy), which allegedly obligate MSSP advertisers to include certain

15   information (such as mobile subscription pricing and cancellation procedures) on their websites.

16   ¶¶ 31-32 and Ex. F.  Plaintiff claims that by failing to disallow advertisements that did not include

17   the required information, Google somehow breached a promise to which Plaintiff was the

18   intended beneficiary.  ¶ 73.  Under California law, however, Plaintiff cannot recover against

19   Google for breach of contract unless (1) Google actually made a promise to disallow

20   advertisements that were not in compliance with its Content Policy, and (2) Plaintiff is an

21

22   ─────────────
     [10] Plaintiff's Section 17200 claim suffers from additional fatal flaws.  Plaintiff cannot establish
     that she is entitled to any restitution from Google under Section 17203.  Restitution is the
23   exclusive monetary remedy available to private plaintiffs under Section 17200 and "is limited to
     the return of property or funds in which the plaintiff has an ownership interest (or is claiming
24   through someone with an ownership interest)."  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th
     440, 453 (2005).  Because Plaintiff alleges that she paid the MSSPs, ***not*** Google, and because she
25   does not contend that she had any ownership interest in funds paid to Google, she cannot establish
     any entitlement to restitution from Google.  *See id.*  Plaintiff's inability to assert restitution as a
26   remedy against Google and her failure to allege that Google caused any injury deprives her of
     standing to assert a Section 17200 claim against Google is an independent basis upon which to
27   dismiss this action.  Cal. Bus. & Prof. Code § 17204 (a private person has standing to assert a
     Section 17200 claim only if he or she (1) "has suffered injury in fact," and (2) "has lost money or
28   property as a result of such unfair competition"); *see Laster v. T-Mobile United States, Inc.*, 407
     F. Supp. 2d 1181, 1994 (S.D. Cal. 2005); *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855-8 (2008).

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1    intended third party beneficiary of that promise – i.e., that the *promisee* of Google's alleged

2    promise (the MSSP Advertisers) intended to benefit Plaintiff.[11]  *Souza v. Westlands Water Dist.*,

3    135 Cal. App. 4th 879 (2006).  Plaintiff has not, and cannot, allege the requisite facts for either

4    prong, and her breach of contract claim should be dismissed. *See id.*

                       a.     **GOOGLE MADE NO PROMISE TO ENFORCE ITS ADVERTISING
                              TERMS**

5
6            As an initial matter, Google cannot be liable for a promise it did not make.  *See Souza*,

7    135 Cal. App. 4th at 892 ("If a contract is to be a basis of liability for the [defendant's] violation

8    of [its Terms and Conditions] . . . it must be a contract in which the *[defendant]* promises to abide

9    by [these terms].").  Google's Advertising Terms were a promise by Google's advertising

10   customers *to Google* in exchange for participation in Google's advertising service.  Plaintiff has

11   not alleged and cannot point to any provision in Google's Advertising Terms by which Google

12   promised to enforce the Advertising Terms or otherwise remove noncompliant advertisements.

13           In dismissing allegations virtually indistinguishable from Plaintiff's, the California Court

14   of Appeal recognized the absurdity of holding a service provider liable to an unrelated third party

15   for failure to enforce its own terms and conditions.  *See Souza*, 135 Cal. App. 4th at 893-94.

16   There is no basis for inferring (and Plaintiff does not allege) that Google made a promise to its

17   advertising customers that it would enforce the Advertising Terms against them; any such

18   promise would have been made to Google's advertisers and would have been to their *detriment*.

19   *See id.* at 892. Google's Advertising Terms commit only its AdWords customers to comply with

20   those terms; they do not confer any rights upon Plaintiff.  *See also Green v. America Online*, 318

21   F.3d 465, 472 (3d Cir. 2003) (holding "that Green failed to state a claim for breach of contract

22   because . . . by their terms, the Member Agreement and Community Guidelines were not intended

23   to confer any rights on Green and AOL did not promise to protect Green from the acts of other

24   subscribers").  Because Google made no promise to enforce its Advertising Terms, Plaintiff's

25   claims against Google for its failure to enforce its those terms must be dismissed.

26

27   _____

28   [11] Plaintiff does not allege that she was a party to the Advertising Terms and therefore cannot
     enforce the terms unless she is an intended third party beneficiary. *Id.*

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

**b.**   **PLAINTIFF IS NOT AN INTENDED THIRD PARTY BENEFICIARY OF THE ADVERTISING TERMS**

In any event, as a non-party to the Advertising Terms, Plaintiff may assert a claim for breach of contract *only* if she is an intended third party beneficiary of the agreement. *Souza*, 135 Cal. App. 4th 879; *Martinez v. Socoma Cos.*, 11 Cal. 3d 394, 406 (1974). Whether a party is a third party beneficiary may be determined as a matter of law. *Souza*, 135 Cal. App. 4th at 891.

For Plaintiff to qualify as an intended third party beneficiary of the Advertising Terms, those terms would have to reflect, on their face, an intent to benefit Plaintiff. *Martinez*, 11 Cal. 3d at 406. "To attain standing as a third party beneficiary of a contract, a person must show *clearly* that when the parties executed their agreement they intended its execution to confer real benefits on that person." *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005) (internet users are not third party beneficiaries of Yahoo! Service agreement because there "is nothing in the language of the contract that even remotely suggests such intention") (emphasis original). Plaintiff has not alleged the Advertising Terms reflect any intent to benefit her and, in fact, expressly alleges the terms were intended to benefit Google. ¶ 40-42.

More significantly, a third party is not an intended beneficiary of an agreement unless the *promisee* intends the agreement to benefit the third party. *Id.* at 893. ("The point of the third-party beneficiary doctrine is to allow a third party to enforce, against a promisor, rights running to the third party for which the *promisee* bargained."). The intent of the promisor "is not at issue." *Id.* Assuming *arguendo* that Google did in fact promise to enforce its Advertising Terms, Google would be the promisor of the agreement and *the allegedly fraudulent MSSP would be the promisee*. Consequently, for Plaintiff to be an intended third party beneficiary, the Advertising Terms would have to reflect an intent by the allegedly fraudulent MSSP to benefit Plaintiff. The *Souza* court found such a result to be absurd, and held as a matter of law that the plaintiff in that case was not an intended beneficiary. *Id.* at 893. There is no basis for a different conclusion here; accordingly, Plaintiff's breach of contract claim must be dismissed.

**3.**   **PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED AS A MATTER OF LAW**

A long line of California cases establishes that publishers, including publishers of

17

1   advertisements, have no independent duty to police content for accuracy.  *See, e.g.*, *Walters v.*

2   *Seventeen Magazine*, 195 Cal. App. 3d 1119, 1122 (1987) (magazine could not be held liable for

3   teen's injury from a product advertised in the magazine); *see also McCulloch v. Ford Dealers*

4   *Adver. Ass'n*, 234 Cal. App. 3d 1385 (1991) (corporation had no duty to participants in fraudulent

5   contest despite having affixed its logo to the materials promoting the contest).  Accordingly,

6   absent a showing of some special duty, Plaintiff may not assert a claim of negligence against

7   Google.

8          Plaintiff alleges that Google's Advertising Terms represent a voluntary assumption of  a

9   duty of care to Google's users.  ¶ 78.  Plaintiff claims Google's Content Policy required its MSSP

10  advertisers to "prominently display" certain information on their websites, including

11  identification of the service as a subscription, price of the service, billing interval, and

12  cancellation information.  ¶ 32.  Plaintiff alleges "these statements in its Content Policy amount to

13  public representations by Google of the accuracy and clarity of pricing, subscription, and

14  cancellation information that Google users can expect to find on third-party websites linked to

15  AdWords advertisements . . . ."  ¶ 33.

16         Under California law, however, Google cannot be found to have assumed a duty to

17  Plaintiff unless (1) the Advertising Terms themselves increased the risk of harm or (2) Plaintiff

18  actually relied upon the Advertising Terms.  *Paz v. State of California,* 22 Cal. 4th 550, 560

19  (2000).  "A defendant's undertaking of protective services increases the risk of harm if, as a result

20  of his actions, the risk of harm is greater than if he had done nothing at all." *McIntosh v. U.S.*,

21  Civ. No. 05-373 (BTM), 2008 WL 4492592, *8 (S.D. Cal. Sept. 29, 2008).

22         Plaintiff has not alleged that she relied on—or even read—Google's Advertising Terms

23  and Content Policy.  In any event, it would be absurd to suggest that she relied on the Content

24  Policy to her detriment: had Plaintiff read Google's Content Policy, the conspicuous absence of

25  the required information about pricing, subscription, and cancellation on the MSSP website

26  would have alerted her to the fact that the website was out of compliance with the Content Policy.

27         Plaintiff also fails to allege that the Advertising Terms increased her risk of injury.  Had

28  Google "done nothing at all," the allegedly misleading MSSP websites would have been equally,

18

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1   if not more, misleading.  Plaintiff's risk of harm from the MSSP advertisements was therefore the

2   same, if not less, than it would have been in the absence of Google's Advertising Terms and

3   Content Policy.

4           **4.      PLAINTIFF'S CLAIM FOR AIDING AND ABETTING VARIOUS VIOLATIONS
                       ALSO FAILS**
5

6           To state a claim for aiding and abetting, Plaintiff must allege that the aider and abetter (1)

7   "knows that the other's conduct constitutes a breach of duty," *and* (2) "gives substantial

8   assistance or encouragement to the other so to conduct himself." *Orser v. George*, 252 Cal. App.

9   2d 660, 666 (1967).  Courts emphasize that the substantial assistance requirement is necessary to

10  protect defendants with only a "slight" or tenuous relationship to the alleged wrongdoing.  *Id.* at

11  669.  To ascertain whether a defendant has provided substantial assistance, courts look at "the

12  nature of the act encouraged, the amount of assistance given by the defendant, his presence or

13  absence at the time of the tort, his relation to the other and his state of mind."  *Id.*

14          Plaintiff alleges that, by simply allowing MSSPs to advertise on its website, Google aided

15  and abetted the MSSP violation of Section 17200, violation of the CFAA, and trespass to chattels.

16  ¶¶ 84-87.   Plaintiff has failed, as an initial matter, to allege that Google provided "substantial

17  assistance," as required to state a claim for aiding and abetting.  Moreover, Plaintiff's sole

18  allegation against Google is that Google provided the MSSPs the opportunity to advertise. Such a

19  tenuous relationship with the alleged wrongdoing cannot amount to the substantial assistance

20  required to hold Google liable for the MSSP's activities.  *Id.* at 669 ("The assistance of or

21  participation by the defendant may be so slight that he is not liable for the act of the other.").[12]

22  **V.     CONCLUSION**

23          This Court granted Plaintiff leave to amend to allege facts sufficient to establish that

24  Google was an information content provider under Section 230, but Plaintiff's Amended

---

25  [12] In any event, as discussed previously, the MSSPs have not violated the CFAA as a matter of
26  law. *See* Section IV.C.1.a.  Even if the transmission of content to the Plaintiff's cell phone could
    constitute trespass of a chattel, the harm Plaintiff alleges—charges for mobile content services
27  she did not subscribe to—are unrelated to any "trespass" of her cell phone, and the relationship
    between the MSSP advertisements and the MSSP's "trespass" is so tenuous as to be
28  unforeseeable.  *See Orser*, 252 Cal. 2d at 669.

GOOGLE INC.'S MOTION TO DISMISS AMENDED
COMPLAINT
C 08-02738 (JF)

1    Complaint has failed to allege facts that "make it very clear that the website [Google] directly

2    participates in developing the illegality' at issue."  Docket 48 at 6 (citations omitted).  Instead,

3    Plaintiff's Amended Complaint sets forth a series of factually unsupported conclusions alleging

4    that Google controlled its AdWords customers' fraudulent advertisements and rendered them

5    powerless to resist the temptation to list mobile content as "free" when it was not.  Because the

6    facts alleged do not support these facially outlandish conclusions, the Amended Complaint does

7    not accomplish the objective Plaintiff was assigned.  Plaintiff has not alleged what the Ninth

8    Circuit says it must to avoid application of the CDA, Google is not an information content

9    provider; it is merely the publisher, and the CDA immunizes it from liability for the purportedly

10   false statements of MSSPs.  Google respectfully asks this Court to dismiss the Amended

11   Complaint without leave to amend on this basis.  In the alternative, Google respectfully asks this

12   Court to dismiss the Amended Complaint without leave to amend on the grounds that, even

13   absent Section 230 immunity, she has failed to state a claim.

14

15   Dated: February 5, 2009                    KAREN G. JOHNSON-MCKEWAN
                                                NANCY E. HARRIS
16                                              NIKKA N. RAPKIN
                                                Orrick, Herrington & Sutcliffe LLP

17

18                                              _____
                                                        /s/ *Karen G. Johnson-McKewan*
19                                                  KAREN G. JOHNSON-MCKEWAN
                                                        Attorneys for Defendant
20                                                          GOOGLE INC.

21

22

23

24

25

26

27

28

20