1    KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
2    NANCY E. HARRIS (SBN 197042)
nharris@orrick.com
3    NIKKA N. RAPKIN (SBN 244207)
nrapkin@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
5    405 Howard Street
San Francisco, CA 94105-2669
6    Telephone: 415-773-5700
Facsimile: 415-773-5759
7

Attorneys for Defendant
8    GOOGLE INC.

9

10               UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13

| | |
|---|---|
| JENNA GODDARD, on her own behalf and on behalf of all others similarly situated, | Case No. C 08-02738 (JF) |
| Plaintiff, | **GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| v. | Date: April 3, 2009<br>Time: 9:00 a.m. |
| GOOGLE, INC., a Delaware corporation, | Judge: The Honorable Jeremy Fogel |
| Defendant. | Date Action Filed: May 30, 2008<br>No Trial Date Set |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    Google's Keyword Tool And Search Suggestions Are Neutral Tools That
         Do Not Render It An Information Content Provider ...........................................2

         1.    Google's Alleged Keyword Tool Is A Neutral Tool ...............................2

         2.    Google's Search Engine And Alleged Suggestions To Users
             Are Also Neutral Tools.........................................................................5

         3.    Plaintiff's Argument Rests On A Misstatement Of The Law Under
             Section 230........................................................................................6

    B.    Whether Or Not Section 230 Applies, Plaintiff Does Not State Viable
         Claims ............................................................................................................9

         1.    Plaintiff Fails To State A Claim Under Section 17200 ..........................9

             a.    Plaintiff Fails To State A Claim For An Underlying
                 Violation Of The Computer Fraud And Abuse Act By The
                 MSSPs....................................................................................9

             b.    Plaintiff Fails To State A Claim That Google Knowingly
                 Accepted Criminally Derived Funds .........................................10

         2.    Plaintiff Fails To State A Claim For Breach Of Contract ......................11

         3.    Plaintiff's Negligence Claim Is Barred By California Law....................12

         4.    Plaintiff States No Claim For Aiding And Abetting ..............................13

III.  CONCLUSION ..................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

*800-JR Cigar, Inc.* v. *GoTo.com, Inc.,*
    437 F. Supp. 2d 273 (D.N.J. 2006) ...................................................................8

5

*Am. Family Mut. Ins. Co.* v. *Rickman,*
    554 F. Supp. 2d 766 (N.D. Ohio 2008) ..........................................................10

6

*Balistreri* v. *Pacifica Police Dep't,*
    901 F.3d 696 (9th Cir. 1988) .......................................................................8, 11

7

8

*Ben Ezra, Weinstein, & Co.* v. *America Online, Inc.,*
    206 F.3d 980 (10th Cir. 2000) ........................................................................7

9

*Carafano* v. *Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ......................................................................3, 4

10

11

*In re Doubleclick Privacy Litig.,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..............................................................9

12

*Fair Housing Council of San Fernando Valley* v. *Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) .................................................................*passim*

13

14

*In re First Alliance Mortgage Co.* v. *Lehman Commercial Paper, Inc.,*
    471 F.3d 977 (9th Cir. 2006) ........................................................................14

15

*Green* v. *America Online, Inc.,*
    318 F.3d 465 (3d Cir. 2003) ...................................................................7, 9, 11

16

17

*Highfields Capital Mgmt., L.P.* v. *Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2005)........................................................11, 12

18

*Hy Cite Corp.* v. *Badbusinessbureau.com,*
    418 F. Supp. 2d 1142 (D. Ariz. 2005)..............................................................8

19

20

*Shamrock Foods Co.* v. *Gast,*
    535 F. Supp. 2d 962 (D. Ariz. 2008)...........................................................9, 10

21

*United States v. Rutgard,*
    116 F.3d 1270 (9th Cir. 1997) .......................................................................10

22

23

*United States* v. *Stein,*
    37 F.3d 1407 (9th Cir. 1994) .........................................................................10

24

*United States* v. *Yagman,*
    502 F. Supp. 2d 1084 (C.D. Cal. 2007)...........................................................10

25

26

*Universal Commc'n Sys., Inc.* v. *Zwebner,*
    478 F.3d 413 (1st Cir. 2007)............................................................................7

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Zeran* v. *America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..................................................................................7

**STATE CASES**

*Casey* v. *U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (Cal. App. 2005)...........................................................14

*FNS Mortgage Serv. Corp.* v. *Pacific Gen. Group, Inc.*,
    24 Cal. App. 4th 1564 (1994) ...........................................................................12, 13

*GW Equity, LLC* v. *Xcentric Ventures, LLC*,
    No. 07-cv-976-1, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009) ................................7

*Hanberry* v. *Hearst Corp.*,
    276 Cal. App. 2d 680 (1969) .............................................................................12, 13

*Mazur v. eBay Inc.*,
    2008 WL 618988..............................................................................................11, 12

*Mukthar* v. *Latin Am. Sec. Serv.*,
    139 Cal. App. 4th 284 (Cal. App. 2006) .................................................................13

*Paz* v. *State*,
    22 Cal. 4th 550 (2000)....................................................................................12, 13

*Souza* v. *Westlands Water Dist.*,
    135 Cal. App. 4th 879 (2006) .........................................................................11, 12

**FEDERAL STATUTES**

18 U.S.C. § 1957(a) ...................................................................................................10

Fed. R. Civ. P. 12(b)(6)...............................................................................................11

## I.      INTRODUCTION

Plaintiff's opposition – like her amended complaint – ignores the express instruction of this Court's December Order:  to state a claim that Google is an information content provider, Plaintiff must make it "*very* clear that [Google] *directly participates in developing the illegality* at issue."  Docket No. 48 at 6 (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008)).

In a tacit acknowledgment that she is unable to satisfy the Court's instruction, Plaintiff relies on a misstatement of Ninth Circuit law, contending that "encouragement, prompting, and solicitation may be sufficient" to sustain a claim under Section 230.  Docket No. 53 at 4 n.3. Plaintiff's position has no basis in law; rather, recognizing that Congress intended Section 230 to protect internet services from costly and protracted legal battles as well as ultimate liability, the Ninth Circuit has established clearly and repeatedly that nothing short of *material contribution* to illegality renders a website an information content provider under Section 230.

Moreover, Plaintiff rests this "encouragement, prompting and solicitation" argument upon the notion that the inclusion of the word "free" in a keyword tool, and in search query suggestions associated with "ringtones," facilitates the illegality alleged here.  But, it is not Google who chooses to employ the word "free" in advertisements where the offering is not actually free.  It is the MSSPs who make that word choice; under Section 230, as a matter of law, Google is immune from liability for its users' volitional selection of content.

Apparently aware that the law does not support her claims, Plaintiff resorts in her opposition to unsubstantiated rhetoric in lieu of factual allegation.  Rather than pleading *facts* showing Google contributed "materially to the alleged illegality" as the Ninth Circuit requires, Plaintiff relies on mere "labels and conclusions," and thus fails to meet the U.S. Supreme Court's standards that requires her to allege more than mere speculation to overcome a motion to dismiss. In particular, Plaintiff argues that she alleged "[s]everal actions and characteristics" she claims take Google outside the broad immunities provided by the Communications Decency Act of 1996, including: (1) that Google's keyword tool is "fraudulently suggestive," (2) that Google engages in "manipulation of search results;" and (3) that Google "created the functions that allow

1

its advertising partners to defraud consumers." Docket No. 53 at 4, 7. These are no more than

mere conclusions; in the absence of facts alleged to corroborate them (and there are no

corroborating factual allegations in the amended complaint), they are meaningless, and irrelevant

to disposition of Google's motion. Likewise, Plaintiff's suggestion that she can sidestep Section

230's protection of neutral tools through the creation of a "factual dispute" regarding the meaning

of "neutrality" is an a empty diversion – Plaintiff has alleged no facts that even suggest that

Google took any action that contributed to the alleged illegality.

Because Plaintiff's amended complaint suffers from "an absence of sufficient facts alleged

under a cognizable legal theory," it must be dismissed.

## II.    ARGUMENT

### A.    Google's Keyword Tool And Search Suggestions Are Neutral Tools That Do Not Render It An Information Content Provider.

#### 1.    Google's Alleged Keyword Tool Is A Neutral Tool.

Relieved of its rhetoric, the crux of Plaintiff's opposition is that Google should be denied

Section 230 protection because Google allegedly employs various tools to "suggest" keywords to

its advertisers, including the keyword "free."[1] Docket No. 53 at 7. Plaintiff argues that this

renders Google an information content provider since "[i]nstead of offering a blank slate for

advertisers to develop their own ads, Google offers its assistance with the inclusion of suggestion

tools." *Id.* Yet Plaintiff concedes that Google's Keyword Tool is usually "innocuous" and that

its suggestions "are typically utilized only at the discretion of the advertiser." Docket No. 49 at 5-

6. Plaintiff concedes even further that "providing *neutral* tools to carry out what may be unlawful

or illicit does not amount to 'development' for purposes of the immunity exception." Docket No.

53 at 3 (quoting *Roommates*, 521 F.3d at 1169).

Plaintiff nevertheless argues (without basis) that an exception *should* be made in the case

of the mobile content industry. In particular, she claims that because one of the alleged keyword

suggestions is the word "free" and because Google knows "of the mobile content industry's

---

[1] Plaintiff also alleges that Google's keyword tool is "fraudulently suggestive," that Google engages in "manipulation of search results," and that Google "created the functions that allow its advertising partners to defraud consumers," Docket No. 53 at 7, 1, but these are pure conclusions and Plaintiff alleges no facts in relation to them.

OHS West: 260627583.1

1   unauthorized charge problems, its suggestion of terms [such as "free"] known to result in

2   consumer fraud is neither innocuous nor neutral."  Docket No. 53 at 7.  This not only makes no

3   sense, as even Plaintiff acknowledges that it is ultimately up to the advertisers to determine which

4   keywords they use, but it is also precisely the argument the Ninth Circuit rejected in *Carafano v.*

5   *Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003).

6        The defendant website in *Carafano* provided its users with a "detailed questionnaire" that

7   included multiple choice questions wherein "members select answers . . . from menus providing

8   between four and nineteen options," some of which are "sexually suggestive."  *Id.* at 1121.

9   Despite including sexually suggestive phrases that would facilitate development of libelous

10  profiles, the menus of pre-prepared responses were neutral tools because "the selection of the

11  content was left exclusively to the user."  *Id.* at 1124-25  (noting that the website's 62 questions

12  and menu of "pre-prepared responses" was "a distinction of degree rather than of kind,"

13  insufficient to render the website an information content provider under Section 230).  Although

14  it was "doubtless" that "the questionnaire facilitated the expression of information," *id.*, it

15  provided only "a framework that could be utilized for proper or improper purposes," and did not

16  render the website an information content provider, *Roommates*, 521 F.3d at 1172.  The decision

17  about how to utilize that framework was in the hands of the user.

18        Like the pre-prepared menus in *Carafano*, Google's Keyword Tool is a neutral tool.  Even

19  accepting Plaintiff's allegations as true, Google's Keyword Tool does nothing more than provide

20  options that advertisers may adopt or reject at their discretion.  *See* Docket No. 49 at 6 (admitting

21  that advertisers' use of keywords is discretionary).  Plaintiff's claim that Google "knows of the

22  mobile content industry's unauthorized charge problems" has no bearing on the neutrality of the

23  Keyword Tool; as this Court held in its December Order, "providing third parties with neutral

24  tools to create web content is considered to be squarely within the protections of § 230,"

25  *regardless of whether "a service provider knows that third parties are using such tools to create*

26  *illegal content."*  Docket No. 48 at 5.

27        Google's Keyword Tool, even as described in the Complaint, stand in sharp relief to the

28  "affirmative acts" the Ninth Circuit found were possibly unlawful in *Roommates*.  *Roommates*,

3

OHS West:  260627583.1

1   521 F.3d at 1169 n.24 (interpreting Section 230 as "[r]equiring website owners to refrain from

2   taking affirmative acts that are unlawful").  As the court emphasized, the *Roommates* website not

3   only "facilitated" the creation of content, it created questions that might be "unlawful when posed

4   face-to-face or by telephone" and "forc[ed] subscribers to answer them as a condition of using its

5   services." *Id.* at 1164.  Because the website *required* its users to provide certain content as "a

6   condition of doing business," it "materially contribut[ed] to its alleged unlawfulness" and

7   therefore fell outside the scope of the immunity created by Section 230.  *Id.* at 1166-8.

8        Nowhere in her amended complaint does Plaintiff allege any facts corroborating her

9   conclusion that Google *compelled* its advertisers to "engage in illegal conduct."  Docket No. 49 at

10  5.  Plaintiff does not allege that Google requires advertisers to use the keyword "free;" rather,

11  Plaintiff argues that because mobile content advertisers who do not use the term "free" "suffer

12  drastically reduced revenue" (by possibly foregoing the opportunity for their ads to show up in

13  response to searches for "free ringtones"), offering the option of using the keyword "free" is the

14  same as presenting them with no choice at all.  Docket No. 53 at 8.  But, under the facts Plaintiff

15  alleges, Google's advertisers *do* have a choice and can choose – as do advertisers everywhere and

16  in every context – to refrain from falsely advertising their product as free.[2]  Google is completely

17  agnostic about the words chosen by advertisers.  Google no more encourages or compels the

18  selection of the word "free" than it does "yellow" or "blue" or "purple."  "Free" becomes

19  deceptive only when selected by an advertiser when that adjective does not accurately describe

20  the advertiser's service or product.

21       Google's alleged keyword "suggestions" are thus not comparable to the questions on the

22  *Roommates* website; while the *Roommates* website required its users to answer certain questions

23  using the site that were alleged to be unlawful, Plaintiff concedes that Google MSSP advertisers

24  have discretion whether to use "free" or any other keyword.  *See Roommates*, 521 F.3d at 1166;

25  Docket No. 49 at 6.  Plaintiff's argument that MSSP advertisers have an *incentive* to use the

---

[2] This analysis applies equally to both the Keyword Tool Plaintiff describes as "algorithms, known as 'suggestion tools'" and the alleged in-person meetings to provide advice on "proposing ad budgets, selecting keywords and designing ad copy," though Plaintiff alleges no facts that would suggest that the alleged in-person meetings have involved MSSP customers, suggestion of the keyword "free," or any allegedly unlawful activity.  Docket No. 49 at 5.

1    keyword "free," since many Google users search for "free ringtones," is a far cry from an

2    allegation that Google *requires* its advertisers to adopt any particular content – let alone illegal

3    content. Accordingly, Plaintiff has not alleged facts establishing that Google could be an

4    information content provider under Section 230.

5    **2.    Google's Search Engine And Alleged Suggestions to Users Are Also Neutral Tools.**

6

7    Plaintiff also claims that Google "manipulates" its search results by providing "free" as a

8    "suggestion" to *both* the users of its search engine and its advertisers; yet, once more, the facts

9    Plaintiff alleges do not corroborate her speculation and hyperbole. *See* Docket No. 53 at 8.

10   Plaintiff alleges that "when the search term 'ringtone' is entered on Google.com, Google

11   automatically suggests in its drop down menu numerous variations of the term 'ringtone,' several

12   of which contain the word 'free.'" Docket No. 53 at 9. Plaintiff fails to explain how suggesting

13   queries to users of a search engine – which they can accept or reject at their discretion – could be

14   unlawful or how it could render Google an information content provider under Section 230.

15   Whether Google provided query suggestions to search engine users has no bearing on Plaintiff's

16   claim that Google was an information content provider *of the MSSP Adwords advertisements* at

17   issue. Moreover, even if this alleged suggestion function did, in fact, make users more likely to

18   search for "free ringtones" instead of just "ringtones," it is impossible to conceive how this could

19   constitute "a search function that is *designed* to achieve illegal ends." *Id.* (emphasis added).

20   The facts of *Roommates*, on which Plaintiff relies for her illegal search function theory,

21   underscore the contrast between Google's lawful use of neutral tools and the allegedly illegal

22   functions on the *Roommates* website. The *Roommates* website required its users to specify their

23   gender, sexual orientation, and whether they had children, and gave users the option to express

24   preferences for roommates with those characteristics. *Roommates*, 521 F.3d at 1167. The

25   website then "designed its search system so it would steer users based on the preferences and

26   personal characteristics that Roommate itself forces subscribers to disclose." *Id.* at 1185. The

27   *Roommates* search function actively "limit[ed] who has access to housing" based on gender,

28   sexual orientation, and familial status. *Id.* at 1167. What caused the *Roommates* search function

5

OHS West: 260627583.1

to fall outside of Section 230 was Plaintiff's allegation that the mere gathering of this information was unlawful.

In contrast, Plaintiff has not alleged anything illegal about Google's search feature.  Even taking Plaintiff's allegations as true, there is nothing wrongful in suggesting search queries to users, even if one of those queries is "free."  Offering query suggestions to search engine users is, once again, a neutral tool that cannot render Google an information content provider at all, much less of the allegedly fraudulent MSSP advertisements.  Plaintiff therefore fails to allege any facts that – if proven – would render Google's alleged suggestion tools non-neutral such that Google would be an information content provider under the CDA.  Accordingly, Plaintiff's amended complaint must be dismissed.

### 3.    Plaintiff's Argument Rests On A Misstatement of the Law Under Section 230.

Plaintiff does not allege any facts supporting her claim that Google encourages, prompts, or solicits unlawful content.  Regardless, the Ninth Circuit is clear that a website must do considerably more to qualify as an information content provider, and Plaintiff's averments that "encouragement, prompting, and solicitation may be sufficient" are clearly erroneous and contrary to established law.  Docket No. 53 at 4 n.3.  In the same vein, Plaintiff's argument that websites that do more than "passively transmit information . . . become developers, at least in part, of that information" is a plain misreading of precedent.  Docket No. 53 at 4.  Rather, as the Ninth Circuit warned, forcing websites to fight off "claims that they *promoted or encouraged* – or at least tacitly assented to – the illegality of third parties" would "cut the heart out of section 230."  *Roommates*, 521 F.3d at 1174-75 (emphasis added).  In fact, Plaintiff's definition of "develop" is precisely the definition the Ninth Circuit rejected in *Roommates.  Id.* at 1167-68 (defining "the term 'development'").

Websites are not liable as information content providers unless they take a "direct and palpable" role in developing the unlawful content by "materially contributing to [the content's] alleged unlawfulness." *Roommates*, 521 F.3d at 1168-9.  Despite Plaintiff's allegations otherwise, the Ninth Circuit has held, consistently, that "development" refers "not merely to

6

OHS West: 260627583.1

1  augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Id.*

2  at 1167-68.  To materially contribute, the website must make providing illegal content "a

3  condition of doing business," or actively and substantively contribute in an affirmatively unlawful

4  way, for example by "removing the word 'not' from a user's message reading '[Name] did *not*

5  steal the artwork' in order to transform an innocent message into a libelous one." *Roommates*,

6  521 F.3d at 1166, 1169 (emphasis in original).

7       Recognizing that "there will always be close cases where a clever lawyer could argue that

8  *something* the website operator did encouraged the illegality," the *Roommates* court observed that

9  "Roommate, of course, *does much more than* encourage or solicit; it *forces* users to answer

10  certain questions and thereby provide information that other clients can use to discriminate

11  unlawfully." *Id.* at 1174, 1166 n.19 (emphasis added).  As this Court held in its December

12  opinion, *Roommates* "emphasized repeatedly that the *Roommates* website lost immunity only by

13  *forcing* its users to provide the allegedly discriminatory information as a condition of access."

14  Docket No. 48 at 5 (emphasis in original).

15       Although Plaintiff calls upon a litany of cases that supposedly support her position, each

16  of those cases – several of which were decided on motions to dismiss or the procedural equivalent

17  – conclude that the Internet service at issue was *not* an information content provider, even though

18  they facilitated, in some manner, the posting of allegedly unlawful content.  Docket No. 53 at 4

19  n.3 (citing *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) (website

20  immune under Section 230 for illegal postings, despite having notice of the postings' potentially

21  unlawful nature); *Green v. America Online, Inc.*, 318 F.3d 465 (3d Cir. 2003) (affirming

22  dismissal under Section 230 for failure to protect user against defamation and computer virus

23  transmitted by another user despite user agreement); *Ben Ezra, Weinstein, & Co. v. America

24  Online, Inc.*, 206 F.3d 980, 985 (10th Cir. 2000) (defendant did not work sufficiently closely with

25  the provider of allegedly inaccurate stock information to be information content provider); *Zeran

26  v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) (granting judgment on the pleadings for

27  website's alleged failure to remove defamatory postings); *GW Equity, LLC v. Xcentric Ventures,

28  LLC*, No. 07-cv-976-O, 2009 WL 62173, *5 (N.D. Tex. Jan. 9, 2009) (provision of choice of

categories from which a user must make a selection insufficient to render website an information content provider).

The sole exceptions that do not find section 230 immunity are *Hy Cite Corporation v. Badbusinessbureau.com*, 418 F. Supp. 2d 1142 (D. Ariz. 2005), and *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006), both of which are inapposite.

*Hy Cite* addressed the "Rip Off Report," a website that solicited and posted consumers' negative business reviews and would remove the comments only if the target businesses paid a fee.  The court concluded the website was not immune under Section 230 because the website operator actually provided some of the allegedly "wrongful content," including "editorial comments created by Defendants," as well as "titles to Rip-off Reports, which Defendants allegedly provide."  *Hy Cite*, 418 F. Supp. 2d at 1149.  The plaintiffs further alleged "that Defendants 'produce original content contained in the Rip-off Reports.'"  *Id.*  The website was, therefore, an information content provider with respect to the information it drafted and posted to its website.  Goddard, by contrast, has not alleged that Google drafted or otherwise created *any* content.

In *GoTo.com*, the Court found that the website was not an "interactive computer service," as an initial matter, because it "does not provide access to the Internet like service providers such as AOL."  *GoTo.com, Inc.*, 437 F. Supp. 2d at 295.  The court further concluded that the website would be liable under trademark law for reasons having nothing to do with content posted to its website.  *Id.* at 278.  Neither *Hy Cite* nor *GoTo.com* stand for the proposition that prompting and neutral word suggestions would be sufficient to render a website an information content provider.

In any event, because Plaintiff has not alleged any facts showing that Google encouraged, prompted, or solicited *unlawful* content, Plaintiff has not stated a claim that Google is an information content provider.  *Roommates*, 521 F.3d at 1168.  Because Plaintiff's amended complaint suffers from "an absence of sufficient facts alleged under a cognizable legal theory," it must be dismissed.[3]  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[3] Plaintiff also suggests she should be permitted a further amendment based on facts showing Google's alleged "*willingness* to dictate actual ad content" (emphasis added) and a purported agreement with the Florida Attorney General.  These facts appear nowhere in the Amended

**B.      Whether or Not Section 230 Applies, Plaintiff Does Not State Viable Claims.**

**1.      Plaintiff Fails to State a Claim Under Section 17200.**

Plaintiff's opposition does not resolve the deficiencies in her claim that Google engaged in unfair competition through a predicate violation of the federal money laundering statute, 18 U.S.C. § 1957(a).  In particular, she has not alleged (and cannot) that Google's acceptance of payment for the allegedly fraudulent MSSP advertisements violated the federal money laundering statute, because the MSSPs did not derive those funds from a "specified unlawful activity" and because, even if they had, Google could not possibly have had the requisite knowledge that the funds were unlawfully obtained as a matter of law.

**a.      Plaintiff Fails To State A Claim for an Underlying Violation of the Computer Fraud and Abuse Act by the MSSPs.**

The Computer Fraud and Abuse Act ("CFAA") is an anti-hacking statute that does not contemplate Plaintiff's attenuated claim regarding the MSSPs alleged transmission of mobile content to cell phones.  *See e.g.*, *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964 (D. Ariz. 2008); *In re Doubleclick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001).  To state a claim that the allegedly fraudulent MSSPs violated the CFAA, Plaintiff must allege facts establishing that the MSSPs "accesse[d] a protected computer without authorization" and furthered a fraud or caused damage by way of that access.  *Shamrock Foods Co.*, 535 F. Supp. 2d at 965-66.  Plaintiff cannot do so here.

Plaintiff is unable to establish that the allegedly fraudulent MSSPs accessed her cell phone at all.  Although Plaintiff argues that "mobile content providers accessed her . . . cellular phone[] by sending her unauthorized mobile content" (Docket No. 53 at 11), merely sending such information cannot constitute "access" for purposes of the CFAA without the absurd result that *any* transmission of mobile content, text messages, emails and so forth would constitute access to

_____

Complaint, and are, in any event, irrelevant to the CDA analysis.  Docket No. 53 at n.1.  Plaintiff proposes to use these "new" facts in support of an argument that Google's notices of intent to enforce its content policy with respect to MSSPs is evidence that it controls the content of ads appearing on its site, and thereby excepts it from section 230 immunity.  Plaintiff thus would hold Google "liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content."  *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003).  Section 230 forecloses exactly that liability, however.  *Id.*

9

OHS West: 260627583.1

a cell phone or computer for purposes of the CFAA.  Moreover, Plaintiff's Opposition indicates that it is *not the MSSPs* that accessed Plaintiff's cell phone, but either (1) the aggregators who serve as middlemen actually responsible for transmission of the mobile content, or (2) the mobile content itself.[4]   Regardless of who, if anyone, accessed Plaintiff's cell phone, it very clearly is not the MSSPs, and the MSSPs therefore could not have violated the CFAA.

Plaintiff's opposition also fails to resolve the deficiencies in her claim that the MSSPs caused damage "by means of" accessing her cell phone as required under the CFAA.  *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 770-71 (N.D. Ohio 2008).  Although Plaintiff argues that the CFAA should be treated as mail fraud, such that the access need only be "incident" to the scheme (Docket No. 53 at 13), this does not square with the legislative history or courts' interpretation of the CFAA.  Unlike mail fraud, the CFAA was designed precisely to target a specific offense – computer hacking – and "the legislative history supports a narrow view of the CFAA." *Shamrock Foods Co.*, 535 F. Supp. 2d at 965.

### b.   Plaintiff Fails to State a Claim That Google Knowingly Accepted Criminally Derived Funds.

As Plaintiff concedes, Google's liability under Plaintiff's convoluted Section 17200 theory depends on Google knowing that the MSSPs' payments were themselves criminally derived.  Docket No. 53 at 14; 18 U.S.C. § 1957(a); *see also United States v. Yagman*, 502 F. Supp. 2d 1084 (C.D. Cal. 2007); *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994), *disapproved on other grounds by Roy v. Gomez,* 81 F.3d 863, 866 & n.3 (9th Cir. 1996) (en banc).  The threshold for funds to be "criminally derived" is high:  the funds must be traceable directly to an underlying crime and cannot have been commingled with lawfully obtained funds. *United States v. Rutgard*, 116 F.3d 1270, 1292-3 (9th Cir. 1997) (noting that Congress enacted Section 1957 as a tool in the war against drugs and warning against an expansive application).

Plaintiff argues Google had the requisite knowledge because "Google knew that fraud was

---

[4] "The design of the infrastructure for mobile content also requires mobile content providers' *transmissions to aggregators (the middlemen between mobile content providers and cellular carriers)* to include both *the mobile content which accesses consumers' cellular phones* and the instructions necessary to charge consumers for the mobile content."  Docket No. 53 at 13 (emphasis added).

10

1   endemic in the mobile content industry." Docket No. 53 at 15. Even if that were true, however,

2   it is insufficient to establish that Google had any knowledge or belief that the payments it

3   received from its MSSP advertisers were "criminally derived." Although all facts should be

4   interpreted in the light most favorable to Plaintiff, dismissal under Fed. R. Civ. P. 12(b)(6) "can

5   be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

6   cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

7   Dismissal is appropriate where, as here, the "plaintiff fails to proffer 'enough facts to state a claim

8   to relief that is plausible on its face.'" *Mazur v. eBay Inc.*, 2008 WL 618988 at *3, No. C-07-

9   03697 MHP (N.D. Cal. Mar. 4, 2008). In this instance, Plaintiff cannot allege any remotely

10  plausible set of facts that would establish that Google could possibly have known that all of the

11  monies it received from its MSSP customers were criminally derived, as Plaintiff claims.

12                    **2.    Plaintiff Fails to State a Claim for Breach of Contract.**

13          Plaintiff's claim that she is an intended beneficiary of Google's Content Policy is

14  inconsistent with the allegations of the amended complaint, the opposition, and abundant case law

15  establishing that the incidental beneficiaries of user agreements are not intended beneficiaries for

16  contract purposes.[5] *See, e.g.*, *Green*, 318 F.3d at 472 (AOL user agreement); *Highfields Capital*

17  *Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005) (Yahoo! service agreement). It is

18  not enough to benefit from an agreement; under California law, in order to be an intended

19  beneficiary, there must be an actual expression of intent by an agreement's promisee to benefit

20  the third party. *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 893 (2006).

21          Google cannot be liable for a promise it did not make. *Souza*, 135 Cal. App. 4th at 893.

22  Because Plaintiff cannot point to anything in the Content Policy and Advertising Terms

23  constituting a promise by Google that it would ensure users that its advertisers were in

24  compliance with the terms, Plaintiff takes the untenable position that Google is liable as a

25  promisor of the *entire* Content Policy and Advertising Terms because Google is a promisor of

---

26  [5] The amended complaint alleges Google created its Content Policy to benefit itself (i.e., to
27  "create the appearance that its search engine is protecting users' interests" and "hopes to lull
    governmental agencies into falsely believing that Google is acting responsibly"). Docket No. 49
28  ¶¶ 41-42.

OHS West: 260627583.1

1   *certain provisions* of the agreement.  Docket No. 53 at 18-9.  Not only is this argument

2   incompatible with basic contract principles, it runs directly counter to *Souza*, 135 Cal. App. 4th

3   879, in which the court found, in an analogous service agreement, that the water district was *not* a

4   promisor of the terms imposing certain requirements on the water district's customers.  *Id.* at 893.

5   As promisee, Google cannot be liable for the MSSPs alleged promise to provide certain

6   information on their landing pages.  *See id.*  Plaintiff does not ever discuss *Souza*, let alone

7   distinguish it.

8                   **3.      Plaintiff's Negligence Claim is Barred by California Law.**

9          Although the existence of a duty is the *sine qua non* of any negligence claim, Plaintiff

10   provides no authority for the proposition that Google owed Plaintiff any duty.  Instead, Plaintiff

11   relies on *Mazur v. eBay, Inc*., 2008 WL 618988, an affirmative misrepresentation case that sheds

12   no light on Plaintiff's negligence claim here,[6] and a series of cases that hold an entity can be

13   liable for assuming a duty where the entity provides a "seal of approval" and the plaintiff is then

14   injured after *actually relying* on that endorsement.  *See, e.g.*, *Hanberry v. Hearst Corp.*, 276 Cal.

15   App. 2d 680, 684 (1969); *FNS Mortgage Serv. Corp. v. Pacific Gen. Group, Inc.*, 24 Cal. App.

16   4th 1564, 1567-68 (1994).

17          Plaintiff bypasses her failure to allege a duty, arguing now that her claim is for negligent

18   undertaking for Google's "failure to enforce the terms of the Content Policy."  This theory runs

19   contrary to California law.  As a threshold matter, Plaintiff has not alleged that Google undertook

20   to remove non-compliant MSSP websites or that it endorsed any MSSP website. Moreover, the

21   California Supreme Court in *Paz v. State of California*, 22 Cal. 4th 550, 560 (2000), establishes

22   that Google cannot be liable for its allegedly negligent failure to enforce its Content Policy unless

23   either (1) the Content Policy actually increased Plaintiff's risk of injury; or (2) Plaintiff relied on

24   the Content Policy to her detriment.  *Id.* at 560.  Plaintiff has alleged neither.

---

25

26   [6] Plaintiff argues that the *Mazur* court allowed a claim for negligence "on virtually the same set of
    facts alleged by Goddard." Docket No. 53 at 19.  Not so.  Rather, the claims in *Mazur* alleged
27   eBay made affirmative statements to the plaintiff that its live auctions were "safe," *Mazur*, 2008
    WL 618988, *10.  Plaintiff here has made no such claim and does not allege that Google ever
28   made direct promises to her regarding the safety of MSSPs.

OHS West: 260627583.1

1      Perhaps recognizing that her attempt to distinguish *Paz* is unavailing, Plaintiff relegates

2    her discussion to a footnote.  Docket No. 53 at 21 n.18.  Plaintiff argues that "*Paz* only means that

3    the duty imposed by a defendant's undertaking does not include instantaneously eliminating any

4    preexisting risks of harm the moment the undertaking begins."  *Id.* at 21 n.18.  *Paz* holds no such

5    thing.  The *Paz* plaintiff alleged liability for defendants' failure to provide operational traffic

6    signals despite earlier promises.  *Paz*, 22 Cal. 4th at 555.  The court nevertheless found, because

7    defendants' conduct had not "increased the risk of physical harm to plaintiff beyond that which

8    allegedly [already] existed," defendants were not liable under a negligent undertaking theory.[7]  *Id.*

9    at 560.

10      Plaintiff also relies on a series of inapposite cases that hold that an advertiser or similar

11    service may be liable where customers rely on its direct representations that its advertisers are

12    safe.  *See Hanberry*, 276 Cal. App. 2d at 684 (Good Housekeeping's "seal of approval"); *FNS*

13    *Mortgage Service Corp.*, 24 Cal. App. 4th at 1567-68  (local building code official's reliance on

14    defendant's certification that plumbing products met uniform standards criteria).  Plaintiff,

15    however, does not allege either that Google made any direct representation, or that she relied on

16    anything Google said about MSSPs in making her decision to use Google's search engine or to

17    enter her telephone number on MSSP websites.  Because Plaintiff failed to allege that (1) the

18    Content Policy actually increased her risk of injury (which it obviously did not); or (2) that she

19    relied on the Content Policy to her detriment, she has not stated a claim for negligence.  *See Paz*,

20    22 Cal. 4th at 560.

21                    **4.      Plaintiff States No Claim for Aiding and Abetting.**

22      Plaintiff provides no authority to support her assertion that providing advertising services

23    is sufficient to constitute "substantial assistance" for the purposes of pleading an aiding and

24    abetting claim.  Indeed, the cases upon which she relies underscore that the threshold for

25    "substantial assistance" is considerably higher than the mere provision of advertising services.

26    _____

27    [7] Plaintiff's reliance on *Mukthar v. Latin American Security Service*, 139 Cal. App. 4th 284
(2006), is similarly misplaced.  *Mukthar* holds that a security service may be negligent where it
agrees to provide a security guard and then fails to do so.  Plaintiff cannot point to any indication

28    that Google promised to remove or take any action in response to noncompliant ads.

OHS West: 260627583.1

1   *See In re First Alliance Mortgage Co. v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 995 (9th

2   Cir. 2006) (affirming jury verdict of aiding and abetting because defendant satisfied "all of First

3   Alliance's financing needs," "kept First Alliance in business, knowing that its financial

4   difficulties stemmed directly and indirectly from litigation over its dubious lending practices,"

5   and admitted that it provided "'significant assistance' to First Alliance's *business*"); *Casey v. U.S.*

6   *Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1142 (2005) (noting bank could be liable for aiding

7   and abetting money laundering by allowing opening of accounts with invalid tax identification

8   numbers, removal of hundreds of thousands of dollars of cash in unmarked duffel bags, payment

9   of obviously forged negotiable instruments, etc.).

10          Nor is Plaintiff's allegation that Google's AdWords services is "an *essential part* of the

11   [alleged] scheme, because [the mobile content providers] could not collect unwitting users'

12   cellular phone numbers without Google driving Internet traffic towards their landing pages,"

13   sufficient to plead an aiding and abetting claim.  Docket No. 53 at 22 (emphasis in original).

14   Plaintiff's reasoning would lead to unbounded liability for aiding and abetting claims, and there is

15   no support for such an expansive reading of the law.

16   **III.    CONCLUSION**

17          For the reasons set forth here and in Google's opening brief, Google respectfully requests

18   that the Court grant the Motion to Dismiss without leave to amend.

19   Dated: March 20, 2009                    KAREN G. JOHNSON-MCKEWAN
                                               NANCY E. HARRIS
20                                             NIKKA N. RAPKIN
                                               Orrick, Herrington & Sutcliffe LLP
21

22

23                                             */s/ Karen G. Johnson-McKewan*
                                               Karen G. Johnson-McKewan
24                                             Attorneys for Defendant
                                               GOOGLE INC.
25

26

27

28

OHS West: 260627583.1