# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

ATTORNEYS AT LAW

2800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

WILLIAM H. MANNING
612-349-8461

August 25, 2008

Hon. Susan Illston
United States District Court
Northern District of California
Courtroom 10, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:   *Advanced Micro Devices, Inc., et al. v. Samsung Electronics Co., Ltd., et al.*
             Case No. CV-08-0986-SI

Dear Judge Illston:

The mediation with Judge Infante between the parties has concluded without agreement. Accordingly, AMD requests a case management conference to seek the Court's assistance with three issues requiring immediate resolution if the Court's deadlines are to be met:

    1) the single unresolved issue in the parties' stipulated protective order;

    2) production of Samsung documents, central to proving infringement, that Samsung has stated will not be produced; and

    3) identification of AMD documents responsive to the unfocused Samsung discovery requests.

All these issues can be resolved with a single solution: prompt identification of exemplar products for discovery and trial purposes. Although Samsung has acknowledged that identification of exemplars offers a path to resolution, it has steadfastly refused to act on this acknowledgement. Accordingly, AMD requests an in-person conference with the Court where these issues can be discussed and where AMD can share background information on the technology involved that will assist the Court in resolving these issues.

## I.   Protective Order

The lone remaining protective order issue is whether Samsung will produce documents it designates with the highest level of confidentiality at Heller Ehrman's office in San Francisco, or instead at the office of Robins, Kaplan, Miller & Ciresi in Minneapolis. Samsung has demanded that AMD's outside counsel and experts review these documents at the offices of Heller Ehrman.

ATLANTA      BOSTON      LOS ANGELES      MINNEAPOLIS      NAPLES      SAINT PAUL

This demand is unreasonable given the importance of the documents, the low risks inherent in producing such documents at the office of Robins, Kaplan, Miller & Ciresi, and the burden that conducting a review in this manner would impose on AMD.

According to Samsung's counsel, Samsung plans to use the most-confidential protective order designation for its layout database, which contains documents such as chip schematics and diagrams. These documents set out the physical structure of the Samsung accused products. They will be vital to proving infringement and will be numerous given the number of accused Samsung products.

Because Samsung represents that the database holds the information in a format that can be used in a fabrication facility to make the chips, Samsung is afraid that someone could take the files from counsel's office and use them to produce copies of Samsung's devices.

Such fears are unfounded. In the last five years, Robins, Kaplan, Miller & Ciresi has safely hosted without incident some of the most sensitive information in the computer industry, including RTL code for Intel's Pentium line of microprocessors and the source code for Microsoft's Windows operating system. Indeed, a Robins, Kaplan, Miller & Ciresi attorney recently personally returned RTL to Intel, maintaining personal custody of that code on the flight from Minneapolis to San Francisco. This was done at Intel's request after Robins lawyers initiated communication with Intel and at Robins' expense. Robins is familiar with maintaining the highest security levels for this sensitive information, including utilizing non-networked computers and employing double- and triple-locked doors with keyed access limited to just a few attorneys and experts.

In contrast, the burdens that would result from requiring AMD to review documents at Heller Ehrman's office are quite real. Given that there are over 15,000 accused products (if Samsung fails to identify the 30-50 proper exemplar products), it could take several months of full-time work for AMD's experts to review the documents that demonstrate infringement. AMD's experts are likely to work weekends and evenings to complete their review. Samsung's counsel has indicated that access during weekends and evenings is unlikely. Also, AMD's experts and consultants often discuss the technical aspects of the documents as they relate to infringement. Such discussions, which are integral to engineering, will be difficult or impossible to conduct at opposing counsel's offices. Finally, Samsung will be able to monitor the amount of time that AMD's testifying and consulting experts spend reviewing documents, giving Samsung insights into AMD's litigation strategy.

AMD has proposed that Samsung's layout database should be produced on non-networked computers in a locked room. The locked room would be located in Robins, Kaplan, Miller & Ciresi's Minneapolis office. That office has locks on all floor access doors. Keys to that room would be made available to only a small number of lawyers and a paralegal who are working on the Samsung matter. Samsung has rejected this proposal.

**II.     Samsung's Document Production**

AMD served Samsung with targeted document requests on May 9, seeking documents relating to Samsung's accused products. AMD significantly aided Samsung's document collection efforts by providing Samsung with an itemized list identifying accused products. Samsung has already indicated that it has no intention of producing technical documents that reflect all of the Samsung accused products because there are too many accused products. Instead, Samsung has suggested that it will produce documents that represent only a subset of the accused products. Samsung has offered no explanation for how it will select which documents to produce and which to withhold, nor has Samsung agreed that its subset constitutes exemplars for the other accused products.

Samsung cannot have it both ways. Even though it is not producing the technical documents for all accused products, Samsung would require infringement proof at trial for all these products. Absent agreement on exemplars, AMD will be required to prove at trial infringement for each and every one of the accused products without the benefit of Samsung discovery responses pertaining to those products. Consequently, Samsung must either identify exemplar products or fully respond to AMD's discovery on each and every one of the accused products.

**III.    AMD's Document Production**

AMD has offered to identify exemplars of AMD products that are accused of infringing Samsung's patents, but Samsung has yet to provide the information needed to allow AMD to complete this identification. Samsung has served requests seeking documents relating to AMD's accused products but its requests are vague and overbroad because, unlike AMD, Samsung has not identified specific accused products and has described only general lines of processors. The problem is compounded by Samsung's failure to link its discovery requests to the Samsung asserted patents. Without further clarification, AMD cannot identify appropriate exemplars or reasonably collect all responsive documents by the parties' October 15 document production deadline.

**IV.    Exemplars**

An exemplar products agreement presents a singular solution to these three issues discussed above. Such an agreement would reduce the number of products in dispute. A reasonable exemplars agreement would reduce the number of Samsung accused products from over 15,000 to less than 50. Consequently, the exemplars agreement would 1) limit the number of technical documents Samsung must produce, thereby reducing Samsung's concern for stolen documents; and 2) provide AMD with the clarification it needs to collect and produce the documents Samsung has requested.

Samsung's concerns regarding the number of accused products and associated discovery would be resolved because discovery would be limited to approximately 50 Samsung products.

Although the use of exemplars in this case was expected by the parties, Samsung has thus far refused to identify exemplars or to work with AMD to reach this result. On May 6, immediately

after Samsung identified Heller Ehrman as its outside counsel, my partner, Brad Engdahl, and I flew to San Francisco for a face-to-face meeting with Mr. Haslem and other Heller Ehrman counsel. At this initial meeting, the parties agreed that exemplar products would streamline nearly all aspects of the case. This was not surprising, as exemplars are often used in patent litigation. Indeed, one court has ordered the identification of exemplars in litigation involving large numbers of accused products. *Connectel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526, 528 (E.D. Tex. 2005) (ordering plaintiff to submit preliminary infringement contentions based on designated exemplar accused infringing products). Samsung itself has proposed exemplars in patent litigation. In *Rambus, Inc. v. Hynix Semiconductor, Inc.*, Case No. 5:05-cv-00334-RMW, currently pending in this District, Samsung proposed that one part represent all DDR2 SDRAM and GDDR2 SDRAM memory products in suit. These same memory product lines are also at issue in this case.

On June 10, AMD sent Samsung a 7-page letter proposing that the parties begin a discussion about establishing exemplar product categories in the interests of streamlining the litigation. AMD laid out in detail, for each of its 7 asserted patents, exemplar categories that would allow the parties to identify a reasonable number of products for each category for purposes of discovery. Following discovery, the parties could identify a single product from each category, for the purposes of trial. *See* Ex. A, letter dated June 10, 2008 from William Manning to Robert Haslem.

On June 25, Samsung's counsel responded, stating that it was "willing to consider" entering into an exemplar agreement, but required "more information about AMD's infringement case." *See* Ex. B, letter dated June 25, 2008 from Christine Haskett to William Manning at 1. Samsung specifically requested infringement claim charts. *Id*. at 1-4.

Two weeks later, on July 10, AMD responded by providing Samsung 22 detailed claim charts that map each and every element of the asserted claims of each patent to specific Samsung accused products. *See* Ex. C, letter dated July 10, 2008 from William Manning to Christine Haskett and Ex. D, an example of one of the 22 claim charts provided to Samsung. AMD explained that these charts will likely correspond to its Preliminary Infringement Contentions, which are due on September 30, 2008. In addition, AMD provided to Samsung, in electronic and paper copies in several bankers' boxes, all of the supporting source documents referenced in the claim charts, including third-party teardown reports of Samsung products. AMD has also sent Samsung a product list that identifies 15,000 Samsung products that practice one or more of the asserted patents. We will have this product list at any case management conference that is scheduled to show the Court the detail that AMD has achieved on the product list without any formal discovery occurring.

AMD's letter of July 10 also provided a thorough explanation on a patent-by-patent basis of AMD's methodology used to identify proposed exemplar products. AMD estimated it should need "detailed infringement discovery for only 40 products." *Id*. at 2. Despite all of the information provided by AMD, Samsung has yet to respond, much less suggest proposed exemplars.

In the July 10 letter, AMD further advised Samsung that AMD would agree to exemplars regarding its own products to assist Samsung in asserting its six patents against AMD. AMD advised Samsung that AMD "has taken steps to identify exemplar AMD products that Samsung has accused of infringement." *Id.* at 2. To complete this identification, AMD requested that Samsung "provide information as AMD has provided with this letter, including infringement claim charts and supporting documentation." *Id.* Although Samsung had indicated that exemplar AMD products would be appropriate, Samsung has not provided AMD with any information that would allow AMD to create exemplar categories. This is particularly important because Samsung, unlike AMD, failed to identify *any* specific accused products in its pleadings or discovery requests.

Having received no response to its letter of July 10, on July 30 AMD renewed its request that Samsung provide detailed information regarding its infringement contentions. *See* Ex. E, letter dated July 30, 2008 from Cole Fauver to Christine Haskett.

To date, Samsung has not supplied the requested information. Samsung must identify what features of AMD's products are alleged to infringe before AMD can categorize the accused AMD products. To respond to Samsung's discovery requests by October 15, AMD needs the requested information immediately.

Given these realities, AMD is perplexed as to why Samsung has resisted identifying exemplars for use in this litigation. AMD believes that a case management conference with the Court in September would be of great assistance in resolving these issues. AMD further believes that the Court would benefit from a more in-depth understanding of the technology involved in the case and the patents, in that it would enhance the Court's ability to guide the parties to mutual agreement on these and future case management issues. Attached as Exs. F-L are tutorial materials describing the technology pertaining to each of the 7 AMD patents-in-suit. AMD respectfully suggests that any case management conference include time for a brief discussion of the technology.

AMD appreciates the Court's consideration of this request.

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

William H. Manning

cc: Robert Haslem
    Michael Plimack
    Christine Haskett