# EXHIBIT A

Dockets.Justia.com

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

ATTORNEYS AT LAW

2800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

WILLIAM H. MANNING
612-349-8461

June 10, 2008

Robert T. Haslam, Esq.
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Michael K. Plimack, Esq.
Christine Saunders Haskett, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878

Alan H. Blankenheimer, Esq.
Heller Ehrman LLP
4350 La Jolla Village Drive
7th Floor
San Diego, CA 92122-1246

<strong>VIA EMAIL & FIRST CLASS MAIL</strong>

Re: *Advanced Micro Devices, Inc. et al. v. Samsung Electronics Co., Ltd. et al.*
Case No. CV-08-0986-SI

Dear Counsel:

The seven patents asserted by AMD implicate a wide range of Samsung products. AMD has a right to pursue discovery on each product in order to obtain proof that it infringes one or more patent claims. Samsung already has indicated that it believes such discovery will impose an undue burden. In this case, however, the structural and operational features of each product are highly relevant and subject to discovery.

We suggest that the parties open a discussion about an agreement to group Samsung's products in a way that will reduce the amount of necessary discovery and will streamline this case for trial. We propose that the parties agree on one exemplar product that will represent the structural and operational features of each group. Samsung would then agree that if AMD proves that the exemplar product embodies all elements of a patent claim, then all products in that group also embody all elements of that patent claim.

At this stage in the litigation, only Samsung has access to the detailed information regarding the structure and operation of the accused products. Before AMD will enter any stipulation regarding an exemplar product, Samsung must provide AMD with sufficient evidence that the exemplar does, in fact, represent the structural and operational features of all products in the group.

Identifying exemplar products will reduce the amount of detailed discovery that AMD will require to support its infringement case. It also will streamline trial and eliminate repetitive evidence regarding substantially similar Samsung products. We therefore suggest that the parties begin a process of identifying relevant groups of Samsung products and appropriate exemplar products to represent those groups.

In the following sections, we intend to open the discussion regarding potential product groups and exemplar products. This discussion does not represent any admission by AMD about the operation of Samsung products or waive AMD's right to rely on infringement proof that AMD obtains through formal discovery. Any agreement regarding exemplars would have to contain detailed, mutually acceptable language setting forth the effect of proving that the exemplars infringe and the manner in which the use of exemplars would limit discovery and the admissibility of evidence at trial. By opening this discussion, we are expressing our sincere interest in finding a mutually agreeable solution to this issue.

## I.    Cheng 5,559,990

Samsung's website indicates that it manufactures and sells memory falling into at least nine different categories, including DDR, DDR2, DDR3, SDRAM, GDDR, RDRAM, XDR, SRAM and NOR Flash. Samsung's publicly available datasheets for products falling within each of the memory categories noted above show that, within each category, most products share the operational and structural characteristics that are relevant to the asserted claims of the Cheng patent. We propose, therefore, that the parties agree on an exemplar Samsung product for each category.

To identify the appropriate exemplar product categories applicable to the Cheng patent, AMD will require detailed discovery of approximately 30 of the over 2000 memory products on the Exhibit A previously provided to Samsung by AMD. Based upon review of the materials Samsung produces in response to this discovery, AMD expects to be able to further narrow these representative product categories to perhaps 15, subject to Samsung's agreement that the operational and structural features of each product within these groups is the same for purposes of the asserted claims. Accordingly, we suggest that the parties agree that if the factfinder determines that a chosen exemplar embodies all elements of an asserted Cheng patent claim, then all other products grouped with that exemplar also embody all elements of that claim.

## II.    Sakamoto 5,248,893

As we understand it, Samsung makes two different types of transistors with gates that are recessed below the surface of the substrate (RCAT and S-RCAT). We have also seen references

to U-RCATS in the publicly available literature, but do not know for certain whether such products have hit the market yet. We are in possession of an image of cross section a S-RCAT transistor from a Samsung DRAM chip (K4T51083QE), which was attached to Plaintiffs' First Set of Requests for Admission. We have also seen cross sections of RCAT transistors in the publicly available literature written by Samsung engineers. *See e.g.* Kim, Kinam *Technology for sub-50 nm DRAM and NAND Flash Manufacturing* (IEEE 2005).

As a first step to reaching a stipulation, we would need you to identify which models of Samsung's DRAMs have RCAT transistors, which models have S-RCAT transistors, and which have traditional transistors with gates that cover a flat surface of the substrate. As to the S-RCAT transistors, the publicly available literature suggests that the S-RCAT transistors found in model K4T51083QE are representative of the S-RCAT transistors found in Samsung's DRAMs generally. However, we have not yet had the benefit of discovery to confirm this fact. Accordingly, we could handle the S-RCATs in a fashion that it similar to Iacoponi proposal discussed above. Samsung would provide us with satisfactory evidence that this fact is true, including proof that the transistors in other DRAMs operate the same way as the exemplar chip, have the same general appearance, are layered in the same fashion, and that the various components of the transistors have the same composition. Assuming that we could obtain such assurances, we could enter into a stipulation wherein we would agree that the resolution of the question of whether the exemplar chip infringes the Sakamoto patent would resolve the issue of S-RCATS generally.

As to the DRAM products with RCAT type transistors, we would need further information, as the publicly available literature does not tie Samsung's RCAT design to particular model numbers. Before reaching any stipulations, we would have to negotiate obtaining additional information about individual designs.

Finally, we would have to resolve whether there are DRAM products with gates that are recessed below the main surface other than RCATs and S-RCATS, and whether recessed gates are used in other Samsung products.

## III.   Patel 4,737,830

Given the wide variety of possible capacitor layouts, it is difficult for us to propose, based upon the information currently available to us, any stipulations regarding whether any particular products are representative of larger product groups for purposes of the Patel patent. Rather, it may make sense for us to negotiate a multi-step process to streamline the issues. The first step of such process would be to resolve informally which products or groups of products have on-chip decoupling capacitors. We could then identify those claim elements that are genuinely in dispute between the parties. Once we have narrowed down the chips and the claim elements, we could isolate the chips that represent the different manifestations of that element in Samsung's chips. We could then stipulate that resolution of the issue of whether that element is present in the exemplar chip resolves the issue of whether that element is present in the broader group of chips that the chip represents. I understand that this proposal is somewhat vague, but it

is necessarily so given the nature of the patent, the nature of Samsung's products, and the current state of discovery.

## IV.    Iacoponi 5,545,592

AMD is in possession of images of cross-sections of contacts found in a Samsung DRAM chip (K4T1G164QA-ZCD5) and a NAND Flash chip (K9WAG08U1A). Copies of these images were attached to Plaintiffs' First Set of Requests for Admission. We believe that these contacts are representative of the contacts found in all Samsung's DRAMs and NAND Flash chips, respectively. However, we have not yet had the benefit of discovery to confirm this conclusion. Accordingly, before we could enter into any stipulations regarding these chips, Samsung would have to provide us with satisfactory evidence that the contacts found in these two chips are representative. Such evidence would not need to be in the form of a formal discovery exchange. It is our hope that we could work out a mechanism by which Samsung would provide us with the evidence informally. This evidence would have to be sufficient to allow us to conclude with confidence that the process used to manufacture the two exemplar chips is the same, in every material way, as the process used to manufacture Samsung's other DRAM and NAND Flash chips. Similarly, we would have to ensure that the contacts in other DRAMs and NAND Flash chips have the same general appearance as the exemplar chips, are layered in the same fashion, and that the various layers have the same composition.

Assuming that we could receive the appropriate assurances, we could enter into a stipulation by which the infringement portion of the trial would focus on the two exemplar chips. We could stipulate that the determination of infringement or non-infringement reached by the fact finder (whether it be the court on summary judgment or the jury after trial) regarding the two exemplar chips would apply to all DRAMs and NAND Flash chips that Samsung has made, used, sold, or imported into the United States.

Obviously, we would have to enter into a different stipulation if not all of Samsung's DRAMs and NAND Flash chips use the plasma nitridation process, or if there are material differences in the plasma nitridation processes used during fabrication of Samsung's chips. Further, we would have to have some mechanism for determining whether Samsung's products other than NAND Flash and DRAM chips have nitrided contacts. Regardless of the factual scenario, I am sure that there will be a way to streamline this portion of the case if we are both cooperative and creative.

## V.    Purcell 5,623,434

Publicly available information demonstrates that Samsung sells products that incorporate ARM7TDMI or ARM9TDMI cores licensed by ARM Holdings, PLC. Publicly available information also shows that those products satisfy all elements of claims from the Purcell patent. We propose, therefore, that the parties agree on an exemplar Samsung product that incorporates an ARM7TDMI core and an exemplar Samsung product that incorporates an ARM9TDMI core.

Samsung's website indicates that its S3C3410 application processor contains an ARM7TDMI core. AMD believes that all Samsung semiconductor parts that incorporate an ARM7TDMI core have the same relevant structural and operational features as the S3C3410 application processor. AMD suggests that the parties agree that if the factfinder determines that the S3C3410 application processor embodies all elements of any Purcell patent claim, then all other Samsung semiconductor parts that incorporate an ARM7TDMI core also embody all elements of that claim. In order to reach this agreement, AMD will need appropriate assurances and evidence from Samsung that the S3C3410 represents the structure and operation of all Samsung semiconductor parts that incorporate ARM7TDMI cores.

Samsung's website indicates that its S3C2410 application processor incorporates an ARM920T core. According to the ARM920T technical reference manual, that core contains an ARM9TDMI design. AMD believes that all Samsung semiconductor parts that incorporate an ARM9TDMI core have the same relevant structural and operational features as the S3C2410 application processor. We suggest that the parties agree that if the factfinder determines that the S3C2410 application processor embodies all elements of any Purcell patent claim, then all other Samsung semiconductor parts that incorporate an ARM9TDMI core also embody all elements of that claim. In order to reach this agreement, AMD will need appropriate assurances and evidence from Samsung that the S3C2410 represents the structure and operation of all Samsung semiconductor parts that incorporate ARM9TDMI cores.

AMD is unable to identify potential exemplar products for Samsung's proprietary semiconductor parts, because the relevant information resides in Samsung's sole possession, custody, or control. Agreeing on the exemplar products proposed above, therefore, will not eliminate AMD's need for discovery to determine whether Samsung's proprietary semiconductor parts also practice the Purcell patent claims. AMD may be willing to agree on product groupings and exemplar products for proprietary parts if Samsung provides sufficient evidence and assurances to AMD regarding the structure, operation, and shared features of Samsung's proprietary products.

## VI.    Pedneau 5,377,200

Publicly available information shows that Samsung sells products that incorporate ARM7EJ-S, ARM9E-S, and ARM9EJ-S cores licensed by ARM Holdings, PLC. Publicly available information also shows that those products satisfy all elements of claims from the Pedneau patent.

ARM documentation shows that the relevant features of the ARM7EJ-S, ARM9E-S, and ARM9EJ-S cores operate in the same way. We propose, therefore, that the parties identify one exemplar product to represent all Samsung semiconductor parts that incorporate any of those three ARM cores.

Samsung's website indicates that the S3C2412 application processor incorporates an ARM926EJ-S core. We suggest that the parties agree that if the factfinder determines that the S3C2412 application processor embodies all elements of any Pedneau patent claim, then all other

Samsung semiconductor parts that incorporate an ARM926EJ-S, ARM9E-S, or ARM7EJ-S core also embody all elements of that claim. In order to reach this agreement, AMD will need appropriate assurances and evidence from Samsung that the S3C2412 represents the structure and operation of all Samsung semiconductor parts that incorporate ARM7EJ-S, ARM9E-S, and ARM9EJ-S cores.

Again, AMD is unable to identify potential exemplar products for Samsung's proprietary semiconductor parts, because the relevant information resides in Samsung's sole possession, custody, or control. Agreeing on the exemplar products proposed above, therefore, will not eliminate AMD's need for discovery to determine whether Samsung's proprietary semiconductor parts also practice the Pedneau patent claims. AMD may be willing to agree on product groupings and exemplar products for proprietary parts if Samsung provides sufficient evidence and assurances to AMD regarding the structure, operation, and shared features of Samsung's proprietary products.

## VII.  Orr 6,784,879

Publicly available Samsung user manuals do not provide detail about the user interface that Samsung provides on its consumer electronics devices that display video. AMD has identified a Samsung television, Samsung video camcorder, and Samsung cell phone that AMD believes represent the user interface incorporated in many other Samsung products in those categories. We therefore propose that Samsung stipulate to groups of televisions, camcorders, and cell phones that incorporate the same or similar user interface.

AMD believes that many other Samsung televisions have the same user menu interface and picture-in-picture capability as the Samsung LN-T4065F LCD television. Samsung has the information necessary to determine the television models that make up that group, but AMD would be willing to work toward an agreement on those models if Samsung provides sufficient evidence and assurances to AMD about the products' operation.

Similarly, AMD believes that the user interface demonstrated by the Samsung SC-HMX10 camcorder is present in other Samsung camcorders. Again, Samsung has the relevant information to determine the models in this group, but AMD would be willing to agree to those models with sufficient evidence and assurances from Samsung about the products' operation.

Finally, AMD believes that other Samsung cell phones use the same user interface as the Samsung Glyde SCH-u940. If Samsung provides evidence and assurances to AMD regarding the Samsung cell phones, their operation, and their shared features, AMD will consider agreeing on the cell phone models that make up that group.

AMD requires discovery on the user interfaces of other Samsung products that display video images in order to determine the scope of infringement of the Orr patent. AMD may be willing to discuss other exemplars and product groups based on formal discovery and other information provided by Samsung.

## VIII.  Conclusion

We believe that we can work to find a mutually agreeable solution that will allow AMD
to obtain relevant structural and operational information about Samsung products, while at the
same time streamlining discovery and trial preparation.  We look forward to your response.


Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

William H. Manning

WHM/arf

Cc:    John Bovich, Esq.
       Brad P. Engdahl, Esq.