# COVINGTON & BURLING LLP

333 TWIN DOLPHIN DRIVE
SUITE 700
REDWOOD SHORES, CA 94065-1418
TEL 650.632.4700
FAX 650.632.4800
WWW.COV.COM

BEIJING
BRUSSELS
LONDON
NEW YORK
SAN DIEGO
SAN FRANCISCO
SILICON VALLEY
WASHINGTON

ROBERT T. HASLAM
TEL 650.632.4702
FAX 650.632.4802
RHASLAM @ COV.COM

February 24, 2009

The Honorable Susan Illston
United States District Court
Courtroom 10, 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

> Re: *Advanced Micro Devices, Inc. v. Samsung Electronics Co., Ltd. et al.*, Case No. CV-08-0986-SI

Dear Judge Illston:

Defendants and Counterclaimants (collectively, "Samsung") submit this letter in opposition to the request filed on February 17, 2009 by Plaintiffs and Counterdefendants (collectively, "AMD") requesting an order compelling Samsung to produce firmware source code for each of the approximately 7,095 televisions, cell phones, camcorders, and digital cameras accused by AMD in this litigation.

A.    Overview

AMD contends that it needs to discover the firmware embedded in Samsung's accused consumer electronics to determine which of those products infringe U.S. Patent No. 6,784,879 ("the '879 patent"). However, even a cursory study of the '879 patent reveals that one does not need to analyze the firmware generating the user interfaces in the accused products to assess whether these user interfaces meet the claims of the '879 patent. This is because the '879 patent claims only the visual design and operation of a computer user interface.

In plain terms, the '879 patent claims the ability to adjust the volume and other attributes of video that is running as the desktop or background of the computer screen while another application appearing in a window overlaid on the background video remains in focus. These features (or the lack thereof) are readily apparent to any person using the accused televisions, cell phones, camcorders, and digital cameras. Alternatively, AMD can examine the numerous documents Samsung has produced that depict the graphical design of Samsung's user interfaces. Reverse engineering the firmware embedded in the accused products to determine how the user interface operates is a burdensome and unnecessary means of determining what can easily be shown by these more direct means.

AMD contends that discovering Samsung's firmware is necessary because certain of the patent claims are drafted to require that "programming instructions" be used to generate the user interface. But AMD does not need to discover Samsung's firmware to establish that this claim

COVINGTON & BURLING LLP

The Honorable Susan Illston
February 24, 2009
Page 2

limitation is met.  The use of programming instructions is the only way to display graphics on a computer screen, and this limitation is therefore inherently present in any system displaying graphics.  Indeed, many months ago Samsung offered to stipulate that the accused products and asserted prior art systems contain "programming instructions," in return for AMD's withdrawing its request to discover Samsung's firmware.  AMD never accepted or rejected Samsung's proposal.  Instead, AMD precipitously filed this motion to compel while the parties were still in the process of meeting and conferring to determine what documents could be produced or other agreements reached to avoid the burdensome result AMD's motion now seeks:  the production of the firmware embedded in over 7,000 consumer electronics products.

Accordingly, AMD's motion to compel does not arise from a need to prove its infringement case.  Instead, it is part of a broader pattern of serving overbroad discovery to needlessly burden Samsung and multiply these already complex proceedings.

  B.  Factual Background

    1.  The '879 patent claims a particular design for a computer user interface.

The '879 patent claims a "method and apparatus for controlling background video on a computer display."  '879 patent, Abstract.  As a threshold matter, there can be little doubt that the patent is limited to controlling background video on a personal computer, and does not cover the televisions, cell phones, video cameras, and digital cameras AMD has accused in this litigation.  In the first lines of the patent, the patentee states that the "Technical Field of the Invention . . . relates generally to *computer displays* and more particularly to providing control of background video."  *Id.* at 1:7-8 (emphasis added).  Throughout the patent, the patentee repeatedly refers to personal computers; the word "computer" appears in the patent some 22 times.[1]  The claims are limited to personal computers through the use of such claim terms as "control panel," which the patentee explains is "a control panel . . . provided on the computer display," (*id.* at 3:21-22); and "icon," which is a term of art used in the field of personal computers.  Samsung will argue in the upcoming *Markman* proceedings that the claims are limited to personal computers, under which construction AMD's claims that Samsung's televisions, cell phones, cameras, and camcorders infringe this patent must be dismissed.

---

[1] *See, e.g., id.* at 1:12-15 ("Computers are known to include a central processing unit . . . ."); 1:15-17 ("The computer further includes a computer monitor which provides visual representations of the data being manipulated."); 1:23-24 ("The displaying of live video on a computer monitor may be done in several ways."); 1:24-26 ("A first displaying approach is to have the live video being displayed in the entire display area of the computer monitor."); 1:29-31 ("Alternatively, the live video may be presented in a window of the computer screen . . . ."; 2:3-5 ("Generally, the present invention provides a method and apparatus for controlling background video on a computer screen").

COVINGTON & BURLING LLP

The Honorable Susan Illston
February 24, 2009
Page 3

The claimed inventions are rather simple, basically claiming nothing more than a user interface that allows one to adjust or control video playing on the computer desktop without having to bring out of focus a separate application, such as a word processor, that the user is working on in a separate window overlaying the desktop. Claim 1 is exemplary:

> **1.** A method for providing control of background video, the method comprising the steps of:
>
>> (a) providing a video control icon that is visible on the display, wherein the video control icon relates to live video that is being presented as a background on a display wherein the live video is received from at least one of the following: a DVD player, live television broadcast, a recording device, a satellite television broadcast and a cable television broadcast;
>>
>> (b) detecting selection of the video control icon; and
>>
>> (c) when the video control icon has been selected, providing a control panel while the live video remains in the background and an application that was in focus remains in focus.

As AMD points out, several of the claims add to this basic claim the limitation that it is a video graphics processor that generates the graphical user interface using "programming instructions that are stored in memory." *See*, e.g., *id.*, Cl. 14. This is, however, the only way to present graphics on a computer display in a system using a processor and memory. Declaration of Jack D. Grimes in Opposition to Motion to Compel ("Grimes Decl.") ¶ 12.

2.  AMD's overbroad discovery and refusal to compromise.

AMD has provided Samsung with a list of nearly 19,000 products that it claims to accuse in this litigation. Over 7,000 of these products are televisions, cell phones, cameras, and video cameras. AMD has thus far refused to identify which of these products it is accusing of infringing the '879 patent and which it is accusing based on one of AMD's other six asserted patents. Nonetheless AMD demands the firmware for each of these over 7,000 products.

AMD has served over 800 separate written discovery requests in this action, one of which is document request no. 167 at issue in this motion. Like AMD's other discovery requests, this request is extremely broad:

> All Technical Documents, including source code, that relate to firmware or applications provided to customers that execute in programmable processors in any products made or sold by Samsung that are capable of simultaneously displaying a video image and a graphical user interface.

AMD Letter at 3. The request is unlimited in its demand for all technical documents related not only to products potentially implicated by the '879 patent, but *all* products that display video

COVINGTON & BURLING LLP

The Honorable Susan Illston
February 24, 2009
Page 4

simultaneously with a graphical menu to control the video.  The request is not even limited to such products that contain an application overlaying the video display, as the claims require.

Samsung spent many months negotiating with AMD attempting to narrow the scope of this and AMD's other broad document requests.  On December 5, 2008, Samsung offered to exchange stipulations with AMD agreeing that both the accused products and the prior art devices asserted by Samsung contain "programming instructions."  Declaration of Samuel F. Ernst in Opposition to Motion to Compel ("Ernst Decl.") Ex. 1 at 7-8.  In January and February the parties were in the midst of negotiating the production of additional documents and had discussed again the potential for a stipulation when AMD precipitously filed this motion, demanding all embedded firmware for televisions, cell phones, camcorders, and digital cameras offered, sold, or imported by Samsung after the filing of this lawsuit.

    C.  AMD does not need to discover Samsung's firmware in order to determine whether the accused products meet the claims of the '879 patent.

It is not necessary for AMD to discover the embedded firmware for the accused products in order to analyze whether they meet the claims of the '879 patent.  Whether the user interface operates according to the claims of the '879 patent is readily apparent from operating the accused products or by studying the documentation Samsung has produced to date.

In this regard, AMD is incorrect that it cannot test its infringement theories with still images of the user interfaces.  For example, below is a screenshot of the user interface of an accused Samsung camcorder included in a user manual produced by Samsung:



Ernst Decl., Ex. 2 at SAMAMD0245883.  According to AMD's infringement contentions, it considers the speaker icon to be the claimed video control icon that controls the volume for the background video.  *Id.*, Ex. 3 at 2.  AMD considers the battery meter to be the claimed "application that was in focus."  While Samsung does not concede that these elements meet the

COVINGTON & BURLING LLP

The Honorable Susan Illston
February 24, 2009
Page 5

claim limitations as properly construed, AMD can determine whether the accused camcorder provides a "control panel" while the background video remains in the background and the battery meter application remains in the foreground by referring to the next screenshot appearing in the user manual:



AMD contends that this constitutes the claimed "control panel"

Ernst Decl., Ex. 2 at SAMAMD0245883. This screenshot depicts a volume adjust meter that is displayed when the user selects the volume adjust button. *Id.* AMD contends that the volume adjust meter is the claimed "control panel." *Id.*, Ex. 3 at 5. It is readily apparent from these screen shots whether, under AMD's construction of the patent claims, the battery meter "application" remains "in focus" [2] when the "control panel" is manifested.

      The only claim limitation that cannot immediately be tested by referring to these screen shots is whether the graphical "icons," "control panel," and "application" were created using "programming instructions." However, it is inherent that in a system using a video graphics processor to generate graphics on a screen, programming instructions are present to instruct the processor in generating the graphics. Grimes Decl. ¶ 12. AMD does not need to discover the firmware embedded in over 7,000 Samsung products to demonstrate that the firmware exists.

      Accordingly, Samsung respectfully requests that the Court deny AMD's motion to compel. In the alternative, Samsung requests that the Court order the parties to complete the meet and confer regarding the production of documents related to the user interfaces accused of infringing the '879 patent.

---

[2] The parties have stipulated that the term "in focus" means, "actively being displayed and/or being worked upon."

COVINGTON & BURLING LLP

The Honorable Susan Illston
February 24, 2009
Page 6

                                                                            Respectfully submitted,

                                                                            */s/ Robert T. Haslam*

cc:       Counsel for Plaintiffs and Counterdefendants