ROBERT T. HASLAM (Bar No. 71134)
rhaslam@cov.com
MICHAEL K. PLIMACK (Bar No. 133869)
mplimack@cov.com
CHRISTINE SAUNDERS HASKETT (Bar No. 188053)
chaskett@cov.com
SAMUEL F. ERNST (Bar No. 223963)
sernst@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ALAN H. BLANKENHEIMER (Bar No. 218713)
ablankenheimer@cov.com
LAURA E. MUSCHAMP (Bar No. 228717)
lmuschamp@cov.com
JO DALE CAROTHERS (Bar No. 228703)
jcarothers@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, CA 92122-1225
Telephone: (858) 678-1800
Facsimile: (858) 678-1600

Attorneys for Defendants and Counterclaimants SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, SAMSUNG TECHWIN CO., LTD., and SAMSUNG OPTO-ELECTRONICS AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al.,<br><br>Plaintiffs and Counterdefendants,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants and Counterclaimants. | Case No. 3:08-CV-0986-SI<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS**<br><br>DATE: April 24, 2009<br>TIME: 9:00 a.m.<br>COURTROOM: 10, 19th Floor<br>JUDGE: The Honorable Susan Illston |

**NOTICE OF MOTION**

TO PLAINTIFF AND COUNTERDEFENDANTS ADVANCED MICRO DEVICES, INC. AND ATI TECHNOLOGIES, ULC (COLLECTIVELY "AMD") AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 24, 2009 at 9:00 a.m., in the courtroom of the Honorable Susan Illston, or at such date and time as the Court may otherwise direct, Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Samsung Techwin Co., Ltd., and Samsung Opto-Electronics America, Inc. (collectively, "Samsung") will and hereby do move for leave to amend their Answers and Counterclaims pursuant to Federal Rule of Civil Procedure 15(a). Samsung requests that the Court grant permission to file the First Amended Answers and Counterclaims attached hereto as Appendices A-G.

This motion is based on this Notice of Motion, on the following Memorandum of Points and Authorities, on the Declaration of Christine Saunders Haskett in Support of Samsung's Motion for Leave to Amend Answers and Counterclaims ("Haskett Decl."), and on such other materials or oral argument as the Court may permit.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

AMD has accused Samsung of infringing seven of its patents. Through ongoing discovery and investigation, Samsung has uncovered evidence that two of AMD's asserted patents—U.S. Patent No. 5,559,990 (the "'990 Patent") and U.S. Patent No. 5,545,592 (the "'592 Patent")—were procured through fraud on the U.S. Patent and Trademark Office ("USPTO"). Accordingly, Samsung seeks the Court's leave to amend its Answers and Counterclaims to include affirmative defenses and declaratory judgment causes of action based on the doctrine of inequitable conduct. Because Samsung's motion for leave is made prior to the parties' agreed-upon deadline for motions to amend the pleadings, leave to amend is to be "freely given" pursuant to Federal Rule of Civil Procedure 15(a).

Furthermore none of the four factors the Court considers when evaluating a motion for leave to amend suggest that leave should be denied here:

First, Samsung has not shown any undue delay in bringing its motion. To the contrary, before making accusations of inequitable conduct, Samsung acted prudently in developing the factual record and has brought this motion within the time period for amending pleadings in this case.

Second, there is no evidence that Samsung's motion is made in bad faith or for any dilatory motive, given that he time agreed upon for the parties to amend their pleadings—if they mean to do so—is now.

Third, although AMD will undoubtedly dispute the merits of Samsung's inequitable conduct allegations, the amendments are not "futile." Samsung has specifically alleged that AMD withheld material information from the U.S. Patent and Trademark Office during the prosecution of the '990 and '592 patents and that it did so with the intent to deceive the examiners of those patents. Those allegations are viable under the law.

Finally, because Samsung has made this motion early in the proceedings and there is still ample time before the close of discovery, there is no risk that AMD will be prejudiced by Samsung's proposed amendments.

For these reasons, Samsung respectfully requests that the Court grant leave to file the First Amended Answers and Counterclaims attached hereto as Appendices A-G.[1]

## II. STATEMENT OF FACTS

*Procedural Background*

This lawsuit was initiated by AMD on February 19, 2008. On May 15, 2008, Samsung filed and served an Answer and Counterclaims, alleging, among other things, that each of AMD's

---

[1] Appendices A-G are the proposed First Amended Answers and Counterclaims for each of the seven Samsung Defendants and Counterclaimants in this case. Each First Amended Answer and Counterclaim adds identical affirmative defenses and counterclaims based on the unenforceability of the '990 and '592 patents.

asserted patents is not infringed and is invalid.[2]  The parties stipulated to March 11, 2009 as the deadline to amend any of the pleadings.  The parties have meet and conferred, and AMD has stated that it will oppose entry of Samsung's Amended Answers and Counterclaims.  Haskett Decl. ¶ 6.  Samsung now seeks the Court's leave to amend the Answers and Counterclaims to add affirmative defenses and declaratory relief counterclaims alleging that two of AMD's asserted patents, the '990 and '592 patents, are unenforceable under the doctrine of inequitable conduct.

### *'990 Patent Inequitable Conduct*

The attorneys prosecuting the '990 Patent knowingly withheld a highly material prior art reference—another patent owned by AMD itself (the "'421 Patent")[3]—from the USPTO during the prosecution of the '990 Patent.  And the '990 Patent's file history leaves no doubt that the prosecuting attorneys knew about the reference.  During the prosecution of the '990 patent, AMD's attorneys disclosed two prior art patent applications—both of which were also owned by AMD and filed by the same law firm prosecuting the '990 Patent—to the USPTO as part of an Information Disclosure Statement.  The attorneys were informed by the USPTO, however, that because of a technical error by the attorneys, the applications would not be considered.[4]  Subsequently, while the prosecution of the '990 Patent was still ongoing, both of the prior art applications issued as patents to AMD.  But when AMD's attorneys filed another Information Disclosure Statement, they listed only one of these newly-issued patents and chose not to disclose the '421 Patent to the USPTO.  *See, e.g.*, Appendix A, ¶¶ 62-76.

Although AMD's attorneys knew about the '421 Patent—they had filed and prosecuted its application on behalf of AMD—those attorneys deliberately withheld the '421 Patent from the

---

[2] Between May 15, 2008 and July 16, 2008, each of the seven Samsung Defendants and Counterclaimants filed an Answer and Counterclaims, all of which were substantially similar regarding the allegations of noninfringement and invalidity of the asserted AMD patents.

[3] The '421 Patent is U.S. Patent No. 5,285,421, assigned to AMD.  *See* Haskett Decl., Ex. 1.

[4] According to the patent examiner responsible for the '990 Patent application, patent applications (and specifically the one that eventually matured in to the '421 patent) could not be disclosed on the form PTO-1449 that AMD's attorneys had used.

MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS
CV-08-0986-SI

USPTO because they knew that, had the examiner considered the '421 Patent, it would have prevented the claims of the '990 Patent from issuing in their current form. *See id.*

Although some of the facts outlined above are evident from the file history of the '990 Patent, others only came to light after Samsung obtained and reviewed the file histories of the other, prior art patents. At that point, and before making allegations of inequitable conduct, Samsung served AMD with written discovery requests seeking an explanation for the nondisclosure of the '421 patent. AMD's discovery responses, which were served on February 13, 2009, merely state that AMD's attorneys disclosed the *application* that became the '421 Patent, "intending" that it become part of the record, and that the '421 Patent itself is allegedly not material to the patentability of the '990 Patent. *See* Haskett Decl., Ex. 2, at 13-15 (AMD responses to interrogatories 33-35). These responses, however, do nothing to counter the inference that AMD knowingly withheld a material reference from the USPTO, rendering the '990 Patent unenforceable for inequitable conduct.

### *'592 Patent Inequitable Conduct*

AMD's '592 Patent—the asserted claims of which are directed towards forming an electrical contact on a semiconductor—names John Iacoponi as its sole inventor. *See* Haskett Decl., Ex. 3 ('592 Patent). Samsung took Mr. Iacoponi's deposition on November 18, 2008, after the filing of the original Answers and Counterclaims. In the process of preparing for that deposition, Samsung discovered evidence showing that Mr. Iacoponi had been an attendee in the 1990's at the annual VLSI Multi-Level Interconnect ("VMIC") conference, which was a prominent conference for those involved in the field to which the '592 patent relates. Mr. Iacoponi's attendance at three, or possibly all four, of the VMIC conferences between June of 1993 and June of 1996 (shortly before the '592 Patent issued in August of 1996) was confirmed at his deposition. Haskett Decl., Ex. 4 at 30-31 (excerpts of the November 18, 2008 deposition of John Iacoponi).

The VMIC conferences themselves and, more importantly, the materials presented and distributed at the conferences, were highly material to the patentability of the then-pending claims of the '592 Patent. In particular, at each VMIC conference, a set of materials was distributed to the conference participants, consisting of a one- or two-inch book of technical abstracts. Haskett Decl.,

- 4 -

CV-08-0986-SI

Ex. 4 at 33. Mr. Iacoponi's practice was to retain for a period of time—typically, at least a year or two—the materials that he received at each of the VMIC conferences that he attended. Haskett Decl., Ex. 4 at 35-36.

The technical abstracts that Mr. Iacoponi received at the VMIC conferences that he attended between June of 1993 and June of 1996 were related to the field of semiconductor interconnect technology, which includes the formation of contacts in semiconductor devices. Moreover, dozens of those abstracts were directly relevant to the then-pending claims of the '592 Patent because they disclosed processes for forming nitrided contacts in semiconductor devices—the exact type of process claimed in the '592 Patent—and some of them further disclosed processes utilizing nitrogen ionized in a plasma, which is one of the key limitations of the claims of the '592 Patent. *See, e.g.*, Haskett Decl., Ex. 4 at Exhibit 1009 (Abstract from the June, 1996 VMIC conference, entitled "A Stable Plasma Treated CVD Titanium Nitride Film for Barrier/Glue Layer Applications").

Notwithstanding the fact that the prosecution of the '592 Patent began in February of 1995 and continued for more than a year until August of 1996, neither Mr. Iacoponi nor any of the attorneys prosecuting the '592 Patent submitted to the USPTO any of the materials that Mr. Iacoponi received at the VMIC conferences he attended from June of 1993 to June of 1996. And although Mr. Iacoponi was aware of and retained copies of the materials distributed at the VMIC conferences that he attended, he failed to provide any of those materials to the attorneys who were prosecuting the '592 Patent on his behalf. Haskett Decl., Ex. 4 at 38. In failing to bring these materials to the attention of his attorneys, Mr. Iacoponi flagrantly disregarded his duty of candor to the USPTO.

Mr. Iacoponi's intentional disregard of USPTO rules was so egregious that he even failed to bring materials that he had authored to the attention of the prosecuting attorneys. Specifically, Mr. Iacoponi was a co-author of a paper presented and distributed at the 1993 VMIC conference, entitled "Single Chamber Implementation of a Coherent Ti/TiN Process for Sub-Half Micron Technologies" ("the Iacoponi paper"). Haskett Decl., Ex. 4 at 144 & Exhibit 1007. This paper was highly material to the patentability of the claims of the '592 patent in that it addressed several of the same concepts as the claims of the '592 patent, including the use of titanium and titanium nitride to

form contacts in semiconductor devices. Haskett Decl., Ex. 4 at 149. Mr. Iacoponi's decision to withhold from the USPTO dozens of highly material references that he obtained at the VMIC conferences, and particularly the reference that he himself had authored, demonstrate an intent to deceive the USPTO that rises to the level of inequitable conduct and therefore renders the '592 Patent unenforceable.

## III. ARGUMENT

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has held that amendment must be permitted unless there is an "apparent or declared reason" for denial. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend must be "applied with extreme liberality"). Moreover, the party opposing amendment bears the burden of showing why amendment should be denied, and the determination of whether to grant leave to amend should be performed with all inferences in favor of granting the motion. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 661 (Fed. Cir.) (burden on opposing party); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citations omitted) (inferences in favor of moving party).

The Ninth Circuit, and the Courts of this district, consider four factors to be relevant to the decision of whether to deny leave to amend: "undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *Board of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C05-04158 MHP, 2008 WL 624771 (N.D. Cal.) (quoting *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981)). None of these are present here.

### A. Samsung's Motion for Leave to Amend Is Timely.

This motion is timely made in accordance with the agreement of the parties, as set forth in the Stipulation Regarding Time for Amendment of Pleadings, which was aopted by the Court on March 6, 2009. *See* Dkt. Nos. 115, 117. As the Court has noted in the past, "[i]f a court has set a deadline for amending pleadings in a pre-trial scheduling order, and a party seeks leave to amend *before* that deadline," then the ordinary rule of extreme liberality applies, and "leave to amend should be 'freely given.…'" *Synopsys, Inc. v. Ricoh Co., Ltd.*, No. C03-2289 MJJ, 2005 WL

- 6 -

3370010, at *1 (N.D. Cal.) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607 (9th Cir. 1992)). The same principle should apply to the parties' agreement regarding the deadline in this case.

Furthermore, because Samsung is seeking leave to assert defenses and counterclaims of inequitable conduct, the timing of the amendments is particularly unassailable. Because inequitable conduct claims—which require heightened pleading specificity—are different in kind from the other defenses typically raised in patent cases, Courts have frequently observed that it is especially prudent for defendants to wait until there has been sufficient factual development before pleading the claim. *See Stanford*, 2008 WL 624771 at *7 ("Despite the availability of this documentary evidence, it was reasonable—indeed, perhaps necessary—for [defendant] to wait until after obtaining corroborating deposition testimony before attempting to amend answer [to plead inequitable conduct]"); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1997) (defendant "entitled to confirm factual allegations before amending to include the inequitable conduct defense").

Although Samsung has had some of the documentary evidence supporting its inequitable conduct allegations for the '990 Patent since the beginning of this case, it was prudent and defensible for Samsung to wait until AMD responded to Samsung's written discovery on the subject before pleading inequitable conduct. *See* Haskett Decl., Ex. 2, at 13-15 (AMD responses to interrogatories 33-35). Similarly, in the case of the '592 Patent, the key facts on which Samsung bases its inequitable conduct allegations did not come to light until Samsung took the deposition of John Iacoponi near the end of last year. It was only then that Samsung learned that the inventor of the '592 Patent had withheld a substantial number of highly material references from the USPTO. *See* Haskett Decl., Ex. 4 (excerpts of November 18, 2008 deposition of John Iacoponi). Accordingly, there can be no argument that Samsung's motion is untimely.

**B.     The Proposed Amendments Are Not Made in Bad Faith.**

There is no evidence that Samsung's motion for leave to amend is made in bad faith or for any "dilatory motive." *Cf. Stanford*, 2008 WL 624771 at *6. As explained above, the motion is

MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS
CV-08-0986-SI

made within the agreed-upon deadline for amending the pleadings, and, as there is ample time left before the discovery cutoff, the amendments will not cause any delay in the case schedule.

### C. Samsung's Inequitable Conduct Defenses and Counterclaims Are Not Futile.

Samsung's carefully pled inequitable conduct defenses and counterclaims cannot be deemed "futile," as that standard is met only "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Although AMD will undoubtedly dispute the ultimate merits of Samsung's inequitable conduct allegations, the resolution of that debate is for another time; for purposes of determining whether the "freely given" leave to amend should be granted, it is sufficient that Samsung has alleged that AMD failed to disclose material information to the USPTO with an intent to deceive. *See Golden Hour Data Sys., Inc. v. Health Svc. Integration, Inc.*, No. C06-7477 SI, 2008 WL 2622794 (N.D. Cal. 2008) (*prima facie* requirements for inequitable conduct shown when answer adequately pleads failure to disclose material information and intent to deceive).

### D. AMD Cannot Show That It Would Be Prejudiced by Samsung's Amendments.

There is no risk that AMD will be prejudiced by Samsung's proposed amendments, particularly given that fact discovery is not set close for nine months, expert discovery has not begun, and trial is still 19 months away. *See Golden Hour Data*, 2008 WL 2622794, *4 (finding no prejudice with only three months remaining for fact discovery and trial nine months away). Moreover, because AMD does not have any motions pending that would be affected by Samsung's proposed amendments, it would not suffer any procedural disadvantage by the amendments.

Finally, AMD has previously been provided with copies of all of the documents upon which Samsung is basing its claims of inequitable conduct. Therefore, AMD can claim no surprise at the substance of Samsung's allegations.

Because Samsung's motion is timely and AMD faces no undue prejudice, Samsung's motion for leave to amend should be granted.

MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS
CV-08-0986-SI

## IV. CONCLUSION

For all of the foregoing reasons, Samsung respectfully requests that the Court grant Samsung's Motion for Leave to Amend Answers and Counterclaims.

DATED: March 11, 2009             COVINGTON & BURLING LLP

By: */s/ Christine Saunders Haskett*
       CHRISTINE SAUNDERS HASKETT

Attorneys for Defendants and Counterclaimants SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, SAMSUNG TECHWIN CO., LTD., and SAMSUNG OPTO-ELECTRONICS AMERICA, INC.