| | |
|---|---|
| 1 | William H. Manning (*pro hac vice*) |
| | E-mail: WHManning@rkmc.com |
| 2 | Brad P. Engdahl (*pro hac vice*) |
| | E-mail: BPEngdahl@rkmc.com |
| 3 | Jacob S. Zimmerman (*pro hac vice*) |
| | E-mail: JSZimmerman@rkmc.com |
| 4 | Aaron R. Fahrenkrog (*pro hac vice*) |
| | E-mail: ARFahrenkrog@rkmc.com |
| 5 | **Robins, Kaplan, Miller & Ciresi L.L.P.** |
| | 2800 LaSalle Plaza |
| 6 | 800 LaSalle Avenue |
| | Minneapolis, MN 55402 |
| 7 | Telephone: 612-349-8500 |
| | Facsimile: 612-339-4181 |
| 8 | |
| | David E. Marder (*pro hac vice*) |
| 9 | E-mail: DEMarder@rkmc.com |
| | **Robins, Kaplan, Miller & Ciresi L.L.P.** |
| 10 | 800 Boylston Street, 25th Floor |
| | Boston, MA 02199 |
| 11 | Telephone: 617-267-2300 |
| | Facsimile: 617-267-8288 |
| 12 | |
| | John P. Bovich (SBN 150688) |
| 13 | E-mail: JBovich@reedsmith.com |
| | **Reed Smith LLP** |
| 14 | Two Embarcadero Center, Suite 2000 |
| | San Francisco, CA 94111 |
| 15 | Telephone: 415-543-8700 |
| 16 | Attorneys for Plaintiffs Advanced Micro Devices, Inc. and ATI Technologies ULC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al., | Case No. CV-08-0986-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | |

Case. No. CV-08-0986-SI

PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................................. 1

ARGUMENT ....................................................................................................................................... 1

I. THE CHENG '990 PATENT ................................................................................................ 1

    A. Samsung's Construction of "Consecutive Addresses" Improperly Equates Addresses and Memory Locations. ................................................................. 2

    B. Samsung's Inclusion of "Consecutive Memory Locations" in "Burst Mode" Conflicts with Claim Language. ............................................................... 3

    C. Samsung's Construction of "Sense Amplifier Enable / Disable" Directly Contradicts the Claims, the Specification, and the File History. ........................... 3

    D. Samsung's "Integrated Memory" Construction Ignores the Intrinsic Record. ..................................................................................................................... 5

II. THE SAKAMOTO '893 PATENT ........................................................................................ 6

    A. The "Channel-Free" Region/Zone Is Not Limited to the Pinch-Off Region. .......... 6

III. THE PATEL '830 PATENT ................................................................................................ 7

    A. The Gate Segments Must Share a Common Doped Region. ................................. 7

    B. "Electrically Connected Directly" Means No Intermediate Active Devices. ........ 7

    C. The "Vcc Current Bus" Is Internal, Not External. ................................................. 8

    D. "Independently Connected Electrically" Relates to Bus Connections, Not Inter-Segment Connections. .................................................................................... 9

IV. THE PURCELL '434 PATENT .......................................................................................... 10

    A. Adding "Optionally Includes Registers" to the Definition of "Arithmetic and Logic Unit" Is Irrelevant and Confusing. .......................................................... 10

    B. The '434 Claims Do Not Recite a Bus that "Does Not Modify" Values. ............... 11

V. THE PEDNEAU '200 PATENT .......................................................................................... 12

    A. A "Data Pattern" Does Not Exclude Addresses and Instructions. ......................... 12

VI. THE ORR '879 PATENT .................................................................................................. 12

    A. The '879 Claims Do Not Recite a "Personal Computer." ..................................... 12

CONCLUSION .................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
 448 F.3d 1324 (Fed. Cir. 2006) .................................................................................................. 2

*Broadcom Corp. v. Qualcomm, Inc.*,
 543 F.3d 683 (Fed. Cir. 2008) .................................................................................................. 13

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
 289 F.3d 801 (Fed. Cir. 2002) .................................................................................................... 6

*Elmer v. ICC Fabricating, Inc.*,
 67 F.3d 1571 (Fed. Cir. 1995) .................................................................................................... 7

*In re Johnston*,
 435 F.3d 1381 (Fed. Cir. 2006) ................................................................................................ 10

*Omega Eng'g, Inc. v. Raytek Corp.*,
 334 F.3d 1314 (Fed. Cir. 2003) ......................................................................................... 11, 12

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) ......................................................................................... passim

*Praxair, Inc. v. ATMI, Inc.*,
 543 F.3d 1306 (Fed. Cir. 2008) ............................................................................................ 5, 14

*Renishaw PLC v. Marposs Societa' Per Azioni*,
 158 F.3d 1243 (Fed. Cir. 1998) ................................................................................................ 13

*Rexnord Corp. v. Laitram Corp.*,
 274 F.3d 1336 (Fed. Cir. 2001) .................................................................................................. 1

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
 299 F.3d 1313 (Fed. Cir. 2002) ................................................................................................ 15

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................... 1, 4, 5

**Statutes**

35 U.S.C. § 112, ¶ 6 ...................................................................................................................... 13

# INTRODUCTION

AMD properly looks to the language of the claims first and foremost to determine the correct constructions. "Specifications teach" and "claims claim." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001). AMD's constructions uniformly apply this fundamental principle and do not limit the claims, as Samsung attempts to do, where there is no unequivocal definition (*i.e.*, lexicography) or disclaimer (*i.e.*, words of manifest exclusion) in the intrinsic record. AMD asks that the Court reject Samsung's flawed methodology and not limit the claims where no disclaimer or definition is found.

Samsung also cannot undercut the proper framework for claim construction, which starts with the claim language, by arguing that hand-picked extrinsic documents represent the "ordinary meaning" of claim terms. The terms should be given the scope reflected by the claim language, not the scope chosen by Samsung to avoid infringement.

# ARGUMENT

## I. THE CHENG '990 PATENT

Samsung's constructions for the "consecutive addresses," "burst mode" and "sense amplifier enable / disable" terms ignore clear claim language and exclude a preferred embodiment expressly described by the patentee as within the scope of the claims. Samsung erroneously equates "memory locations" with "addresses" and then, in disregard of the claims, specification, and file history, states that what must be consecutive are the memory locations, rather than the addresses for the memory locations. Samsung further excludes from all claims a preferred embodiment for selective sense amplifier enablement, although no disclaimer or definition excludes that embodiment. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (explaining that a construction that excludes a preferred embodiment from the claims is "rarely, if ever, correct"). Accordingly, because these errors infect Samsung's constructions related to these terms, the Court should reject Samsung's constructions and adopt AMD's, which preserve the claim scope the patentee intended.

**A.	Samsung's Construction of "Consecutive Addresses" Improperly Equates Addresses and Memory Locations.**

Samsung's construction of "consecutive addresses" and "consecutively addressed memory locations" confuses locations with addresses by reciting "[a] set of *addresses* . . . from *L1* to *Ln*." Samsung's construction says that "L1 to Ln" are addresses, not locations, which contradicts the claim language.

The terms "location" and "address" in the '990 claims have different meanings. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings."). Each recited "L," such as "L1," "L2," and "Ln," refers to a location. *See, e.g.*, '990 at 13:25 ("locations L1 and L2") (Ex. A).[1] The specification also uses "M" to refer to a location. Locations are not addresses, but are associated with an address. *Id.* at 3:61 ("location M-i has address i"). The specification shows that "location" and "address" are not interchangeable, because physically consecutive locations may not have consecutive addresses. *See id.* at Fig. 3A (showing location M-0 immediately adjacent to location M-8).

The "1," "2," and "n" in the claimed locations "L1," "L2," and "Ln" do not refer to addresses, but instead name the claimed locations: a "first" location, a "second" location, and so forth. The claims never recite "consecutive memory locations," but explicitly state in some cases that the recited locations must have consecutive addresses. Claim 8, for example, recites "a set of consecutively addressed memory locations." Claim 1, in contrast, does not require "L1" and "L2" to have consecutive addresses. Instead, claim 1 recites that L1 and L2 are "in the *sequence* of consecutive addresses," meaning that there could be other addresses between the addresses for L1 and L2. During prosecution, the applicants explained that "L1" and "L2" in claim 3, which depends from 1, need not have consecutive addresses. Amendment, Apr. 27, 1995, at 4 (Ex. H). The applicants explained that in claim 3, "L1" could have address 14 and "L2" could have

---

[1] Citations to "Ex. __" refer to exhibits attached to Dkt. #128, Declaration of Aaron R. Fahrenkrog. Citations to "Fahrenkrog Supp. Decl. Ex. __" refer to exhibits attached to the Supplemental Declaration of Aaron R. Fahrenkrog, submitted with this brief.

Case No. CV-08-0986-SI - 2 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

address 18. *Id.*

AMD's construction, "locations corresponding to *addresses following one after the other in order*," reflects the claim language that recites consecutive addresses, not consecutive locations. Accordingly, although Samsung has abandoned aspects of its prior construction, such as its inclusion of limitations pertaining to one memory cell and its attempt to import the claim 8 limitation "from L1 to Ln" into claims 1 and 20, its construction remains fatally flawed, so AMD's should be adopted.

**B. Samsung's Inclusion of "Consecutive Memory Locations" in "Burst Mode" Conflicts with Claim Language.**

Samsung again improperly equates "addresses" with "memory locations" by including "consecutive memory locations" in its construction for "burst mode." The claims never refer to "consecutive memory locations." Instead, the claims recite that the memory outputs "locations in the sequence of consecutive addresses" or "consecutively addressed memory locations." '990 at claims 1, 8, 20 (Ex. A). It is *addresses* that are consecutive, not memory locations.

AMD's construction reflects that the claimed "burst mode" is not limited to outputting physically consecutive locations. Claim 1 recites, for example, that the "burst mode . . . provides in response contents of a plurality of memory locations . . . in the sequence of consecutive addresses." *Id.* at claim 1. As discussed above, locations having consecutive addresses are not necessarily physically consecutive. *See* '990 at Fig. 3A (Ex. A).

**C. Samsung's Construction of "Sense Amplifier Enable / Disable" Directly Contradicts the Claims, the Specification, and the File History.**

Samsung's construction of "sense amplifier enable / disable" excludes a preferred embodiment from all claims, but no disclaimer or definition provides support for Samsung's argument. In fact, the file history shows that the applicant expressly intended to cover that embodiment in the claims.

In Samsung's construction, "sense amplifiers are *only* enabled when they are transferring data and are disabled when data is transferred to them from the memory array." Dkt. #172, Samsung Br. at 16-17. Claim 3 recites limitations on the sense amplifiers for locations L1 and

L2, but does not place limits on other sense amplifiers. Samsung's construction, in contrast, limits *all* sense amplifiers. No definition or disclaimer supports Samsung's narrow construction.

As shown in AMD's opening brief, claim 3 specifies that "sense amplifiers from which the contents of L1 are being transferred are enabled," and does not specify that a sense amplifier can *only* be enabled when it is transferring data. Similarly, claim 3 recites "the sense amplifiers to which the contents of L2 are being transferred are disabled," but does not recite that a sense amplifier *must be* disabled when data is being transferred to it.

The specification discloses an embodiment where sense amplifiers are enabled when they are not transferring data. That embodiment "enables, *in addition* to the sense amplifier circuit being read, a certain number of sense amplifier circuits to be read immediately after." '990 at 5:49-61 (emphasis added) (Ex. A).

During prosecution, the applicants explicitly stated that this embodiment, where sense amplifiers are enabled but not transferring data, was within the scope of issued claim 3. Amendment, Apr. 27, 1995, at 5 (Ex. H). The applicants explained that application claim 4 [issued claim 3] "is supported by the specification" where this embodiment is described. *Id.*; Application, Feb. 14, 1992, at 8-9 (Fahrenkrog Supp. Decl. Ex. 1); '990 at 5:49-61 (Ex. A). The patentee went on to explain:

> In some burst mode transfers, sense amplifier 330.R-2 (Fig. 3B) is enabled when the contents of location M-14 are being transferred from this sense amplifier to the memory output DOUT. At the same time, the contents of location M-18 (Fig. 3A) are being transferred to sense amplifier 330.L-2, but sense amplifier 330.L-2 is disabled.

Amendment, Apr. 27, 1995, at 5 (Ex. H). As explained in Section I.A above, L1 and L2 are not necessarily consecutive. In this example, M-14 represents L1 and M-18 represents L2. They are not at consecutive addresses.

Samsung does not even argue that the intrinsic record contains a definition or disclaimer that excludes this embodiment, despite the "highly persuasive evidentiary support" needed to exclude a preferred embodiment. *Vitronics*, 90 F.3d at 1583. Samsung points to another embodiment in support of its construction, but that part of the specification explains that "[i]n *some* embodiments, each sense amplifier is enabled only while its output is transferred." '990 at

Case No. CV-08-0986-SI - 4 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

2:38-44. The language "in some embodiments" cannot limit the claims. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323 (Fed. Cir. 2008) (finding that statements that "pertain to specific embodiments of the invention" are not limiting).

AMD's constructions related to selective enabling and disabling of sense amplifiers reflect the claim language and include the preferred embodiment that the patentees explained fell within the scope of each claim: during a burst mode operation at least one sense amplifier is enabled, at least one sense amplifier is disabled, and the status of any other sense amplifiers is not restricted.

### D. Samsung's "Integrated Memory" Construction Ignores the Intrinsic Record.

Samsung's construction of "integrated memory" reads "integrated" out of the patent. It achieves this by ignoring the language of the patent and improperly using extrinsic evidence.

Claim construction begins with the words of the claims themselves. Samsung makes no attempt to reconcile the scope of the "memory" of claims 1 and 8 with the "integrated memory" of claim 20. Instead, Samsung resorts to extrinsic evidence that it did not list in the Joint Claim Construction Statement. Where, as here, "the intrinsic record alone will resolve any ambiguity in a disputed claim term," then "expert testimony regarding the meaning of a claim is entitled to no weight." *Vitronics*, 90 F.3d at 1583-84. Samsung attempts to avoid the intrinsic record by choosing Intel documents to attempt to support its construction.

The '990 patent unambiguously demonstrates that "memory" means memory fabricated in one or more integrated circuits, and "integrated memory" means memory fabricated in a single integrated circuit. *See* '990 at claims 1, 6, 8, 14, 20 (Ex. A). Samsung argues that the patentee could have limited claim 20 to a single integrated circuit by using language similar to that found in claims 6 and 14, but did not. The absence of such language, however, supports AMD's argument. The patentee added this limitation in claims 6 and 14 because it was *necessary* to limit the broad term "memory." It was not necessary for claim 20 because "integrated memory" already limits memory to one fabricated in a single integrated circuit. Stripping "integrated" of this meaning renders "integrated" superfluous: "integrated memory" and "memory" would both mean memories fabricated in one or more integrated circuits.

The patentee describes a preferred embodiment as a single integrated circuit and explains

Case No. CV-08-0986-SI - 5 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

1 that the distinction between fabricating the memory as a single integrated circuit is important. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002). With this understanding of "integrated memory," it is clear that the term limits claim 20 by providing additional, important structure.

## II. THE SAKAMOTO '893 PATENT

### A. The "Channel-Free" Region/Zone Is Not Limited to the Pinch-Off Region.

Samsung has abandoned its "inversion zone" language. Accordingly, the main dispute is whether the "channel-free" area must conduct current. Samsung's construction is wrong because it takes a feature of transistors that are turned-on (having an area between the channel and the drain through which current flows), and applies it to claims that recite a turned-off transistor.

AMD has already established that Samsung's construction cannot be reconciled with the language of claim 4. Samsung did not attempt to rebut this evidence. Instead, Samsung argues that AMD's focus on the claim language "puts the cart before the horse." Samsung Br. at 21. Samsung ignores bedrock principles of claim construction, which emphasize that claim language is of primary importance. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Samsung relies exclusively on discussions of transistors that are turned on. Samsung cites statements referring to Figures 4 and 9, which depict areas without a channel designated as Lg1 and Lg2. These figures show transistors that are turned on. '893 at 3:67 – 4:3 (describing Figs. 4 and 9 as transistors with operating voltages supplied) (Ex. B). Accordingly, Samsung's statements do not support its construction of "channel-free" as that term is used in claim 4.

Claim 4 recites a "channel-free zone" that forms when the transistor is turned *off*. When the transistor is off, the area beneath the gate and between the source and drain (1) does not have a channel, and (2) does not conduct current. AMD's construction is correct because it is broad enough to encompass that area. Samsung's construction is incorrect because it requires that the turned-off transistor allow current to pass from the source to the drain, and would therefore exclude such an area. Further, it would result in a transistor that could never be turned off or achieve the goals of the invention.

Samsung relies heavily on the fact that "Lg2" was included in claims 1 and 2 during

1 prosecution. This does not support Samsung's construction. The patentee and the examiner
2 never discussed whether the channel-free area must always conduct current. In any event, the fact
3 that this language was removed only emphasizes that it was not helpful. Further, Samsung fails
4 to note that claim 4 describes a "channel-free" area, but never recited "Lg2."

**III. THE PATEL '830 PATENT**

**A. The Gate Segments Must Share a Common Doped Region.**

Samsung misconstrues AMD's argument, claiming that AMD seeks to limit claim 5 to the preferred embodiment. AMD discussed the specification because precedent requires that one look to the function of the invention to determine if a singular article ("a" doped region) should be given a singular construction. AMD's opening brief established that the function of reducing resistance described in the specification could be achieved only if the gate segments described in claim 5 are paired with a single common doped region. Samsung has failed to rebut this point.

Samsung's recitation of the difference between the patent claims overlooks the correct construction. Properly construed, claim 1 encompasses one or more capacitors, claim 2 requires multiple capacitors, and claim 5 requires that the capacitor have segmented gates independently connected to the bus and sharing a common doped region. Further, Samsung has offered no explanation for the meaning of a "segment" apart from a device with a common doped region.

Samsung is also wrong to downplay the claim construction rendered by the *Oki* Court. Although not arising from a separate *Markman* ruling, the Court did determine the meaning of claim 5. The Court did so because claims must be construed before determining their validity. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1574 (Fed. Cir. 1995).

**B. "Electrically Connected Directly" Means No Intermediate Active Devices.**

Samsung now defines a "direct" electrical connection as one without intermediate "devices" (as opposed to "active devices," the term used by AMD). Samsung's new proposal, where any intermediate "device" (including a resistor) renders two points "indirectly" connected, is unworkable.

AMD's opening brief established that the patentee distinguished art that included an intermediate active device (*i.e.*, transistor) during prosecution. Samsung fails to identify any

1  discussion of resistors during prosecution. Instead, Samsung relies upon its expert, who equates a
2  direct connection with a "point-to-point" connection, and then argues that such a connection
3  precludes *any* intermediate devices. This is irrelevant, because the intrinsic record does not
4  reference a "point-to-point" connection. Such unsupported statements by experts are routinely
5  rejected. *Phillips*, 415 F.3d at 1318. AMD has submitted a supplemental declaration by Dr.
6  Friedman ("Friedman Supp. Decl.") to rebut these arguments. As he explains, "point-to-point" is
7  a colloquial term with no firm meaning to those of ordinary skill. Friedman Supp. Decl. ¶6. The
8  correct issue is the meaning of "directly connected."

9  Nor does plain meaning support Samsung's argument. Transistors can stop or redirect
10 current, so a person of ordinary skill in the art would understand that they can interfere with a
11 direct connection. *Id*. at ¶5. However, such a person would not understand that the presence of a
12 resistor renders a connection "indirect," because a resistor merely causes a drop in voltage, and
13 does not stop or redirect the current like transistors can. *Id.* at ¶8.

14 Finally, Samsung's construction would result in significant confusion because every
15 connection includes resistance and could be thought of as a resistor. *Id.* at ¶ 7. Accordingly,
16 under Samsung's construction, no connection could ever be direct.

### C. The "Vcc Current Bus" Is Internal, Not External.

18 Samsung now admits that the bus is not external and asserts that its new construction
19 narrows the dispute to the issue of whether the Vcc bus supplies the "entire integrated circuit"
20 with current, or just the transistors and capacitors. In reality, Samsung's new construction would
21 create substantial confusion in the minds of the jurors about whether the bus is external.

22 As set forth in AMD's opening brief, the Vcc bus must be an on-chip structure. As such,
23 it is part of the integrated circuit. *See* Dkt. #131, Friedman Decl. ¶32. Samsung's new
24 construction is confusing because it states that the Vcc bus supplies current "to" the integrated
25 circuit, implying that the Vcc bus is not part of the integrated circuit.

26 In contrast, AMD's construction clarifies that the Vcc bus is internal and supplies certain
27 components in the integrated circuit. The construction only specifically identifies the
28 transistors/active devices and the capacitors as being supplied, because those are the only two

Case No. CV-08-0986-SI — - 8 - — PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

1  items specifically identified in the claims as being connected to the busses. Contrary to
2  Samsung's arguments, there is no reason to identify anything else that is connected to the busses.

3  More significantly, Samsung glosses over the fact that it has added an entirely new
4  requirement that the Vcc bus supply "*external* current," a vague and undefined term. If this term
5  connotes current carried by an external bus, the new language is simply Samsung's effort to cling
6  to its original, discredited construction that the bus must be external. Since the Vcc bus is
7  internal, it does not make sense to describe the current it supplies to the on-chip components as
8  "external." If Samsung implies that the Vcc bus supply must be at "external" levels, then
9  Samsung is importing an unclaimed limitation without intrinsic or extrinsic record support.

10  Samsung now proposes using the term "current" to describe what the Vcc bus supplies.
11  Current is simply charge (the term used by AMD) over time. Friedman Supp. Decl. ¶ 9. There is
12  no material difference between these two terms.

### D. "Independently Connected Electrically" Relates to Bus Connections, Not Inter-Segment Connections.

Samsung devotes most of its response to highlighting one potential difference between the two competing constructions. Specifically, AMD's construction does not exclude the possibility that gate segments are connected to each other, whereas Samsung's construction does.

Samsung's arguments have nothing to do with the term "independently connected" in the context of the claim, which describes connections to the *bus*. The context in which a claim term is recited must be considered. *Phillips*, 415 F.3d at 1314. Claim 5 does not address, and therefore does not exclude, connections to other segments.

Samsung's only explanation is that connecting the segments would not further one of the goals of the invention. In so doing, Samsung invites error. There is no requirement that every claim be construed to satisfy every objective of the invention. *Phillips*, 415 F.3d at 1327. Samsung focuses narrowly on maintaining capacitor operation if there is a defect in the gate oxide. The specification describes other defects that can be avoided by the segmented design, *e.g.*, defects in the insulating layer above the gate. *See* '830 at 5:33-35 (Ex. C). The segmented gate design can allow the segmented gates to continue to operate in the face of such a defect, even

Case No. CV-08-0986-SI - 9 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

1  if the gate segments were connected to each other. Friedman Supp. Decl. ¶11. Moreover, the
2  defects listed are exemplary only; the purpose of the segmented design is to overcome other
3  defects as well. *See* '830 at 5:33-35 (using the notation "e.g.") (Ex. C). The segmented design
4  overcomes other defects, like a manufacturing defect resulting in no connection from a segment
5  to the bus, even if gate segments were connected to each other. Friedman Supp. Decl. ¶12.

To the extent Samsung's construction requires a single connection from the gate to the bus ("*a* separate electrical path"), it is wrong. Although AMD agrees that Figure 16 depicts a single connection, this is no basis to limit the claims to such an embodiment. A segment does not depend on the connection from another segment to the bus if it has its own connection, even if that connection is made up of more than one line. The following illustrates gate segments that have multiple connections and are independently connected:



## IV. THE PURCELL '434 PATENT

### A. Adding "Optionally Includes Registers" to the Definition of "Arithmetic and Logic Unit" Is Irrelevant and Confusing.

The parties agree that an "arithmetic and logic unit" must be capable of performing both arithmetic operations and logic operations. The only issue remaining is whether Samsung's proposed phrase "optionally includes registers" should be included in the construction.

"Optionally includes registers" does not define the claim scope.[2] It does not affect infringement or validity. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) ("[O]ptional elements do not narrow the claim because they can always be omitted."). Instead, it risks jury

---

[2] Samsung admits that its parenthetical "(e.g., addition)" also "is merely exemplary rather than limiting." Samsung Br. at 33. Non-limiting, "exemplary" language only leads to confusion.

Case No. CV-08-0986-SI — 10 — PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

1  confusion, and does not provide clarity. A jury might think that an "arithmetic and logic unit"
2  *must* contain registers, which cannot be the proper construction, as Samsung admits. Samsung's
3  phrase does not limit the claims, cannot affect infringement or validity, but could confuse the
4  jury, so it should be rejected.

### B. The '434 Claims Do Not Recite a Bus that "Does Not Modify" Values.

Claims 1-4 recite the structural limitation "bus," but do not contain a functional limitation relating to whether the "bus" can modify values. The '434 specification and file history also do not address whether a "bus" can or cannot modify values. The intrinsic record does not support Samsung's proposed "does not modify" limitation, which is another attempt at Samsung's "direct physical path" construction which it asserts it has dropped. *See* Samsung Br. at 34 (explaining that Samsung's construction "sought to convey the fact that the values travel without modification from the carry save stage to the ALU").

Samsung must show a definition or disclaimer in the intrinsic record to support its negative limitation that the bus "does not modify the value from the carry save stage." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321-23, 1333 (Fed. Cir. 2003). No definition or disclaimer can be found, so there is no basis for limiting the claims.

Samsung's extrinsic definition of "bus" also does not specify that a "bus" never modifies the data it carries. Dkt. #163, Haskett Decl. Ex. 28. Nor does Dr. Wolfe's declaration. Dkt. #129, Wolfe Decl. ¶44, ¶47. That buses carry information does not imply conclusively that buses never can modify values. In fact, buses known in 1994 could change the order or position of bits on the bus, which might be considered "modifying" the value. Wolfe Supp. Decl. ¶4.[3] Extrinsic evidence cited by Samsung's expert for a different claim term describes a bus that "shifts" the value by one bit, which modifies the value the bus carries. *Id.*

AMD's construction does not address modification because the claims, specification, and file history do not address modification. Samsung proposed the negative limitation, and it must show the support for restricting the claims. It has not made that showing.

---

[3] Citations to "Wolfe Supp. Decl." refer to the Supplemental Declaration of Andrew Wolfe, Ph.D.

Case No. CV-08-0986-SI - 11 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

## V. THE PEDNEAU '200 PATENT

### A. A "Data Pattern" Does Not Exclude Addresses and Instructions.

The word "data" does not, on its face, exclude addresses and instructions. Wolfe Decl. ¶¶48-49. Samsung's extrinsic evidence confirms this meaning, explaining that "data" means "*a general term for information*; also used to distinguish input and output information from instructions." Jack Horn, Computer & Data Processing Dictionary & Guide at 35 (emphasis added) (Haskett Decl. Ex. 22). Without a definition or disclaimer that unequivocally limits "data" to exclude addresses and instructions, Samsung's negative limitation cannot be adopted. *Omega Eng'g*, 334 F.3d at 1321-33, 1333.

A "data pattern" is used by the key logic to prevent random data from accidentally raising the testing logic to a normal power state. *See, e.g.*, '200 at 4:23-35 (Ex. E). It makes no difference to the key logic whether the correct "data pattern" also represents an address, instruction, or something else. Wolfe Decl. ¶49.

Samsung's argument relies on the false premise that the same sequence of bits could never represent both an instruction *and* a key logic "data pattern." Samsung provides no support for this assumption. Samsung's reference to a dictionary definition of "bus" reflects its logical error—a computer may have separate buses for addresses and data to be processed, but that does not dictate that the "address bus" and "data bus" cannot carry identical bit sequences.

AMD's construction, "bit sequence," does not exclude the '200 patent's preferred embodiment. Wolfe Supp. Decl. ¶5. A "bit sequence" is a sequence of binary digits (0s and 1s). *Id.* The sequence could be input serially or in parallel. *Id.* Samsung's argument regarding the preferred embodiment only distracts from the dispositive issue—the '200 intrinsic record provides no basis to exclude addresses and instructions from the meaning of "data."

## VI. THE ORR '879 PATENT

### A. The '879 Claims Do Not Recite a "Personal Computer."

The asserted claims do not recite a "personal computer," and "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (quotation omitted). The '879 claims recite only a

"processing unit" that reads "programming instructions" from memory to provide user interface operations. That is, the claims recite a graphics subsystem, not the device where the subsystem is found. A complete device, which could be a personal computer, is not claimed, and should not be read into "programming instructions" that produce a "control panel."

"When the claim addresses only some of the features disclosed in the specification, it is improper to limit the claim to other, unclaimed features." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 689 (Fed. Cir. 2008) (quotation omitted). In *Broadcom* the Federal Circuit refused to limit a claimed subsystem to require another structure found in the complete device described in the specification. *Id.* at 689-90. Here, Samsung asks this Court to limit the claimed subsystem to an *entire* complete device, a "personal computer," that Samsung alleges is taught in the specification. *Broadcom* does not permit Samsung's construction.

The claim limitation "provide a control panel" cannot limit the claims to a "personal computer," because "provide a control panel" is a functional limitation, not a structural limitation. Any structure from the specification cannot be read into a functional limitation except under 35 U.S.C. § 112, ¶ 6, which does not apply here. Without a structural hook in the claims, a "personal computer" cannot be a limitation. *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248-49 (Fed. Cir. 1998) ("Without any claim term that is susceptible of clarification by the written description, there is no legitimate way to narrow the property right.").

The only structural limitations in claims 11-24 are "processing unit," "memory that stores programming instructions," and "storage means for storing programming instructions." The disclosed embodiments for these structures are expressly not limiting:

| Structural Claim Limitation | Embodiments Described |
|---|---|
| "processing unit" (claims 11-24) | "The central processing unit 42 may include a microprocessor, microcontroller, a digital signal processor, a microcomputer, or any other means for processing digital information based on programming instructions." '879 at 2:53-56 (Ex. F). |
| "memory" (claims 11-16) or "storage means" (claims 17-24) | "The memory may be cache memory, hard drive, floppy disk, CD ROM, or any other means for storing digital information." '879 at 2:56-60 (Ex. F). |

These statements allow "any other means" for processing and storing. They show that no additional structure, and certainly not a "personal computer," can be read into the claims.

The intrinsic record does not contradict Dr. Wolfe's opinion that one of skill would understand that a "digital signal processor" would not be a "central processing unit" in a personal computer.[4] Wolfe Decl. ¶53. The specification teaches that an embodiment's "*central* processing unit 42 may include a microprocessor, microcontroller, a digital signal processor, a microcomputer, *or* any other means for processing digital information based on programming instructions." '879 at 2:53-56 (Ex. F). The "or" in this list means that the "central processing unit" could be *any* of the listed devices, such as a digital signal processor. A digital signal processor would not represent the *central* processing unit of a "personal computer," but could represent the central processing unit of a cell phone or television. Wolfe Decl. ¶53. This disclosure demonstrates to one of skill that the claimed invention can be used in systems other than personal computers. *Id.*

The specification's description of a "computer" (it never says "personal computer") cannot limit the claims, because a "computer" is described as a preferred embodiment, not as the invention as a whole. *Praxair*, 543 F.3d at 1323 (finding that statements that "pertain to specific embodiments of the invention" are not limiting). The "background on the display" where the video is shown "*may* be the desktop portion of the computer's display." '879 at 3:7-10 (emphasis added) (Ex. F). This permissive language confirms that the claims are not limited to a "computer." The specification also discloses an embodiment with a "control panel" that does not refer to a "computer," let alone a "personal computer," at all. *Id.* at 3:28-45.

The Henley '417 reference, cited during prosecution, does not teach the display of video on a personal computer. Wolfe Decl. ¶56. The reference teaches a networked system for "Video on Demand," where users access video on televisions and set-top boxes, for example in hotel rooms. '417 at 2:28:32; 12:48-50 (Haskett Decl. Ex. 9); Wolfe Supp. Decl. ¶6. Henley teaches a

---

[4] AMD offered Dr. Wolfe's expert testimony on this point precisely as contemplated by *Phillips*: "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art." 415 F.3d at 1318. Samsung offers only attorney argument in rebuttal.

Case No. CV-08-0986-SI - 14 - PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

user interface "control panel" for controlling the video. '417 at 19:11-28; Wolfe Supp. Decl. ¶6. The video and user interface are provided on the television or set-top box, not on a personal computer. '417 at 18:33-44; Wolfe Supp. Decl. ¶6. The examiner cited Henley's television "control panel," showing that he did not limit the '879 claims to personal computers. *See, e.g.*, Office Action, Dec. 24, 1998, at 3-4 (Fahrenkrog Supp. Decl. Ex 2); Wolfe Supp. Decl. ¶7.

The claims control the scope of the '879 invention. They recite a graphics subsystem, and do not restrict where that subsystem can be used. If Samsung's approach to claim construction was correct, there would be no need for claims, because courts would read in all limitations found in the specification. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002). A preferred "computer" device cannot be read into the claimed subsystem that reads "programming instructions" from memory to "provide a control panel."

## **CONCLUSION**

The language of the claims themselves carries the most weight in claim construction. AMD follows this rule. Samsung's constructions do not recognize this fundamental principle. AMD respectfully requests that the Court enter the proposed Order submitted with AMD's opening brief that contains AMD's proposed constructions (Dkt. #127-2).

DATED: April 8, 2009 **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____
William H. Manning (*pro hac vice*)

**ATTORNEY FOR PLAINTIFFS
ADVANCED MICRO DEVICES, INC. AND
ATI TECHNOLOGIES ULC**