1   William H. Manning (*pro hac vice*)
    E-mail: WHManning@rkmc.com
2   Brad P. Engdahl (*pro hac vice*)
    E-mail: BPEngdahl@rkmc.com
3   Jacob S. Zimmerman (*pro hac vice*)
    E-mail: JSZimmerman@rkmc.com
4   Aaron R. Fahrenkrog (*pro hac vice*)
    E-mail: ARFahrenkrog@rkmc.com
5   **Robins, Kaplan, Miller & Ciresi L.L.P.**
    2800 LaSalle Plaza
6   800 LaSalle Avenue
    Minneapolis, MN  55402
7   Telephone:   612-349-8500
    Facsimile:   612-339-4181
8
    David E. Marder (*pro hac vice*)
9   E-mail: DEMarder@rkmc.com
    **Robins, Kaplan, Miller & Ciresi L.L.P.**
10  800 Boylston Street, 25th Floor
    Boston, MA 02199
11  Telephone:   617-267-2300
    Facsimile:   617-267-8288
12
    John P. Bovich (SBN 150688)
13  E-mail: JBovich@reedsmith.com
    **Reed Smith LLP**
14  Two Embarcadero Center, Suite 2000
    San Francisco, CA 94111
15  Telephone:   415-543-8700

16  Attorneys for Plaintiffs Advanced Micro
    Devices, Inc. and ATI Technologies ULC

17

18                     UNITED STATES DISTRICT COURT

19                  NORTHERN DISTRICT OF CALIFORNIA

20                      SAN FRANCISCO DIVISION

21

22   ADVANCED MICRO DEVICES, INC.,          Case No.  CV-08-0986-SI
     et al.,
23                                          **SUPPLEMENTAL DECLARATION OF**
                      Plaintiffs,           **ANDREW WOLFE, PH.D. IN SUPPORT**
24                                          **OF PLAINTIFFS' REPLY CLAIM**
            v.                              **CONSTRUCTION BRIEF**
25
     SAMSUNG ELECTRONICS CO., LTD.,
26   et al.,

27                    Defendants.

28

     Case. No.  CV-08-0986-SI                       SUPPLEMENTAL DECLARATION OF
                                                      ANDREW WOLFE, PH.D.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1      1.      I make all of the statements in this Declaration of my own personal knowledge and

2    in accord with 28 U.S.C. § 1746.

3      2.      This Declaration supplements my Declaration in Support of Plaintiffs' Opening

4    Claim Construction Brief (Dkt. #129), submitted on March 16, 2009.

5      3.      I submit this Declaration to respond to statements made in Defendants' and

6    Counterclaimants' Responsive Claim Construction Brief (Dkt. #172).

## I.    CLAIM TERMS AT ISSUE IN THE PURCELL '434 PATENT

### A.    "Bus Coupling Said Carry Save Stage to Said ALU"

9      4.      Samsung has argued that a bus necessarily "does not modify" the values it carries.

10   This is not an accurate statement of the state of the art in 1994, when the '434 patent was filed.

11   Buses did sometimes change the order or position of bits, which some might consider as

12   modifying the values contained on the bus.   For example, a system depicted in Dr. Pashley's

13   Exhibit C [Dkt. #164-4, SAMAMD0325653] connects line $A_1$ on one side of the bus to $A_0$ on the

14   other side of the bus and so forth for all 16 lines shown.   This could be interpreted as shifting the

15   bit positions on the bus and thus modifying the value on the bus.   It was a common technique at

16   the time of the invention as it is today.   The '434 patent does not claim or describe whether or not

17   the "bus coupling said carry save stage to said ALU" can or cannot modify the values it carries.

## II.    CLAIM TERMS AT ISSUE IN THE PEDNEAU `200 PATENT

### A.    Data Pattern

20     5.      Samsung has argued that a "bit sequence" excludes a preferred embodiment of a

21   "data pattern" described in the '200 specification.   "Bit sequence" refers, however, to any ordered

22   set of bits, such as, for example, 01100100.   These bits can be transferred serially or in parallel

23   and still be a bit sequence since each represents a specific position in a known order.   All numbers

24   work that way.   The number 1492 is a sequence of digits because the position of each is important

25   to understand what number is being represented.   I can copy that number out of a document all at

26   once and paste it into a spreadsheet and it still represents a sequence of digits.   A bit sequence is

27   simply a sequence of binary digits (0s and 1s).   One of ordinary skill would understand that a "bit

28

SUPPLEMENTAL DECLARATION OF
ANDREW WOLFE, PH.D.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1  sequence" does not exclude a sequence of bits that could be input in parallel. A "bit sequence"

2  can be input either serially or in parallel.

3  **III.    CLAIM TERMS AT ISSUE IN THE ORR `879 PATENT**

4      **A.    Control Panel**

5      6.    U.S. Patent No. 5,761,417 to Henley et al., cited in the '879 patent and asserted by

6  the examiner, does not support limiting all '879 claims to a "personal computer" just because

7  personal computers may be used as parts of the "media streamer" system described by Henley. A

8  "media streamer" system comprised of many networked computers that are used to control, store,

9  and provide video to end-users on televisions is not a "personal computer" and would not have

10  been understood that way in 1997 or now. Henley teaches that the "media streamer" can be used

11  for "Video on Demand" such as pay-per-view movies that are provided to televisions in hotel

12  rooms. '417 at 2:28-32, 12:48-50 ("As indicated above, media streamer 10 delivers video streams

13  to various outputs such as TV sets and set top boxes attached via a network, such as a LAN,

14  ATM, etc."). Furthermore, Henley's control panel is not even provided on the media streamer but

15  on a separate client control system, i.e. a television. Henley explicitly teaches that the software

16  for the user interface "control panel" for controlling video is not provided on any personal

17  computer, but instead is provided on the "client control system," such as a television. '417 at

18  18:34-46 ("By providing the interfaces on the client control systems, instead of on media streamer

19  10, the separation of application software from media streamer 10 is achieved."). Henley's user

20  interface, provided on a television, "resembles the control panel of a video cassette recorder,

21  which has control buttons such as Play, Pause, Rewind, and Stop." '417 at 19:11-28.

22      7.    The examiner cited Henley's television control panel against the "control panel"

23  recited in the '879 claims. Office Action, Dec. 24, 1998, at 3-4; Office Action, July 7, 1999, at 3-

24  4; Office Action, Sept. 13, 2002, at 4-6; Office Action, Mar. 27, 2003, at 4-6. One of ordinary

25  skill would understand this to mean that the term "control panel," as recited in the '879 claims, is

26  not limited to a user interface provided on a personal computer.

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of April, 2009, at San Francisco, California.

Andrew Wolfe, Ph.D.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS