William H. Manning (*pro hac vice*)
E-mail: WHManning@rkmc.com
Brad P. Engdahl (*pro hac vice*)
Email: BPEngdahl@rkmc.com
Andrew M. Kepper (*pro hac vice*)
E-mail: AMKepper@rkmc.com
Angela M. Munoz-Kaphing (*pro hac vice*)
E-mail: AMMunoz@rkmc.com
**Robins, Kaplan, Miller & Ciresi L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

John P. Bovich (SBN 150688)
E-mail: JBovich@reedsmith.com
**Reed Smith L.L.P.**
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111
Telephone: 415-543-8700
Facsimile: 415-391-8269

Attorneys for Plaintiffs
Advanced Micro Devices, Inc., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>    Defendants. | Case No. CV-08-0986-SI<br><br>**PLAINTIFFS' OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS**<br><br>Date:        May 8, 2009<br>Time:        9:00 am<br>Courtroom: 10, 19th Floor<br>Judge:       The Honorable Susan Illston |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Introduction | 1 |
| II. | Factual Background and Procedural History | 2 |
| | A. Facts Relating To The Cheng '990 Patent | 2 |
| | B. Facts Relating To The Iacoponi '592 Patent | 4 |
| III. | Argument | 5 |
| | A. Samsung's Proposed Amendment Is Futile Because Samsung Cannot State A Claim For Inequitable Conduct | 6 |
| |    1. Cheng '990 Patent | 6 |
| |    2. Iacoponi '592 Patent | 8 |
| | B. Samsung Fails to Plead Inequitable Conduct With Particularity | 10 |
| |    1. Samsung fails to allege, with particularity, the materiality of the asserted VMIC references for the Iacoponi '592 patent. | 11 |
| |    2. Samsung fails to properly allege intent to deceive for the Cheng '990 patent and the Iacoponi '592 patent. | 12 |
| IV. | Conclusion | 13 |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aisenman v. City & County of San Francisco*,
2005 WL 43497 (N.D. Cal. Jan. 6, 2005) ................................................................. 6, 7, 9, 10

*ASM Am., Inc. v. Genus, Inc.*,
2002 WL 24444 (N.D. Cal. Jan. 9, 2002) .......................................................................... 11

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988) ..................................................................................... 1, 6

*Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*,
482 F.3d 1347 (Fed. Cir. 2007) ......................................................................................... 10

*CNET Networks, Inc. v. Etilize Inc.*,
584 F. Supp. 2d 1260 (N.D. Cal. 2008) .............................................................................. 5

*Collaboration Props., Inc. v. Tandberg ASA*,
2007 WL 205065 (N.D. Cal. Jan. 25, 2007) ................................................................ 11, 13

*Competitive Techs. v. Fujitsu Ltd.*,
286 F. Supp. 2d 1118 (N.D. Cal. 2003) ............................................................................ 11

*Davis v. Astrue*,
250 F.R.D. 476 (N.D. Cal. 2008) ........................................................................................ 5

*Energy Absorption Sys., Inc. v. Roadway Safety Ser. Inc.*,
1993 WL 389014 (N.D. Ill. Sept. 16, 1993) ................................................................. 2, 12

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,
350 F.3d 1327 (Fed. Cir. 2003) ..................................................................................... 2, 10

*Fori Automation, Inc. v. Durr Sys., Inc.*,
586 F. Supp. 2d 867 (E.D. Mich. 2008) .............................................................................. 1

*Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*,
2008 WL 901175 (E.D. Tex. Mar. 31, 2008) ..................................................................... 8

*Hill-Rom Services, Inc. v. Verses Tech., Inc.*,
2006 WL 1540851 (M.D.N.C. June 2, 2006) ................................................................... 11

*In re Fritz Companies Securities Litigation*,
282 F.Supp.2d 1105 (N.D. Cal. 2003) .............................................................................. 10

*In re Worlds of Wonder Sec. Litig.*,
694 F. Supp. 1427 (N.D. Cal. 1988) ............................................................................ 11, 13

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ............................................................................................. 5

*Ormco Corp. v. Align Tech., Inc.*,

| | |
|---|---|
| | 2008 WL 4501805 (C.D. Cal. Oct. 3, 2008)..................................................................5 |
| | *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008) .................................................................................8 |
| | *Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 2006 WL 3826726 (N.D. Cal. Dec. 27, 2006)..........................................................9 |
| | *Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................................................................ 6, 8, 9, 10 |
| | *Sun Microsys., Inc. v. Datram Corp.*, 1997 WL 50272 (N.D. Cal. Feb. 4, 1997) ................................................................10 |
| | *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008) ...............................................................................12 |
| | *Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2007) ..................................................................................6 |
| | *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1315 (Fed. Cir. 2008) ...............................................................................7 |
| | *The Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008) ........................................................5 |
| | **Statutes, Regulations and Rules** |
| | 35 U.S.C. § 102(e) ...........................................................................................................7 |
| | 37 C.F.R. § 1.56 (1992) ...................................................................................................8 |
| | 37 C.F.R. § 1.97(b)-(d) ....................................................................................................8 |
| | 37 C.F.R. § 1.98..............................................................................................................8 |
| | Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 6 |
| | Fed. R. Civ. P. 15............................................................................................................5 |
| | Fed. R. Civ. P. 9(b) ....................................................................................... 2, 10, 11, 12, 13 |

## I. Introduction

"[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). Symptoms of this plague are apparent in this case. Samsung seeks leave of this Court to amend its Answers and Counterclaims to include new – and wholly unsupported – inequitable conduct allegations. Favoring quantity over quality, Samsung adopts a shotgun approach to pleading inequitable conduct, accusing AMD of withholding *sixty-five* different prior art references from the Patent and Trademark Office ("PTO") during the prosecution of U.S. Patent No. 5,545,592 ("Iacoponi '592 patent") and U.S. Patent No. 5,559,990 ("Cheng '990 patent"). However, Samsung's cavalier accusations would only confuse the issues and waste judicial resources with regard to both patents at issue.

First, as to AMD's Cheng '990 patent, Samsung claims that the applicants committed "inequitable conduct" by failing to disclose a patent issued to a different AMD inventor. But strikingly, Samsung ignores that the applicants completely discharged their duties by disclosing the *application* for that patent – an application with no material differences from the issued patent. Samsung's attempt to inject an inequitable conduct claim under these circumstances would only waste the time and resources of the Court and the parties.

Second, Samsung claims that the applicant for the Iacoponi '592 patent somehow committed inequitable conduct by failing to disclose sixty-four articles from several industry conferences. Samsung, however, has not shown – and cannot show – the requisite materiality for any of these references, much less that the applicant improperly failed to disclose them.

Courts have a variety of ways to dispose of baseless inequitable conduct claims before they infect the case. *See, e.g., Fori Automation, Inc. v. Durr Sys., Inc.*, 586 F. Supp. 2d 867, 870-72 (E.D. Mich. 2008) (denying defendant's motion to amend as futile because the defendant could rely on no set of alleged facts to prove its inequitable conduct

allegations); *Energy Absorption Sys., Inc. v. Roadway Safety Ser. Inc.*, 1993 WL 389014, at *2 (N.D. Ill. Sept. 16, 1993) (striking portions of the defendant's affirmative defense and counterclaim alleging inequitable conduct because defendant failed to satisfy Fed. R. Civ. P. 9(b)); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (affirming the district court's dismissal of an inequitable conduct allegation under Fed. R. Civ. P. 12(b)(6)). Even under the liberal standard for leave to amend, the Court should deny Samsung's motion as futile because the proposed amendment fails to state a claim under Rule 12(b)(6) and lacks the requisite particularity for pleading inequitable conduct under Rule 9(b). The Court may also choose to allow Samsung's proposed amendments and then dismiss Samsung's inequitable conduct defenses and counterclaims under Rule 12(b)(6) and/or Rule 9(b).

## II. Factual Background and Procedural History

AMD has asserted seven patents against Samsung in this case. (Dkt. ##1, 23). On March 11, 2009, Samsung filed its Motion for Leave To Amend Answers and Counterclaims. (Dkt. #120). In its motion, Samsung seeks leave to allege that the Cheng '990 patent applicants engaged in inequitable conduct by withholding U.S. Patent No. 5,285,421 ("Young '421 patent") from the PTO. (Samsung Brief at 3). Samsung also seeks leave to allege that the Iacoponi '592 patent applicants engaged in inequitable conduct by withholding sixty-four different references from the PTO. (*Id*. at 5-6).

### A. Facts Relating To The Cheng '990 Patent

The Cheng '990 patent matured from an application that was a continuation of an application filed with the PTO on February 14, 1992. Kepper Decl. Ex. 1 at 1 (Cheng '990 File History). The named inventors on the Cheng '990 application were Pearl P. Cheng, Michael S. Briner and James C. Yu, all AMD employees. *Id.* All claims of the Cheng '990 patent are entitled to the benefit of the February 14, 1992 filing date of the parent application. *Id.*; 35 U.S.C. §120.

At the same time, two other AMD patent applications were also before the PTO, where the named inventor was a different AMD employee: Elvan Young. One of the

Case No. CV-08-0986-SI — 2 — OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS

applications, number 07/558,033 ("Young '033 application"), would eventually become U.S. Patent No. 5,280,594 ("Young '594 patent"). Kepper Decl. Ex. 2 (Young '594 patent). The second application, number 07/557,899 ("Young '899 application") was eventually abandoned. *Id.*, Ex. 3 (Young '421 patent). However, a file wrapper continuation of the Young '899 application, application number 07/865,812 ("Young '812 application") was filed on March 31, 1992 and would become U.S. Patent No. 5,285,421 ("Young '421 patent"). *Id.*, Ex. 4 at 1 (Young '421 File History).

Importantly, the Cheng '990 patent applicants submitted an Information Disclosure Statement ("IDS") that disclosed *both* the Young '033 *and* the Young '899 patent applications to the PTO. *Id.*, Ex. 1 at 2, ¶¶ 2-3 (Cheng '990 File History). The examiner, however, refused to consider the applications, noting that the Cheng '990 applicants could reference the patent applications in the "Background of the Invention" section of their application. *Id.*, Ex. 1 at 3, ¶ 16 (Cheng '990 File History). The applicants responded to the examiner's refusal by *again* requesting consideration of the Young '033 and Young '899 applications:

> On April 17, 1992, Applicants filed an Information Disclosure Statement listing among other things, U.S. patent applications 07/558,033 and 07/557,899. Per the Office Action, paragraph 16, the Examiner did not consider these patent applications apparently on the grounds that the patent applications were not referenced in Applicants' "Background of the Invention." However, 37 C.F.R. §§ 1.56, 1.97 and 1.98 that govern filing of information disclosure statements do not require that patent applications cited in such statements be referenced in the Background of Invention. Therefore, Applicants respectfully request consideration of patent applications 07/558,033 and 07/557,899.

*Id.*, Ex. 1 at 6-7 (Cheng '990 File History). Thereafter, the examiner again refused to consider the Young '899 application. *Id.*, Ex. 1 at 9, ¶ 11 (Cheng '990 File History).

On January 18, 1994, the Young '594 patent issued. *Id.*, Ex. 2 (Young '594 patent). On February 8, 1994, the Young '421 patent issued. *Id.*, Ex. 3 (Young '421 patent). The Cheng '990 patent applicants filed an additional IDS on March 21, 1994 disclosing the recently issued Young '594 patent to the examiner. *Id.*, Ex. 1 at 10, ¶ 1 (Cheng '990 File History). The Cheng '990 patent issued on September 24, 1996. *Id.*,

Ex. 5 (Cheng '990 patent).

The issued Young '421 patent was not cited to the examiner, but is substantively identical to the Young '899 application, which the Cheng '990 patent applicants disclosed to the examiner. The Young '421 patent matured from a file wrapper continuation of the Young '899 application, and therefore started with a disclosure identical to the Young '899 application. Kepper Decl. Ex. 3 (Young '421 patent). Likewise, the Young '899 application and the issued Young '421 patent are substantively identical, the main difference being the addition of two figures and a description of those figures that were added to the Young '421 patent at the request of the examiner and did not constitute new matter.[1]

### B. Facts Relating To The Iacoponi '592 Patent

Samsung deposed John Iacoponi, the named inventor of the Iacoponi '592 patent, on November 18, 2008. During the deposition, Samsung spent a significant amount of time questioning Mr. Iacoponi about the VLSI Multi-Level Interconnect Conferences ("VMIC conferences"), including his attendance, his practice of retaining conference materials, and his knowledge of several VMIC conference papers. Kepper Decl., Ex. 6 (Deposition Tr. at 30-38, 47-51, 128-167). During the deposition, Samsung introduced four exhibits, which included the table of contents for various VMIC conferences, and excerpts of several VMIC conference papers. (*Id.* at 127:7–162:24). Samsung now accuses Mr. Iacoponi of inequitable conduct relating to three of these VMIC conference papers.

Importantly, Mr. Iacoponi stated that he had not seen and was unable to recognize

---

[1] During prosecution of the Young '899 application, the examiner required the inclusion of a figure of a timing diagram to illustrate the operation of the disclosed system. *Id.*, Ex. 4 at 3, ¶ 3 (Young '421 File History). In response, the applicants added figures 7a and 7b, along with the associated description of these figures that appears at column 3, line 36-42 and column 5, line 29-48 of the Young '421 patent. *Id.*, Ex. 4 at 4-5, 8-9 (Young '421 File History). When the examiner instructed the applicants to include a timing diagram, he cautioned them against adding new matter. *Id.*, Ex. 4 at 3, ¶ 3 (Young '421 File History). The applicants added the timing diagram and affirmed that no new matter was added. *Id.*, Ex. 4 at 9 (Young '421 File History). The examiner reviewed and allowed the amendments. *Id.*, Ex. 4 at 15 (Young '421 File History).

two of the three papers. (*Id.* at 152:22–153:3) ("Q. So do you recognize any portion of Exhibit 1008? A. I recognize what appears - - it appears that pages 5 and 6 and 7 are - - they are the table of contents of the VMIC, VMIC 1994 conference. I don't recall having seen this before or anything in this document before."); (*Id.* at 161:8-10) ("A. Do you think you have ever seen this article before? A. I don't recall seeing it, no."). Similarly, Mr. Iacoponi explained that his practice upon receipt of VMIC conference materials was simply to put such materials up on a shelf and "leave them there." (*Id.* at 33:16-20, 35:13-16, 36:20). As to the article he had seen (because he co-authored it), Mr. Iacoponi stated that he did not recall whether he had provided the article to patent prosecution counsel. (*Id.* at 146:5-9). Furthermore, Mr. Iacoponi testified that the article was relevant to the Iacoponi '592 patent only to the extent that it "mentions" the use of titanium nitride in contacts. (*Id.* at 149:4-25). During the deposition, Samsung did not ask Mr. Iacoponi about the remaining sixty-one VMIC conference papers that they now accuse him of withholding from the PTO with intent to deceive.

### III. Argument

Although the Federal Rules of Civil Procedure allow for a liberal policy of amendment, this Court "may decline to grant leave where there is 'any apparent or declared reason' for doing so." *The Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 2008 WL 624771, at *6 (N.D. Cal. Mar. 4, 2008) (citation omitted); *see also* Fed. R. Civ. P. 15. Four factors are relevant to the determination whether a motion for leave to amend should be denied: "bad faith, undue delay, prejudice to the opposing party, and the futility of the amendment." *Ormco Corp. v. Align Tech., Inc.*, 2008 WL 4501805, at *2 (C.D. Cal. Oct. 3, 2008). Importantly, futility alone can justify denial of a motion to amend. *See CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d 1260, 1267 (N.D. Cal. 2008); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). An amendment is futile "if it will be subject to dismissal or summary judgment." *Davis v. Astrue*, 250 F.R.D. 476, 482 (N.D. Cal. 2008).

Here, Samsung's proposed amendment is futile as to both the Cheng '990 patent

and the Iacoponi '592 patent, and it should thus be denied on that basis alone. Specifically, Samsung's proposed amendments are futile because they (1) fail to state a claim, and (2) fail to allege inequitable conduct with sufficient particularity. Given the complete lack of any basis upon which Samsung's inequitable conduct claims are founded and Samsung's failure to adequately plead inequitable conduct, the Court should deny Samsung's motion or dismiss Samsung's inequitable conduct claims altogether. *See Burlington*, 849 F.2d at 1422 ("A patent litigant should be made to feel . . . that an unsupported charge of inequitable conduct in the Patent Office is a negative contribution to the rightful administration of justice.").

### A. Samsung's Proposed Amendment Is Futile Because Samsung Cannot State A Claim For Inequitable Conduct

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the pleading is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court may consider documents outside the pleadings when deciding whether the movant has failed to state a claim, so long as the documents are either referenced in the pleading or are in the public record. *Aisenman v. City & County of San Francisco*, 2005 WL 43497, at *3 (N.D. Cal. Jan. 6, 2005). Dismissal is appropriate where allegations are contradicted by the evidence or unsupported by fact. *Sprewell*, 266 F.3d at 988.

#### 1. Cheng '990 Patent

Fundamentally, Samsung's allegations of inequitable conduct, based on a purported failure to disclose the Young '421 patent, are futile because the applicants *fulfilled their disclosure obligations* with regard to that patent. Indeed, in its Proposed Amended Answer, Samsung admits that the Cheng '990 patent applicants disclosed the Young '899 application to the PTO. (Proposed Amended Answer at 11:22-25) ("Attorney

Case No. CV-08-0986-SI - 6 - OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS

Shenker submitted, on behalf of the named inventors, an Information Disclosure Statement and accompanying form PTO-1449 that identified . . . the '899 Patent Application.").

By submitting the parent Young '899 application, the Cheng '990 patent applicants also discharged their duty of disclosure as to the Young '421 patent. The Young '899 application and the Young '421 patent are identical in their disclosures *in all material respects*. The only substantive difference between the application and the issued patent is that the latter was amended during prosecution, primarily to include two extra figures and related description. Kepper Decl. Ex. 4 at 4-5, 8-9 (Young '421 File History); *Compare* Kepper Decl. Ex. 7 (Young '899 Application) *and* Kepper Decl. Ex. 3 (Young '421 Patent); *see also* Kepper Decl. Ex. 8 (highlighting in yellow the minor differences between the disclosed Young '899 application and the issued Young '421 patent).[2]

Samsung cannot (and has not attempted) to argue that these amendments are somehow material. These amendments to the Young '421 patent were made during the prosecution of the Young '812 application. *See* Kepper Decl. Ex. 4, at 4-18 (Young '421 File History). The Young '812 application was filed on March 31, 1992 – after the February 14, 1992 effective filing date for all of the claims of the Cheng patent. *Id.* As such, these new figures and passages do not qualify as prior art against the Cheng '990 patent claims. 35 U.S.C. § 102(e); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1315, 1326 (Fed. Cir. 2008) (reasoning that references dated after the patent's effective filing date are not prior art).[3] Since they do not qualify as prior art, the Cheng

---

[2] The Court is allowed to consider documents relied on in Samsung's Proposed Amended Answer, as well as public documents, when determining whether there is a failure to state a claim. *See Aisenman*, 2005 WL 43497, at *3.

[3] Even if the amendments could qualify as prior art, they do not disclose new matter that was not present in the disclosed Young '899 application. The PTO rules at the relevant time period prohibited amendments during prosecution that added new matter. *See* 37 C.F.R. § 1.118(a) (1992) and MPEP § 608.04 (1989). The examiner made explicit reference to these rules. Kepper Decl. Ex. 4 at 3, ¶ 3 (Young '421 File History). The applicants added the amendments and affirmed that no new matter was added. *Id.*, Ex. 4 at 9 (Young '421 File History). The examiner reviewed the amendments for compliance with PTO rules and allowed the amendments. *Id.*, Ex. 4 at 15 (Young '421 File History).

Case No. CV-08-0986-SI - 7 - OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS

1 '990 patent applicants had no duty to disclose the amendments – and they had already disclosed the Young '899 application, which (but for the amendments) was identical in substance to the issued patent.

There is no question that the Young '899 application was properly disclosed to the PTO. The Cheng '990 patent applicants included the Young '899 application in their IDS submissions to the examiner and took all of the steps required by the relevant PTO rules (then-current versions of 37 C.F.R. §§ 1.97(b)-(d) and § 1.98 (1992)) to have the Young '899 application made of record. *See* 37 C.F.R. § 1.56 (1992) ("The duty to disclose all information known to be material to patentability of any claim is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the [PTO] or submitted to the [PTO] in the manner prescribed by §§ 1.97(b)-(d) and 1.98."). Thus, the Young '899 application was properly disclosed to the PTO, and Samsung has not made (and cannot make) any showing to the contrary.

Because the applicants already properly disclosed the Young '899 application, the fact they did not additionally disclose the issued patent can hardly serve as a basis for inequitable conduct. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1315 (Fed. Cir. 2008) ("Information that is cumulative is not material."); *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 2008 WL 901175, at *5 (E.D. Tex. Mar. 31, 2008) ("Duplicative references of other prior art systems with elements similar or identical to those contained in the examples provided are therefore not material."). Samsung's attempt to inject a new, costly, and confusing issue into the case – should be rejected.

### 2. Iacoponi '592 Patent

Likewise, the Court should reject as futile Samsung's proposed amendment regarding the Iacoponi '592 patent. Samsung has made *no showing whatsoever* regarding sixty-one of the sixty-four new references upon which it bases its purported claim for inequitable conduct, and its showing regarding the other three is legally insufficient to state a claim. Accordingly, this Court should deny leave to amend to include these allegations because they fail to state a claim and are thus futile. *See Sprewell*, 266 F.3d at

988; *Aisenman*, 2005 WL 43497, at *3.

Fundamentally, Samsung's claim for inequitable conduct based on the Iacoponi '592 patent is futile because Samsung has not shown that Mr. Iacoponi improperly failed to disclose *any* materials to the PTO. Despite possessing all the references and having a full day to depose Mr. Iacoponi, Samsung chose to ask him about only three of the sixty-four VMIC articles that he is now accused of withholding from the PTO. Samsung thus has no factual support for its inequitable conduct allegations relating to the remaining sixty-one references. *See Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 2006 WL 3826726, at *3 (N.D. Cal. Dec. 27, 2006) ("[D]efendants would not have been able to plead inequitable conduct with sufficient specificity prior to obtaining witness testimony and without falling afoul of Federal Rule of Civil Procedure 11."). It is appropriate at this stage to deny Samsung's motion as futile for failing to state a claim, as Samsung's allegations are unsupported by fact. *Sprewell*, 266 F.3d at 988 (stating that the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"); *Aisenman*, 2005 WL 43497, at *3.

Likewise, as to the three references that were discussed, Samsung cannot base its inequitable conduct claim on a blatant mischaracterization of the record. Specifically, Samsung seeks to add an inequitable conduct claim based on the notion that Mr. Iacoponi knew about specific references and yet failed to disclose them to the PTO. His deposition testimony, however, shows the opposite. Specifically, Mr. Iacoponi testified that *he had not seen and was unable to recognize* two of the three VMIC papers that were presented to him.[4] Kepper Decl. Ex. 6 (Deposition Tr. at 152:22–153:3, 161:8-10). Similarly,

---

[4] As to the third article, Mr. Iacoponi stated that he did not recall whether he had provided the article to patent prosecution counsel. Kepper Decl. Ex. 6 (Deposition Tr. at 146:5-9). He further stated that the article was relevant to the Iacoponi '592 patent only to the extent that it "mentions" titanium nitride in contacts. (*Id.* at 149:4-25). Samsung's claim of materiality of the article is put to rest by the patent itself. The article is cumulative of at least the Nulman and Ajika patents disclosed on the face of the Iacoponi '592 patent. Kepper Decl. Ex. 9 (Iacoponi '592 patent). The Iacoponi '592 patent actually cites the type of process identified in the article as an example of prior art which the patent advances from. (*Id.* at 1:43 - 2:25).

1 although Mr. Iacoponi generally recalled receiving an abstract of conference materials, he explained that his practice was simply to put such materials up on a shelf and "leave them there." Kepper Decl. Ex. 6 (Deposition Tr. at 33:16-20, 35:13-16, 36:20). Disingenuously, Samsung fails to mention any of this testimony in its Proposed Amended Answer or opening brief. Again, because Samsung's allegations are unsupported – and, in fact, contradicted – by Mr. Iacoponi's testimony, its purported amendment would be futile and should be denied or dismissed. *Sprewell*, 266 F.3d at 988 (stating that the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"); *Aisenman*, 2005 WL 43497, at *3.

### B. Samsung Fails to Plead Inequitable Conduct With Particularity

Samsung's inequitable conduct allegations relating to the Cheng '990 and Iacoponi '592 patents are also futile for failing to allege inequitable conduct with particularity. *See* Fed. R. Civ. P. 9(b); *In re Fritz Companies Sec. Litig.*, 282 F. Supp. 2d 1105, 1111 (N.D. Cal. 2003) ("The court can deny the motion to amend on the basis of futility . . . if plaintiff fails to plead with requisite specificity under Rule 9(b)"). The sufficiency of inequitable conduct pleadings is governed by Federal Circuit law. *See Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Inequitable conduct, "while a broader concept than fraud," must be pleaded with particularity under Rule 9(b). *Ferguson Beauregard*, 350 F.3d at 1344; Fed. R. Civ. P. 9(b). The "inherent dangers of such a defense (delay, confusion, attorney disqualification, and wasted resources) necessitates that courts require particularity in order to weed out allegations that are asserted in bad faith." *Sun Microsys., Inc. v. Datram Corp.*, 1997 WL 50272, at *4 (N.D. Cal. Feb. 4, 1997) (citation omitted).

Importantly, the party pleading inequitable conduct "cannot merely rely on vague allegations of fraud and deception but instead, must specify the time, place, and content of any alleged misrepresentations made to the PTO." *Sun Microsys.*, 1997 WL 50272, at *4. Furthermore, a party pleading inequitable conduct must specifically allege both materiality and intent to deceive. *ASM Am., Inc. v. Genus, Inc.*, 2002 WL 24444, at *2

(N.D. Cal. Jan. 9, 2002). An inequitable conduct claim cannot stand where a party fails to "indicate why or how the alleged misrepresentation or omission is material." *Collaboration Props., Inc. v. Tandberg ASA*, 2007 WL 205065, at *3 (N.D. Cal. Jan. 25, 2007). Allegations based "on information and belief" do not satisfy the particularity requirement of Rule 9(b) unless the pleader also "sets forth facts on which the belief is founded." *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988); *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1148 (N.D. Cal. 2003). Here, Samsung's proposed amendment is futile because it has not met the stringent standards set forth in Rule 9(b).

### 1. Samsung fails to allege, with particularity, the materiality of the asserted VMIC references for the Iacoponi '592 patent.

In its Proposed Amended Answer, Samsung lists sixty-four VMIC conference papers that Samsung asserts "are highly material" to the patentability of the Iacoponi '592 patent. (Samsung Brief App. A at 14:3-18:2). However, Samsung merely identifies the sixty-four references by name and offers one over-arching and vague statement that all of the sixty-four references were "highly material to the patentability of the claims of the [Iacoponi] '592 patent in that they disclosed processes for forming nitrided contacts in semiconductor devices, including processes utilizing nitrogen ionized in plasma." (*Id.* at 13:27-14:2).

One vague and conclusory statement of materiality spread across sixty-four different inequitable conduct references *does not* provide AMD with sufficient information upon which to defend against Samsung's claims. *See Hill-Rom Services, Inc. v. Verses Tech., Inc.*, 2006 WL 1540851 (M.D.N.C. June 2, 2006) ("The requirement found in 9(b) 'is intended to give parties against whom a charge of inequitable conduct is made specific notice of the particular statements or omissions constituting the inequitable conduct, which thereby ensure that they have sufficient information to formulate an appropriate response.'") (citation omitted). Samsung fails to explain why "processes for

Case No. CV-08-0986-SI - 11 - OPPOSITION TO SAMSUNG'S MOTION FOR LEAVE TO AMEND ANSWERS AND COUNTERCLAIMS

forming nitrided contacts" or "processes utilizing nitrogen ionized in plasma" are "highly material" or draw any link between those processes and the Iacoponi '592 patent. Samsung further does not provide any indication as to which of the sixty-four references allegedly relate to "processes utilizing nitrogen ionized in plasma" and which of the references allegedly relate to "processes for forming nitrided contacts in semiconductor devices."

Moreover, Samsung does not explain with any specificity why or how the sixty-four references themselves are material. *See Energy Absorption*, 1993 WL 389014, at *2 (striking inequitable conduct defense where the party "failed to identify the precise 'content' of [the] alleged omission[,] specifically ... why or how [the] alleged omission was material"). For example, Samsung does not plead that any of the sixty-four references would render a claim of the Iacoponi '592 patent anticipated, obvious, or important to a reasonable patent examiner. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008) (stating that information is "material" when "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent"). To the contrary, it is obvious that these references are not material, because *Samsung has not included any of the sixty-four references in its own Invalidity Contentions*.

Finally, Samsung offers no explanation as to why the sixty-four references are non-cumulative of each other, or to the numerous references that the Iacoponi '592 applicants did cite to the examiner. AMD is left to guess at why each of Samsung's sixty-four prior art references are material to the Iacoponi '592 patent. As such, Samsung's proposed amendment falls woefully short of the requirements imposed by Rule 9(b).

### 2. Samsung fails to properly allege intent to deceive for the Cheng '990 patent and the Iacoponi '592 patent.

Samsung has also failed to allege with requisite specificity that the applicants for the Iacoponi '592 patent and the Cheng '990 patent had any intent to deceive the PTO. In regard to the Iacoponi '592 patent, Samsung merely alleges "on information and belief"

that Mr. Iacoponi was aware of the materiality of the non-disclosed references and withheld the materials with an intent to deceive the PTO. (Samsung Brief App. A at 18:8-10, 23-26). "Allegations based on 'information and belief' do not satisfy the particularity requirement of [Rule] 9(b) unless the complaint sets forth the facts on which the belief is founded." *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. at 1432-33. Samsung has not alleged and cannot allege specific facts that Mr. Iacoponi had actual knowledge of the sixty-four VMIC conference papers, and that he withheld these materials with an intent to deceive the PTO. All deposition testimony indicates otherwise. *See supra* Section II.B.

Likewise, Samsung's allegations that the Cheng '990 patent applicants acted with an intent to deceive are also improperly based solely on "information and belief." (Samsung Brief App. A at 12:17-23). Indeed, Samsung does not reference any underlying facts supporting these allegations. This is because Samsung has made no effort to depose any of the Cheng '990 patent applicants and has no factual information upon which to base its belief. Samsung's allegations are improper and do not satisfy the rigorous standards of Rule 9(b). *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. at 1432-33; *Collaboration Props.*, 2007 WL 205065, at *2. Accordingly, the Court should deny Samsung's motion on this ground as well.

## IV. Conclusion

Samsung's baseless inequitable conduct claims contribute to the growing plague upon our courts. For the foregoing reasons, AMD respectfully requests that the Court deny Samsung's Motion for Leave to Amend Answers and Counterclaims, or allow Samsung's Motion and then dismiss its inequitable conduct defenses and counterclaims.

| | | |
|---|---|---|
| 1 | DATED: April 17, 2009 | Respectfully submitted, |
| 2 | | **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.** |

By: _____
William H. Manning
Brad P. Engdahl
Andrew M. Kepper
Angela M. Munoz-Kaphing

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFFS ADVANCED MICRO DEVICES, INC. and ATI TECHNOLOGIES, ULC**